1  **HANNI M. FAKHOURY**
   California Bar No. 252629
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  Hanni_Fakhoury@fd.org

5  Attorneys for Mr. Ochoa-Ramirez

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10           **(HONORABLE WILLIAM Q. HAYES)**

11  UNITED STATES OF AMERICA,          )    CASE NO.: 08CR1637-WQH
                                       )
12           Plaintiff,                )    DATE: July 7, 2008
                                       )    TIME: 2:00 p.m.
13  v.                                 )
                                       )    NOTICE OF MOTIONS AND MOTIONS:
14  **BENJAMIN OCHOA-RAMIREZ**,        )
                                       )    (1)    TO COMPEL DISCOVERY;
15           Defendant.                )    (2)    PRESERVE AND REWEIGH
                                       )           NARCOTIC EVIDENCE;
16                                     )    (3)    DISMISS THE INDICTMENT DUE TO
                                       )           IMPROPER GRAND JURY
17                                     )           INSTRUCTIONS; AND
                                       )    (4)    FOR LEAVE TO FILE FURTHER
18  _____  )           MOTIONS

19  **TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY, AND
        DAVID D. LESHNER, ASSISTANT UNITED STATES ATTORNEY**

20

21          PLEASE TAKE NOTICE that on July 7, 2008, at 2:00 p.m., or as soon thereafter as counsel may

22  be heard, defendant, Benjamin Ochoa-Ramirez, by and through his attorneys, Hanni M. Fakhoury and

23  Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

24  ///

25  ///

26  ///

27  ///

28  ///

# MOTIONS

Defendant, Benjamin Ochoa-Ramirez, by and through his attorneys, Hanni M. Fakhoury and Federal Defenders of San Diego, Inc., asks this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order to:

(1)    Compel Discovery;

(2)    Preserve and Reweigh Narcotic Evidence;

(3)    Dismiss the Indictment Due to Improper Grand Jury Instructions; and

(4)    Grant Leave to File Further Motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Respectfully submitted,


Dated: June 23, 2008                    *s/ Hanni M. Fakhoury*
                                        **HANNI M. FAKHOURY**
                                        Federal Defenders of San Diego, Inc.
                                        Attorneys for Mr. Ochoa-Ramirez

1

## CERTIFICATE OF SERVICE

2      Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his

3   information and belief, and that a copy of the foregoing document has been served this day upon:

4   David D. Leshner
    Assistant United States Attorney
5   880 Front Street
    Room 6293
6   San Diego, CA 92101
    (619) 557-5610
7   Fax: (619) 557-3445
    Email: David.Leshner@usdoj.gov

8

9

10  Dated: June 23, 2008                    /s/ Hanni Fakhoury
                                            HANNI M. FAKHOURY
11                                          Federal Defenders of San Diego, Inc.
                                            225 Broadway, Suite 900
12                                          San Diego, CA 92101-5030
                                            (619) 234-8467  (tel)
13                                          (619) 687-2666  (fax)
                                            e-mail: Hanni_Fakhoury@fd.org

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**HANNI M. FAKHOURY**
California Bar No. 252629

2

**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900

3

San Diego, California  92101-5008
Telephone:  (619) 234-8467

4

Hanni_Fakhoury@fd.org

5

Attorneys for Mr. Ochoa-Ramirez

6

7

8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

**(HONORABLE WILLIAM Q. HAYES)**

11

UNITED STATES OF AMERICA,        )      CASE NO.: 08CR1637-WQH
                               )

12

        Plaintiff,        )

13

v.                           )

14

**BENJAMIN OCHOA-RAMIREZ**,     )

15

        Defendant.     )

16

17

18

19

20

21

22

23

24

25

26

27

28

(second column, lines 11–15)

) CASE NO.: 08CR1637-WQH
)
)
) STATEMENT OF FACTS AND
) MEMORANDUM OF POINTS AND
) AUTHORITIES IN SUPPORT OF MOTIONS
)
)
)

**I.**

**STATEMENT OF FACTS**

On May 21, 2008, a two count indictment was handed down by the January 2007 Grand Jury charging Mr. Ochoa-Ramirez with importing 50.58 kilograms of marijuana, in violation of 21 U.S.C. §§ 952, 960 and possession of marijuana with intent to distribute, in violation of 21 U.S.C.§ 841(a)(1).

**II.**

**MOTION TO COMPEL DISCOVERY**

Mr. Ochoa-Ramirez moves for production of the following discovery.  This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies."  See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989). Specifically, Mr. Ochoa-Ramirez moves for the production of the following evidence:

1. **Mr. Ochoa-Ramirez's Statements.** Mr. Ochoa-Ramirez requests the government disclose any and all written, recorded and oral statements made by him, as well any written summaries of his oral statements contained in the handwritten notes of any Government agent. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal <u>all</u> of Mr. Ochoa-Ramirez's statements, whether written or oral, regardless of whether the Government intends to make any use of those statements. **Mr. Ochoa-Ramirez specifically requests any audio and videotaped copies of his statements and any rough notes taken pertaining to the substance of his statements. Furthermore, pursuant to Fed. R. Crim. P. 16(a)(1)(B)(i), Mr. Ochoa-Ramirez requests copies of the audio tapes of any taped telephone calls made while he was in custody.**

2. **Arrest Reports, Notes and Dispatch Tapes.** Mr. Ochoa-Ramirez also requests that all arrest reports, notes, dispatch or any other tapes and TECS records that relate to the circumstances surrounding his arrest or any questioning, be turned over. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Ochoa-Ramirez or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Ochoa-Ramirez. <u>See</u> Fed. R. Crim. P. 16(a)(1)(B) and (c), Fed. R. Crim. P. 12(I) and 26.2. **Mr. Ochoa-Ramirez includes in this request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROIs that the case agent or any other agent has written**.

3. **Brady Material**. Mr. Ochoa-Ramirez requests all documents, statements, agents' reports, and tangible evidence favorable to Mr. Ochoa-Ramirez on the issue of guilt and/or which affects the credibility of the Government's witnesses and the Government's case. Under <u>Brady</u>, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976). Further, <u>Brady</u> requires the government disclose any information that may result in a lower sentence under the sentencing guidelines, notwithstanding its advisory nature, because it is exculpatory and/or mitigating evidence.

4. **Mr. Ochoa-Ramirez's Prior Record.** Mr. Ochoa-Ramirez requests disclosure of his prior criminal record. Fed. R. Crim. P. 16(a)(1)(B). **Specifically, he requests a certified copy of the charging**

1  **documents, plea and sentencing transcripts, and judgment and conviction of any prior conviction used**

2  **to increase or adjust Mr. Ochoa-Ramirez's sentence under the advisory guidelines.**

3      5. **Any Proposed 404(b) Evidence.**  Evidence of prior similar acts is discoverable under Fed. R.

4  Crim. P. 16(a)(1)(c) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b), "upon

5  request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the

6  general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at

7  trial.  Mr. Ochoa-Ramirez requests the government "articulate <u>precisely</u> the evidential hypothesis by which

8  a fact of consequence may be inferred from the other acts evidence." <u>United States v. Mehrmanesh</u>, 689 F.2d

9  822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); <u>see also</u> <u>United States v. Brooke</u>, 4

10  F.3d 1480, 1483 (9th Cir. 1993) (reaffirming <u>Mehrmanesh</u> and reversing convictions). Mr. Ochoa-Ramirez

11  requests **three weeks notice before trial** to give the defense time to adequately investigate and prepare for

12  trial.

13      6. **Evidence Seized.**  Mr. Ochoa-Ramirez requests production of evidence seized as a result of any

14  search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(c).

15      7. **Request for Preservation of Evidence.**  Mr. Ochoa-Ramirez specifically requests that all dispatch

16  tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession,

17  custody, or care of the government and which relate to the arrest or the events leading to the arrest in this

18  case be preserved.  This request includes, but is not limited to, any samples of narcotics used to run any

19  scientific tests, all narcotics, the results of any fingerprint analysis, the vehicle involved in the case, the

20  defendant's personal effects, and any evidence seized from the defendant or any third party.  This request

21  also includes any material or percipient witnesses who might be deported or otherwise likely to become

22  unavailable (e.g. undocumented aliens and transients).        It is requested that the prosecutor be ordered to

23  <u>question</u> all the agencies and individuals involved in the prosecution and investigation of this case to

24  determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

25      8. **Tangible Objects.**  Mr. Ochoa-Ramirez requests the opportunity to inspect, copy, and test, as

26  necessary, all other documents and tangible objects, including photographs, books, papers, documents,

27  fingerprint analyses, or copies of portions thereof, which are material to the defense, intended for use in the

28  Government's case-in-chief, or were obtained from or belong to Mr. Ochoa-Ramirez. Fed. R. Crim. P.

1    16(a)(1)(c). **Specifically, Mr. Ochoa-Ramirez requests color copies of all photographs in this case in**

2    **the Government's possession**.

3         9. **<u>TECS Reports</u>**.  Defendant requests all TECS reports, including reports pertaining to all vehicle

4    border crossings pertaining to the vehicle used in this case and any vehicles pertaining to Mr. Ochoa-

5    Ramirez.

6         10. **<u>Opportunity to Weigh, View and Photograph the Contraband</u>**.  Mr. Ochoa-Ramirez hereby

7    requests an opportunity to view, photograph, and weigh the contraband allegedly confiscated in this case.

8         11. **<u>DEA 7 Form</u>**.  Mr. Ochoa-Ramirez requests a copy of the DEA 7 form that should indicate the

9    alleged weight and purity of the contraband in this case.

10        12. **<u>Narcotics Detector Dog Information</u>**. Mr. Ochoa-Ramirez moves for production of all

11    discoverable information about any Narcotics Detector Dogs (NDDs) used in this case, including

12    information regarding: (a) the qualifications of the NDDs and their handlers, (b) the training and experience

13    of the NDDs and their handlers, (c) the government's procedures regarding the treatment, training and

14    rewarding of the NDDs, (d) a detailed description of the exact method the NDDs in this case used to indicate

15    an "alert" to contraband, and (e) the location of the NDD and the vehicle when the NDD alerted, and (f) the

16    NDD's reliability.

17        13. **<u>Expert Witnesses.</u>**   Mr. Ochoa-Ramirez requests the name, qualifications, and a written

18    summary of the testimony of any person that the Government intends to call as an expert witness during its

19    case in chief. Fed. R. Crim. P. 16(a)(1)(E). The defense requests the notice of expert testimony be provided

20    a minimum of **three weeks prior to trial** so the defense can properly prepare to address and respond to this

21    testimony, including obtaining its own expert and/or investigating the opinions, credentials of the

22    Government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any

23    expert. <u>See</u> <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999) (trial judge is "gatekeeper" and

24    must determine, reliability and relevancy of expert testimony and such determinations may require "special

25    briefing or other proceedings").

26        14. **<u>Scientific and Other Information.</u>**  Mr. Ochoa-Ramirez requests the results of any scientific

27    or other tests or examinations conducted by any Government agency or their subcontractors in connection

28    with this case.  <u>See</u> Fed. R. Crim. P. 16(a)(1)(D).

15. ***Henthorn* Material.**  Mr. Ochoa-Ramirez requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material.  See Kyles v. Whitley, 514 U.S. 419 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the Government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally conduct examination of records; appropriate Government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); United States v. Herring, 83 F.3d 1120 (9th Cir. 1996) (accord).

16. **Evidence of Bias or Motive to Lie.**  Mr. Ochoa-Ramirez requests any evidence that any prospective Government witness is biased or prejudiced against Mr. Ochoa-Ramirez, or has a motive to falsify or distort his or her testimony.

17. **Impeachment Evidence.**  Mr. Ochoa-Ramirez requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Ochoa-Ramirez.  See Fed. R. Evid. 608, 609 and 613; Brady v. Maryland, 373 U.S. 83 (1963).

18. **Evidence of Criminal Investigation of Any Government Witness.**  Mr. Ochoa-Ramirez requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

19. **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.**  Mr. Ochoa-Ramirez requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic.

20. **Witness Addresses.**  Mr. Ochoa-Ramirez requests the name and last known address of each prospective Government witness.  Mr. Ochoa-Ramirez also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a Government witness.

21. **Name of Witnesses Favorable to Mr. Ochoa-Ramirez.** Mr. Ochoa-Ramirez requests the name of any witness who made an arguably favorable statement concerning Mr. Ochoa-Ramirez or who could not identify him or who was unsure of his identity, or participation in the crime charged.

22. **Statements Relevant to the Defense.** Mr. Ochoa-Ramirez requests disclosure of any statement relevant to any possible defense or contention that he might assert in his defense.

23. **Giglio Information  & Agreements Between the Government and Witnesses.** Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Ochoa-Ramirez requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment. Mr. Ochoa-Ramirez also requests discovery regarding any other express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement, promise, or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed, and specifically includes any discussion with a potential witness regarding that witness' immigration status and/or any affect that the witness' statements or lack thereof might have on that status, including the granting or revoking of such immigration status or any other immigration status, including but not limited to citizenship, nationality, a green card, border crossing card, parole letter, or permission to remain in the United States.

24. **Informants and Cooperating Witnesses.** Mr. Ochoa-Ramirez requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Ochoa-Ramirez.  The Government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense.  Roviaro v. United States, 353 U.S. 53, 61-62 (1957).  The Government must disclose any information derived from informants which exculpates or tends to exculpate Mr. Ochoa-Ramirez.  Brady v. Maryland, 373 U.S. 83 (1963).

///

25. **Bias by Informants or Cooperating Witnesses.**  Mr. Ochoa-Ramirez requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  Giglio v. United States, 405 U.S. 150 (1972).  Such information includes, but is not limited to, any inducements, favors, payments or threats that were made to the witness in order to secure cooperation with the authorities.

26. **Jencks Act Material.**  Mr. Ochoa-Ramirez requests production in advance of trial of all material, including dispatch tapes, which the Government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at trial to allow Mr. Ochoa-Ramirez to investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  Campbell v. United States, 373 U.S. 487, 490-92 (1963); see United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) (agent's interview notes reviewed with interviewee subject to Jencks Act).

27. **Residual Request.**  Mr. Ochoa-Ramirez intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.  Mr. Ochoa-Ramirez requests that the Government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

### III.

### MOTION TO PRESERVE AND RE-WEIGH NARCOTIC EVIDENCE

Mr. Ochoa-Ramirez requests an order for the U.S. Government and its agents to preserve the narcotic evidence in this case and permit the defense to re-weigh any narcotic evidence.  For the Court's convenience, a proposed order will be sent to chambers via electronic mail.

///

///

///

///

///

///

///

**IV.**

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE JUDGE BURNS'S
INSTRUCTIONS AS A WHOLE PROVIDED TO THE JANUARY 2007 GRAND JURY RUN
AFOUL OF BOTH NAVARRO-VARGAS AND WILLIAMS AND VIOLATE THE FIFTH
AMENDMENT BY DEPRIVING MR. OCHOA-RAMIREZ OF THE TRADITIONAL
FUNCTIONING OF THE GRAND JURY**

**A.    Introduction.**

The indictment in the instant case was returned by the January 2007 grand jury.  See CR at 6.[1]  That

grand jury was instructed by Judge Burns on January 11, 2007.  See Reporter's Partial Transcript of the

Proceedings, dated January 11, 2007, a copy of which is attached hereto as Exhibit A.  Judge Burns's

instructions to the impaneled grand jury deviate from the instructions at issue in the major Ninth Circuit

cases challenging a form grand jury instruction previously given in this district in several ways.[2]  These

instructions compounded Judge Burns's erroneous instructions and comments to prospective grand jurors

during voir dire of the grand jury panel, which immediately preceded the instructions at Ex. A.  See

Reporter's Transcript of Proceedings, dated January 11, 2007, a copy of which is attached hereto as Exhibit

B.[3]

**1.    Judge Burns Instructed Grand Jurors That Their Singular Duty Is to Determine
Whether or Not Probable Cause Exists and That They Have No Right to Decline to
Indict When the Probable Cause Standard Is Satisfied.**

After repeatedly emphasizing to the grand jurors that probable cause determination was their sole

responsibility, see Ex. A at 3, 3-4, 5,[4] Judge Burns instructed the grand jurors that they were forbidden "from

judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a

federal law or should not be a federal law designating certain activity [as] criminal is not up to you."  See

---

[1] "CR" refers to the Clerk's Record in Case Number 07CR2364-LAB .

[2] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).

[3] The transcript of the voir dire indicates that grand jurors were shown a video presentation on the role of the grand jury.  Mr. Fernandez-Serrano requests that the video presentation be produced.  See United States v. Alter, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973) ("[t]he proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not.").

[4] See also id. at 20 ("You're all about probable cause.").

1  id. at 8.  The instructions go beyond that, however, and tell the grand jurors that, should "you disagree with

2  that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting

3  even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence

4  may be insufficient.'"  See id. at 8-9.  Thus, the instruction flatly bars the grand jury from declining to indict

5  because the grand jurors disagree with a proposed prosecution.

6  Immediately before limiting the grand jurors' powers in the way just described, Judge Burns referred

7  to an instance in the grand juror selection process in which it excused three potential jurors.  See id. at 8.

8  I've gone over this with a couple of people.  You understood from the questions and answers
   that a couple of people were excused, I think three in this case, because they could not adhere
9  to the principle that I'm about to tell you.

10  Id.  That "principle" was Judge Burns's discussion of the grand jurors' inability to give effect to their

11  disagreement with Congress.  See id. at 8-9.  Thus, the Court not only instructed the grand jurors on its view

12  of their discretion; it enforced that view on pain of being excused from service as a grand juror.

13  Examination of the recently disclosed voir dire transcript, which contains additional instructions and

14  commentary in the form of the give and take between Judge Burns and various prospective grand jurors,

15  reveals how Judge Burns's emphasis of the singular duty is to determine whether or not probable cause

16  exists and his statement that grand jurors they cannot judge the wisdom of the criminal laws enacted by

17  Congress merely compounded an erroneous series of instructions already given to the grand jury venire.  In

18  one of his earliest substantive remarks, Judge Burns makes clear that the grand jury's sole function is

19  probable cause determination.

20  [T]he grand jury is determining really two factors: "do we have a reasonable belief that a
   crime was committed?  And second, do we have a reasonable belief that the person that they
21  propose that we indict committed the crime?"

22  If the answer is "yes" to both of those, then the case should move forward.  If the answer to
   either of the questions is "no," then the grand jury should not hesitate and not indict.
23

24  See Ex. B at 8.  In this passage, Judge Burns twice uses the term "should" in a context makes clear that the

25  term is employed to convey instruction: "should" cannot reasonably be read to mean optional when it

26  addresses the obligation not to indict when the grand jury has no "reasonable belief that a crime was

27  committed" or if it has no "reasonable belief that the person that they propose that we indict committed the

28  crime."

9                                    08CR1637-WQH

1    Equally revealing is Judge Burns's interactions with two potential grand jurors who indicated that,

2    in some unknown set of circumstances, they might decline to indict even where there was probable cause.

3    Because of the redactions of the grand jurors' names, Mr. Ochoa-Ramirez will refer to them by occupation.

4    One is a retired clinical social worker (hereinafter CSW), and the other is a real estate agent (hereinafter

5    REA).  The CSW indicated a view that no drugs should be considered illegal and that some drug

6    prosecutions were not an effective use of resources.  See id. at 16.  The CSW was also troubled by certain

7    unspecified immigration cases.  See id.

8    Judge Burns made no effort to determine what sorts of drug and immigration cases troubled the

9    CSW.  He never inquired as to whether the CSW was at all troubled by the sorts of cases actually filed in

10   this district, such as drug smuggling cases and cases involving reentry after deportation and alien smuggling.

11   Rather, Judge Burns provided instructions suggesting that, in any event, any scruples CSW may have

12   possessed were simply not capable of expression in the context of grand jury service.

13       Now, the question is can you fairly evaluate [drug cases and immigration cases]?  Just as the
         defendant is ultimately entitled to a fair trial and the person that's accused is entitled to a fair
14       appraisal of the evidence of the case that's in front of you, so, too, is the United States
         entitled to a fair judgment.  If there's probable cause, then the case should go forward.  *I
15       wouldn't want you to say*, "well, yeah, there's probable cause, but I still don't like what our
         government is doing.  I disagree with these laws, so I'm not going to vote for it to go
16       forward."  If that is your frame of mind, the probably you shouldn't serve.  Only you can tell
         me that.

17

18   See id. at 16-17 (emphasis added).  Thus, without any sort of context whatsoever, Judge Burns let the grand

19   juror know that it would not want him or her to decline to indict in an individual case where the grand juror

20   "[didn't] like what our government is doing," see id. at 17, but in which there was probable cause.  See Id.

21   Such a case "should go forward."  See id.  Given that blanket proscription on grand juror discretion, made

22   manifest by Judge Burns's use of the pronoun "I", the CSW indicated that it "would be difficult to support

23   a charge even if [the CSW] thought the evidence warranted it."  See id.  Again, Judge Burns's question

24   provided no context; it inquired regarding "a case," a term presumably just as applicable to possession of

25   a small amount of medical marijuana as kilogram quantities of methamphetamine for distribution.  Any

26   grand juror listening to this exchange could only conclude that there was *no* case in which Judge Burns

27   would permit them to vote "no bill" in the face of a showing probable cause.

28   //

Just in case there may have been a grand juror that did not understand his or her inability to exercise anything like prosecutorial discretion, Judge Burns drove the point home in his exchange with REA. REA first advised Judge Burns of a concern regarding the "disparity between state and federal law" regarding "medical marijuana." See id. at 24. Judge Burns first sought to address REA's concerns about medical marijuana by stating that grand jurors, like trial jurors, are simply forbidden from taking penalty considerations into account.

> Well, those things -- the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that -- we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. We'd ask you to also abide by that. We want you to make a business-like decision of whether there was a probable cause. . . .

Id. at 24-25. Having stated that REA was to "abide" by the instruction given to trial jurors, Judge Burns went on to suggest that REA recuse him or herself from medical marijuana cases. See id. at 25.

In response to further questioning, REA disclosed REA's belief "that drugs should be legal." See id. That disclosure prompted Judge Burns to begin a discussion that ultimately led to an instruction that a grand juror is obligated to vote to indict if there is probable cause.

> I can tell you sometimes I don't agree with some of the legal decisions that are indicated that I have to make. But my alternative is to vote for someone different, vote for someone that supports the policies I support and get the law changed. It's not for me to say, "well, I don't like it. So I'm not going to follow it here."
>
> You'd have a similar obligation as a grand juror even though you might have to grit your teeth on some cases. Philosophically, if you were a member of congress, you'd vote against, for example, criminalizing marijuana. I don't know if that's it, but you'd vote against criminalizing some drugs.
>
> That's not what your prerogative is here. You're prerogative instead is to act like a judge and say, "all right. This is what I've to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does." *And then your obligation, if you find those to be true, would be to vote in favor of the case going forward.*

Id. at 26-27 (emphasis added). Thus, the grand juror's duty is to conduct a simple two part test, which, if both questions are answered in the affirmative, lead to an "obligation" to indict.

Having set forth the duty to indict, and being advised that REA was "uncomfortable" with that paradigm, Judge Burns then set about to ensure that there was no chance of a deviation from the obligation to indict in every case in which there was probable cause.

//

The Court: Do you think you'd be inclined to let people go in drug cases even though you were convinced there was probable cause they committed a drug offense?
REA: It would depend on the case.
The Court: Is there a chance that you would do that?
REA: Yes.
The Court: I appreciate your answers.  I'll excuse you at this time.

Id. at 27.  Two aspects of this exchange are crucial.  First, REA plainly does not intend to act solely on his political belief in decriminalization -- whether he or she would indict "depend[s] on the case," see id., as it should.  Because REA's vote "depend[s] on the case," see id., it is necessarily true that REA would vote to indict in some (perhaps many or even nearly all) cases in which there was probable cause.  Again, Judge Burns made no effort to explore REA's views; it did not ascertain what sorts of cases would prompt REA to hesitate.  The message is clear: it does not matter what type of case might prompt REA's reluctance to indict because, once the two part test is satisfied, the "obligation" is "to vote in favor of the case going forward."[5]  See id. at 27.  That is why even the "chance," see id., that a grand juror might not vote to indict was too great a risk to run.

### 2. The Instructions Posit a Non-Existent Prosecutorial Duty to Offer Exculpatory Evidence.

In addition to his instructions on the authority to choose not to indict, Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause.  See Ex. A at 20.[6]

---

[5] This point is underscored by Judge Burns's explanation to the Grand Jury that a magistrate judge will have determined the existence of probable cause "in most circumstances" before it has been presented with any evidence.  See Ex. A at 6.  This instruction created an imprimatur of finding probable cause in each case because had a magistrate judge not so found, the case likely would not have been presented to the Grand Jury for indictment at all.  The Grand Jury was informed that it merely was redundant to the magistrate court "in most circumstances."  See id.  This instruction made the grand jury more inclined to indict irrespective of the evidence presented.

[6] These instructions were provided in the midst of several comments that praised the United States attorney's office and prosecutors in general.  Judge Burns advised the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you."  See Ex. A at 27.  The instructions delivered during voir dire go even further.  In addressing a prospective grand juror who revealed "a strong bias for the U.S. Attorney, whatever cases they might bring," see Ex. B at 38, Judge Burns affirmatively endorsed the prospective juror's view of the U.S. Attorney's office, even while purporting to discourage it: "frankly, I agree with the things you are saying.  They make sense to me."  See id. at 43.  See also id. at 40 ("You were saying that you

1
2
3
4

Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence*.

5   Id. (emphasis added).

6       The antecedent to this instruction is also found in the voir dire.  After advising the grand jurors that

7   "the presentation of evidence to the grand jury is necessarily one-sided," see Ex. B at 14, Judge Burns

8   gratuitously added that "[his] experience is that the prosecutors don't play hide-the-ball.  If there's something

9   adverse or that cuts against the charge, you'll be informed of that.  They have a duty to do that."  See id.

10  Thus, Judge Burns unequivocally advised the grand jurors that the government would present any evidence

11  that was "adverse" or "that cuts against the charge."  See id.

12  **B.    Navarro-Vargas Establishes Limits on the Ability of Judges to Constrain the Powers of the
13        Grand Jury, Which Judge Burns Far Exceeded in His Instructions as a Whole During
        Impanelment.**

14      The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given to

15  grand jurors in the Southern District of California.  See Navarro-Vargas II, 408 F.3d 1184.  While the Ninth

16  Circuit has thus far (narrowly) rejected such challenges, it has, in the course of adopting a highly formalistic

17
18

_____

19  give a presumption of good faith to the U.S. Attorney and assume, quite logically, that they're not about the
20  business of trying to indict innocent people or people that they believe to be innocent or the evidence doesn't
    substantiate the charges against.").

21      Judge Burns's discussion of his once having been a prosecutor before the Grand Jury compounded
    the error inherent in his praising of the government attorneys.  See Ex. A at 9-10.  Judge Burns's instructions
22  implied that as a prior prosecutor and current "jury liaison judge," see id. at 8, Judge Burns would not allow
    the government attorneys to act inappropriately or to present cases for indictment where no probable cause
23  existed.

24      In addition, while Judge Burns instructed the Grand Jury that it had the power to question witnesses,
    Judge Burns's instructions also told the Grand Jury that it should "be deferential to the U.S. Attorney if there
25  is an instance where the U.S. Attorney thinks a question ought not to be asked."  See Ex. A at 12.  As the
    dissent in Navarro-Vargas pointed out, "the grand jury's independence is diluted by [such an] instruction,
26  which encourages deference to prosecutors."  Navarro-Vargas, 408 F.3d at 1215.  The judge's admonition
    that his statement was only "advice," see Ex A at 12, does not cure the error as courts regularly presume
27  grand jurors follow instructions provided to them by the court.  See id. at 1202, n.23 ("We must presume
    that grand jurors will follow instructions because, in fact, we are prohibited from examining jurors to verify
28  whether they understood the instruction as given and then followed it.").

1  approach[7] to the problems posed by the instructions, endorsed many of the substantive arguments raised by

2  the defendants in those cases.  The district court's instructions cannot be reconciled with the role of the

3  grand jury as set forth in Navarro-Vargas II.  Taken together, the voir dire of and instructions given to the

4  January 2007 Grand Jury, go far beyond those at issue in Navarro-Vargas, taking a giant leap in the direction

5  of a bureaucratic, deferential grand jury, focused solely upon probable cause determinations and utterly

6  unable to exercise any quasi-prosecutorial discretion.  That is not the institution the Framers envisioned.

7  See United States v. Williams, 504 U.S. 36, 49 (1992).

8       For instance, with respect to the grand jury's relationship with the prosecution, the Navarro-Vargas

9  II majority acknowledges that the two institutions perform similar functions: "'the public prosecutor, in

10  deciding whether a particular prosecution shall be instituted or followed up, performs much the same

11  function as a grand jury.'"  Navarro-Vargas II, 408 F.3d at 1200 (quoting Butz v. Economou, 438 U.S. 478,

12  510 (1978)).  Accord United States v. Navarro-Vargas, 367 F.3d 896, 900 (9th Cir. 2004) (Navarro-Vargas

13  I)(Kozinski, J., dissenting) (The grand jury's discretion in this regard "is most accurately described as

14  prosecutorial." ).  See also Navarro-Vargas II, 408 F.3d at 1213 (Hawkins, J., dissenting).  It recognizes that

15  the prosecutor is not obligated to proceed on any indictment or presentment returned by a grand jury, id.,

16  but also that "the grand jury has no obligation to prepare a presentment or to return an indictment drafted

17  by the prosecutor."  Id.  See Niki Kuckes, The Democratic Prosecutor:  Explaining the Constitutional

18  Function of the Federal Grand Jury, 94 Geo. L.J. 1265, 1302 (2006) (the grand jury's discretion not to indict

19  was "'arguably . . . the most important attribute of grand jury review from the perspective of those who

20  insisted that a grand jury clause be included in the Bill of Rights'") (quoting Wayne LaFave et al., Criminal

21  Procedure § 15.2(g) (2d ed. 1999)).

22       Indeed, the Navarro-Vargas II majority agrees that the grand jury possesses all the attributes set forth

23  in Vasquez v. Hillery, 474 U.S. 254 (1986).  See id.

24       The grand jury thus determines not only whether probable cause exists, but also whether to
       "charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps

25

26  _____

27       [7] See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the majority
   because "[t]he instruction's use of the word 'should' is most likely to be understood as imposing an
   inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional
28  independence.").

1  |  most significant of all, a capital offense or a non-capital offense -- all on the basis of the
2  |  same facts.  And, significantly, the grand jury may refuse to return an indictment even
   |  "'where a conviction can be obtained.'"

3
4  Id. (quoting Vasquez, 474 U.S. at 263).  The Supreme Court has itself reaffirmed Vasquez's description of

5  the grand jury's attributes in Campbell v. Louisiana, 523 U.S. 392 (1998), noting that the grand jury

6  "controls not only the initial decision to indict, but also significant questions such as how many counts to

7  charge and whether to charge a greater or lesser offense, including the important decision whether to charge

8  a capital crime." Id. at 399 (citing Vasquez, 474 U.S. at 263).  Judge Hawkins notes that the Navarro-Vargas

9  II majority accepts the major premise of Vasquez: "the majority agrees that a grand jury has the power to

10  refuse to indict someone even when the prosecutor has established probable cause that this individual has

11  committed a crime." See id. at 1214 (Hawkins, J. dissenting).  Accord Navarro-Vargas I, 367 F.3d at 899

12  (Kozinski, J., dissenting); United States v. Marcucci, 299 F.3d 1156, 1166-73 (9th Cir. 2002) (per curiam)

13  (Hawkins, J., dissenting).  In short, the grand jurors' prerogative not to indict enjoys strong support in the

14  Ninth Circuit.  But not in Judge Burns's instructions.

15  **C.    Judge Burns's Instructions Forbid the Exercise of Grand Jury Discretion Established
           in Both Vasquez and Navarro-Vargas II.**

16
17         The Navarro-Vargas II majority found that the instruction in that case "leave[s] room for the grand

18  jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its previous

19  decision in Marcucci.  Marcucci reasoned that the instructions do not mandate that grand jurors indict upon

20  every finding of probable cause because the term "should" may mean "what is probable or expected."  299

21  F.3d at 1164 (citation omitted).  That reading of the term "should" makes no sense in context, as Judge

22  Hawkins ably pointed out.  See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) ("The

23  instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or

24  obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence.").  See

25  also id. ("The 'word' should is used to express a duty [or] obligation.") (quoting The Oxford American

26  Diction and Language Guide 1579 (1999) (brackets in original)).

27         The debate about what the word "should" means is irrelevant here; the instructions here make no

28  such fine distinction.  The grand jury instructions make it painfully clear that grand jurors simply may not

1    choose not to indict in the event of what appears to them to be an unfair application of the law: should "you

2    disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against

3    indicting even though I think that the evidence is sufficient'...." See Ex. A at 8-9.  Thus, the instruction

4    flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution. No

5    grand juror would read this language as instructing, or even allowing, him or her to assess "the need to

6    indict." Vasquez, 474 U.S. at 264.

7         While Judge Burns used the word "should" instead of "shall" during voir dire with respect to whether

8    an indictment was required if probable cause existed, see Ex. B at 4, 8, in context, it is clear that Judge Burns

9    could only mean "should" in the obligatory sense.  For example, when addressing a prospective juror, Judge

10   Burns not only told the jurors that they "should" indict if there is probable cause, it told them that if there

11   is not probable cause, "then the grand jury should hesitate and not indict." See id. at 8.  At least in context,

12   it would strain credulity to suggest that Judge Burns was using "should" for the purpose of "leaving room

13   for the grand jury to [indict] even if it finds [no] probable cause." See Navarro-Vargas, 408 F.3d at 1205.

14   Clearly Judge Burns was not.

15        The full passage cited above effectively eliminates any possibility that Judge Burns intended the

16   Navarro-Vargas spin on the word "should."

17        [T]he grand jury is determining really two factors: "do we have a reasonable belief that a
         crime was committed?  And second, do we have a reasonable belief that the person that they
18       propose that we indict committed the crime?"

19       If the answer is "yes" to both of those, then the case should move forward.  If the answer to
         either of the questions is "no," then the grand jury should not hesitate and not indict.
20

21   See Ex. B at 8.  Of the two sentences containing the word "should," the latter of the two essentially states

22   that if there is no probable cause, you *should* not indict.  Judge Burns could not possibly have intended to

23   "leav[e] room for the grand jury to [indict] even if it finds [no] probable cause." See Navarro-Vargas, 408

24   F.3d at 1205 (citing Marcucci, 299 F.3d at 1159).  That would contravene the grand jury's historic role of

25   protecting the innocent. See, e.g., United States v. Calandra, 414 U.S. 338, 343 (1974) (The grand jury's

26   "responsibilities continue to include both the determination whether there is probable cause and the

27   protection of citizens against unfounded criminal prosecutions.") (citation omitted).

28        By the same token, if Judge Burns said that "the case should move forward" if there is probable

1  cause, but intended to "leav[e] room for the grand jury to dismiss even if it finds probable cause," see

2  Navarro-Vargas, 408 F.3d at 1205 (citing Marcucci, 299 F.3d at 1159), then Judge Burns would have to have

3  intended two different meanings of the word "should" in the space of two consecutive sentences. That could

4  not have been his intent. But even if it were, no grand jury could ever have had that understanding.[8] Jurors

5  are not presumed to be capable of sorting through internally contradictory instructions. See generally United

6  States v. Lewis, 67 F.3d 225, 234 (9th Cir. 1995) ("where two instructions conflict, a reviewing court cannot

7  presume that the jury followed the correct one") (citation, internal quotations and brackets omitted).

8       Lest there be any room for ambiguity, on no less than four occasions, Judge Burns made it explicitly

9  clear to the grand jurors that "should" was not merely suggestive, but obligatory:

10       **(1)**  The first occasion occurred in the following exchange when Judge Burns conducted voir dire

11  and excused a potential juror (CSW):

12       The Court: . . . If there's probable cause, then the case should go forward. I wouldn't want
        you to say, "Well, yeah, there's probable cause. But I still don't like what the government
13      is doing. I disagree with these laws, so I'm not going to vote for it to go forward." If that's
        your frame of mind, then probably you shouldn't serve. Only you can tell me that.
14      Prospective Juror: Well, I think I may fall in that category.
        The Court: In the latter category?
15      Prospective Juror: Yes.
        The Court: Where it would be difficult for you to support a charge even if   you thought the
16      evidence warranted it?
        Prospective Juror: Yes.
17      The Court: I'm going to excuse you then.

18  See Ex. B at 17. There was nothing ambiguous about the word "should" in this exchange with a prospective

19  juror. Even if the prospective juror did not like what the government was doing in a particular case, that case

20  "should go forward" and Judge Burns expressly disapproved of any vote that might prevent that. See id. ("I

21  wouldn't want you [to vote against such a case]"). The sanction for the possibility of independent judgment

22  was dismissal, a result that provided full deterrence of that juror's discretion and secondary deterrence as

23  to the exercise of discretion by any other prospective grand juror.

24       **(2)**  In an even more explicit example of what "should" meant, Judge Burns makes clear that it

25

26

27       [8] This argument does not turn on Mr. Ochoa-Ramirez' view that the Navarro-Vargas/Marcucci
    reading of the word "should" in the model instructions is wildly implausible. Rather, it turns on the context
    in which the word is employed by Judge Burns in his unique instructions, context which eliminates the
28  Navarro-Vargas/Marcucci reading as a possibility.

1    there is an unbending obligation to indict if there is probable cause.  Grand jurors have no other prerogative.

2    Court  . . . It's not for me to say, "Well, I don't like it.  So I'm not going to follow it here."

3         You'd have a similar *obligation* as a grand juror even though you might have to grit your
         teeth on some cases.  Philosophically, if you were a member of Congress, you'd vote against,
4         for example, criminalizing marijuana.  I don't know if that's it, but you'd vote against
         criminalizing some drugs.
5
         That's not what your *prerogative* is here.  Your prerogative instead is act like a judge and to
6         say, "All right.  This is what I've got to deal with objectively.  Does it seem to me that a
         crime was committed?  Yes.  Does it seem to me that this person's involved? It does."  *And*
7         *then your obligation, if you find those things to be true, would be to vote in favor of the case*
         *going forward*.
8

9    Id. at 26-27 (emphasis added).  After telling this potential juror (REA) what his obligations and prerogatives

10   were, the Court inquired as to whether "you'd be inclined to let people go on drug cases even though you

11   were convinced there was probable cause they committed a drug offense?" Id. at 27.  The potential juror

12   responded: "It would depend on the case." Id.  Nevertheless, that juror was excused.  Id. at 28.  Again, in

13   this context, and contrary to the situation in Navarro-Vargas, "should" means "shall"; it is obligatory, and

14   the juror has no prerogative to do anything other than indict if there is probable cause.

15        Moreover, as this example demonstrates, the issue is not limited to whether the grand jury believes

16   a particular law to be "unwise."  This juror said that any decision to indict would not depend on the law, but

17   rather it would "depend on the case."  Thus, it is clear that Judge Burns's point was that if a juror could not

18   indict on probable cause for *every* case, then that juror was not fit for service.  It is equally clear that the

19   prospective juror did not dispute the "wisdom of the law;" he was prepared to indict under some factual

20   scenarios, perhaps many.  But Judge Burns did not pursue the question of what factual scenarios troubled

21   the prospective jurors, because his message is that there is no discretion not to indict.

22        **(3)**     As if the preceding examples were not enough, Judge Burns continued to pound the point

23   home that "should" meant "shall" when it told another grand juror during voir dire: "[W]hat I have to insist

24   on is that you follow the law that's given to us by the United States Congress.  We enforce the federal laws

25   here." See id. at 61.

26        **(4)**     And then again, after swearing in all the grand jurors who had already agreed to indict in

27   every case where there was probable cause, Judge Burns reiterated that "should" means "shall" when it

28   reminded them that "your option is not to say 'well, I'm going to vote against indicting even though I think

that the evidence is sufficient . . . . Instead your *obligation* is . . . not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting." <u>See</u> Ex. A at 9.

Moreover, Judge Burns advised the grand jurors that the were forbidden from considering the penalties to which indicted persons may be subject.

> Prospective Juror (REA): ... And as far as being fair, it kind of depends on what the case is
> about because there is a disparity between state and federal law.
> The Court:  In what regard?
> Prospective Juror: Specifically, medical marijuana.
> The Court:  Well, those things -- the consequences of your determination shouldn't concern
> you in the sense that penalties or punishment, things like that -- *we tell trial jurors, of course,*
> *that they cannot consider the punishment or the consequence that Congress has set for these*
> *things.  We'd ask you to also abide by that.*  We want you to make a business-like decision
> of whether there was a probable cause. ...

<u>See</u> Ex. B at 24-25 (emphasis added).  A "business-like decision of whether there was a probable cause" would obviously leave no role for the consideration of penalty information.

The Ninth Circuit previously rejected a claim based upon the proscription against consideration of penalty information based upon the same unlikely reading of the word "should" employed in <u>Marcucci</u>.  <u>See</u> <u>United States v. Cortez-Rivera</u>, 454 F.3d 1038, 1040-41 (9th Cir. 2006).  <u>Cortez-Rivera</u> is inapposite for two reasons. First, Judge Burns did not use the term "should" in the passage quoted above.  Second, that context, as well as his consistent use of a mandatory meaning in employing the term, eliminate the ambiguity (if there ever was any) relied upon by <u>Cortez-Rivera</u>.  The instructions again violate <u>Vasquez</u>, which plainly authorized consideration of penalty information.  <u>See</u> 474 U.S. at 263.

Noting can mask the undeniable fact that Judge Burns explicitly instructed the jurors time and time again that they had a duty, an obligation, and a singular prerogative to indict each and every case where there was probable cause.  These instructions go far beyond the holding of <u>Navarro-Vargas</u> and stand in direct contradiction of the Supreme Court's decision in <u>Vasquez</u>.  Indeed, it defies credulity to suggest that a grand juror hearing these instructions, and that voir dire, could possibly believe what the Supreme Court held in <u>Vasquez</u>:

> The grand jury does not determine only that probable cause exists to believe that a defendant
> committed a crime, or that it does not.  In the hands of the grand jury lies the power to charge
> a greater offense or a lesser offense; numerous counts or a single count; and perhaps most
> significant of all, a capital offense or a non-capital offense – all on the basis of the same
>
> facts.  Moreover, "[t]he grand jury is not bound to indict in every case where a conviction
> can be obtained."

474 U.S. at 263 (quoting <u>United States v. Ciambrone</u>, 601 F.2d 616, 629 (2nd Cir. 1979) (Friendly, J., dissenting)); <u>accord</u> <u>Campbell v. Louisiana</u>, 523 U.S. 392, 399 (1998) (The grand jury "controls not only the initial decision to indict, but also significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime."). Nor would the January 2007 grand jury ever believe that it was empowered to assess the "the need to indict." <u>See</u> <u>id.</u> at 264. Judge Burns's grand jury is not <u>Vasquez</u>'s grand jury. The instructions therefore represent structural constitutional error "that interferes with the grand jury's independence and the integrity of the grand jury proceeding." <u>See</u> <u>United States v. Isgro</u>, 974 F.2d 1091, 1094 (9th Cir. 1992). The indictment must therefore be dismissed. <u>Id.</u>

The <u>Navarro-Vargas II</u> majority's faith in the structure of the grand jury *is not* a cure for the instructions excesses. The <u>Navarro-Vargas II</u> majority attributes "[t]he grand jury's discretion -- its independence -- [to] the absolute secrecy of its deliberations and vote and the unreviewability of its decisions." 408 F.3d at 1200. As a result, the majority discounts the effect that a judge's instructions may have on a grand jury because "it is the *structure* of the grand jury process and its *function* that make it independent." <u>Id.</u> at 1202 (emphases in the original).

Judge Hawkins sharply criticized this approach. The majority, he explains, "believes that the 'structure' and 'function' of the grand jury -- particularly the secrecy of the proceedings and unreviewability of many of its decisions -- sufficiently protects that power." <u>See</u> <u>id.</u> at 1214 (Hawkins, J., dissenting). The flaw in the majority's analysis is that "[i]nstructing a grand jury that it lacks power to do anything beyond making a probable cause determination ... unconstitutionally undermines the very structural protections that the majority believes save[] the instruction." <u>Id.</u> After all, it is an "'almost invariable assumption of the law that jurors follow their instructions.'" <u>Id.</u> (quoting <u>Richardson v. Marsh</u>, 481 U.S. 200, 206 (1987)). If that "invariable assumption" were to hold true, then the grand jurors could not possibly fulfill the role described in <u>Vasquez</u>. Indeed, "there is something supremely cynical about saying that it is fine to give jurors erroneous instructions because nothing will happen if they disobey them." <u>Id.</u>

In setting forth Judge Hawkins' views, Mr. Ochoa-Ramirez understands that Judge Burns may not adopt them solely because the reasoning that supports them is so much more persuasive than the majority's

1    sophistry.  Rather, he sets them forth to urge the Court *not to extend* what is already untenable reasoning.

2         Here, again, the question is not an obscure interpretation of the word "should", especially in light

3    of the instructions and commentary by Judge Burns during voir dire discussed above - unaccounted for by

4    the Court in <u>Navarro-Vargas II</u> because they had not yet been disclosed to the defense, but an absolute ban

5    on the right to refuse to indict that directly conflicts with the recognition of that right in <u>Vasquez</u>, <u>Campbell</u>,

6    and both <u>Navarro-Vargas II</u> opinions.  <u>Navarro-Vargas II</u> is distinguishable on that basis, but not only that.

7         Judge Burns did not limit itself to denying the grand jurors the power that <u>Vasquez</u> plainly states they

8    enjoy.  He also excused prospective grand jurors who might have exercised that Fifth Amendment

9    prerogative, excusing "three [jurors] in this case, because they could not adhere to [that] principle...."  <u>See</u>

10   Ex. A at 8; Ex. B at 17, 28.  The structure of the grand jury and the secrecy of its deliberations cannot

11   embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the

12   conscience of the community.  <u>See</u> <u>Navarro-Vargas II</u>, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a

13   grand jury exercising its powers under <u>Vasquez</u> "serves ... to protect the accused from the other branches

14   of government by acting as the 'conscience of the community.'") (quoting <u>Gaither v. United States</u>, 413 F.2d

15   1061, 1066 &  n.6 (D.C. Cir. 1969)).  The federal courts possess only "very limited" power "to fashion, on

16   their own initiative, rules of grand jury procedure," <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992), and,

17   here, Judge Burns has both fashioned his own rules and enforced them.

18   **D.    The Instructions Conflict with <u>Williams</u>' Holding That There Is No Duty to Present
         Exculpatory Evidence to the Grand Jury.**

19

20        In <u>Williams</u>, the defendant, although conceding that it was not required by the Fifth Amendment,

21   argued that the federal courts should exercise their supervisory power to order prosecutors to disclose

22   exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth Amendment

23   common law.  <u>See</u> 504 U.S. at 45, 51.  <u>Williams</u> held that "as a general matter at least, no such 'supervisory'

24   judicial authority exists."  <u>See</u> <u>id.</u> at 47.  Indeed, although the supervisory power may provide the authority

25   "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct

26   amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by Judge

27   Burns and by Congress to ensure the integrity of the grand jury's functions,'" <u>id.</u> at 46 (citation omitted),

28   it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first instance."

1   Id. at 47 (emphasis added).  The federal courts possess only "very limited" power "to fashion, on their own

2   initiative, rules of grand jury procedure."  Id. at 50.  As a consequence, Williams rejected the defendant's

3   claim, both as an exercise of supervisory power and as Fifth Amendment common law.  See id. at 51-55.

4          Despite the holding in Williams, the instructions here assure the grand jurors that prosecutors would

5   present to them evidence that tended to undercut probable cause.  See Ex. A at 20.

6          Now, again, this emphasizes the difference between the function of the grand jury and the
    trial jury.  You're all about probable cause.  If you think that there's evidence out there that
7          might cause you say "well, I don't think probable cause exists," then it's incumbent upon you
           to hear that evidence as well.  As I told you, in most instances, *the U.S. Attorneys are duty-*
8          *bound to present evidence that cuts against what they may be asking you to do if they're*
           *aware of that evidence.*
9

10  Id. (emphasis added).  Moreover, the district court later returned to the notion of the prosecutors and their

11  duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of

12  [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you."  See

13  id. at 27.  The Ninth Circuit has already concluded it is likely this final comment is "unnecessary."  See

14  Navarro-Vargas, 408 F.3d at 1207.

15         This particular instruction has a devastating effect on the grand jury's protective powers, particularly

16  if it is not true.  It begins by emphasizing the message that Navarro-Vargas II somehow concluded was not

17  conveyed by the previous instruction: "You're all about probable cause."  See Ex. A at 20.  Thus, once again,

18  the grand jury is reminded that they are limited to probable cause determinations (a reminder that was

19  probably unnecessary in light of the fact that Judge Burns had already told the grand jurors that they likely

20  would be excused if they rejected this limitation).  The instruction goes on to tell the grand jurors that they

21  should consider evidence that undercuts probable cause, but also advises the grand jurors that the prosecutor

22  will present it.  The end result, then, is that grand jurors should consider evidence that goes against probable

23  cause, but, if none is presented by the government, they can presume that there is none.  After all, "in most

24  instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking

25  you to do if they're aware of that evidence."  See id.  Moreover, during voir dire, Judge Burns informed the

26  jurors that "my experience is that the prosecutors don't play hide-the-ball.  If there's something adverse or

27  that cuts against the charge, you'll be informed of that.  *They have a duty to do that*."  See Ex. B at 14-15

28  (emphasis added).  Thus, if the exculpatory evidence existed, it necessarily would have been presented by

the "duty-bound" prosecutor, because the grand jurors "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." See Ex. A at 27.

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1)     I have to consider evidence that undercuts probable cause.

(2)     The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3)     Because no such evidence was presented to me, I may conclude that there is none.

Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions, therefore, discourage investigation -- if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time -- and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

**V.**

**MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

***Defense counsel has received 37 pages and 1 DVD of discovery in this case.*** As more information comes to light, due to the Government providing additional discovery in response to these motions or an order of this Court, the defense may find it necessary to file further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

///

///

///

1

**VI.**

2

**<u>CONCLUSION</u>**

3

For the foregoing reasons, Mr. Ochoa-Ramirez respectfully requests that the Court grant the above

4

motions.

5

Respectfully submitted,

6

7

Dated: June 23, 2008                          <u>s/ Hanni M. Fakhoury</u>
                                              **HANNI M. FAKHOURY**

8

Federal Defenders of San Diego, Inc.
Attorneys for Mr. Ochoa-Ramirez

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDEX TO EXHIBITS

<u>UNITED STATES V. OCHOA-RAMIREZ</u>
08CR1637-WQH

Page

EXHIBIT A    -    Reporter's Transcript of Proceedings January 11, 2007 In
Re: The Impanelment of Grand Jury Panels 07-1 and 07-2 . . . . . . . . . . . . . . . . . 1

EXHIBIT B    -    Reporter's Transcript of Proceedings January 11, 2007 In
Re: The Impanelment of Grand Jury Panels 07-1 and 07-2 . . . . . . . . . . . . . . . 34

# EXHIBIT "A"

Reporter's Transcript of Proceedings
January 11, 2007
In Re: The Impanelment of Grand
Jury Panels 07-1 and 07-2



1             UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF CALIFORNIA

3

4

5

   IN RE:  THE IMPANELMENT           )
6                                     )
   OF GRAND JURY PANELS 07-1 AND      )
7                                     )
   07-2                               )
8                                     )
                                      )
9  _____)

10

11        BEFORE THE HONORABLE LARRY ALAN BURNS

12            UNITED STATES DISTRICT JUDGE

13

14     REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

15          WEDNESDAY, JANUARY 11, 2007

16

17

18

19

20

21

   COURT REPORTER:              EVA OEMICK
22                              OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
23                              940 FRONT STREET, STE. 2190
                                SAN DIEGO, CA 92101
24                              TEL: (619) 615-3103

25

2

2

<u>SAN DIEGO, CALIFORNIA-WEDNESDAY, JANUARY 11, 2007-9:30 A.M.</u>

1

2      THE COURT:  LADIES AND GENTLEMEN, YOU HAVE BEEN

3 SELECTED TO SIT ON THE GRAND JURY.  IF YOU'LL STAND AND RAISE

4 YOUR RIGHT HAND, PLEASE.

5      MR. HAMRICK:  DO YOU, AND EACH OF YOU, SOLEMNLY

6 SWEAR OR AFFIRM THAT YOU SHALL DILIGENTLY INQUIRE INTO AND

7 MAKE TRUE PRESENTMENT OR INDICTMENT OF ALL MATTERS AND THINGS

8 AS SHALL BE GIVEN TO YOU IN CHARGE OR OTHERWISE COME TO YOUR

9 KNOWLEDGE TOUCHING YOUR GRAND JURY SERVICE; TO KEEP SECRET THE

10 COUNSEL OF THE UNITED STATES, YOUR FELLOWS AND YOURSELVES; NOT

11 TO PRESENT OR INDICT ANY PERSON THROUGH HATRED, MALICE OR ILL

12 WILL; NOR LEAVE ANY PERSON UNREPRESENTED OR UNINDICTED THROUGH

13 FEAR, FAVOR, OR AFFECTION, NOR FOR ANY REWARD, OR HOPE OR

14 PROMISE THEREOF; BUT IN ALL YOUR PRESENTMENTS AND INDICTMENTS

15 TO PRESENT THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE

16 TRUTH, TO THE BEST OF YOUR SKILL AND UNDERSTANDING?

17      IF SO, ANSWER, "I DO."

18      (ALL GRAND JURORS ANSWER AFFIRMATIVELY)

19      THE COURT:  ALL JURORS HAVE TAKEN THE OATH AND

20 ANSWERED AFFIRMATIVELY.

21      IF YOU'LL HAVE A SEAT.  WE ARE NEARLY COMPLETED WITH

22 THIS PROCESS.

23      I AM OBLIGATED BY THE CONVENTION OF THE COURT AND

24 THE LAW OF THE UNITED STATES TO GIVE YOU A FURTHER CHARGE

25 REGARDING YOUR RESPONSIBILITY AS GRAND JURORS.  THIS WILL

PDF created with pdfFactory trial version www.pdffactory.com

3

1    APPLY NOT ONLY TO THOSE WHO HAVE BEEN SWORN, BUT THE REST OF

2    YOU WHOSE NAMES HAVE NOT YET BEEN CALLED, YOU ARE GOING TO BE

3    PUT IN RESERVE FOR US.

4            AND IF DISABILITIES OCCUR -- I DON'T MEAN IN A

5    PHYSICAL SENSE, BUT PEOPLE MOVE OR SITUATIONS COME UP WHERE

6    SOME OF THE FOLKS THAT HAVE BEEN SWORN IN TODAY ARE RELIEVED,

7    YOU WILL BE CALLED AS REPLACEMENT GRAND JURORS.  SO THESE

8    INSTRUCTIONS APPLY TO ALL WHO ARE ASSEMBLED HERE TODAY.

9            NOW THAT YOU HAVE BEEN IMPANELED AND SWORN AS A

10   GRAND JURY, IT'S THE COURT'S RESPONSIBILITY TO INSTRUCT YOU ON

11   THE LAW WHICH GOVERNS YOUR ACTIONS AND YOUR DELIBERATIONS AS

12   GRAND JURORS.

13           THE FRAMERS OF OUR FEDERAL CONSTITUTION DETERMINED

14   AND DEEMED THE GRAND JURY SO IMPORTANT TO THE ADMINISTRATION

15   OF JUSTICE THAT THEY INCLUDED A PROVISION FOR THE GRAND JURY

16   IN OUR BILL OF RIGHTS.

17           AS I SAID BEFORE, THE 5TH AMENDMENT TO THE UNITED

18   STATES CONSTITUTION PROVIDES, IN PART, THAT NO PERSON SHALL BE

19   HELD TO ANSWER FOR A CAPITAL OR OTHERWISE INFAMOUS CRIME

20   WITHOUT ACTION BY THE GRAND JURY.

21           WHAT THAT MEANS IN A VERY REAL SENSE IS YOU'RE THE

22   BUFFER BETWEEN THE GOVERNMENT'S POWER TO CHARGE SOMEONE WITH A

23   CRIME AND THAT CASE GOING FORWARD OR NOT GOING FORWARD.

24           THE FUNCTION OF THE GRAND JURY, IN FEDERAL COURT AT

25   LEAST, IS TO DETERMINE PROBABLE CAUSE.  THAT'S THE SIMPLE

PDF created with pdfFactory trial version www.pdffactory.com

4

1    FORMULATION THAT I MENTIONED TO A NUMBER OF YOU DURING THE

2    JURY SELECTION PROCESS.  PROBABLE CAUSE IS JUST AN ANALYSIS OF

3    WHETHER A CRIME WAS COMMITTED AND THERE'S A REASONABLE BASIS

4    TO BELIEVE THAT AND WHETHER A CERTAIN PERSON IS ASSOCIATED

5    WITH THE COMMISSION OF THAT CRIME, COMMITTED IT OR HELPED

6    COMMIT IT.

7           IF THE ANSWER IS YES, THEN AS GRAND JURORS YOUR

8    FUNCTION IS TO FIND THAT THE PROBABLE CAUSE IS THERE, THAT THE

9    CASE HAS BEEN SUBSTANTIATED, AND IT SHOULD MOVE FORWARD.  IF

10   CONSCIENTIOUSLY, AFTER LISTENING TO THE EVIDENCE, YOU SAY "NO,

11   I CAN'T FORM A REASONABLE BELIEF EITHER THAT A CRIME WAS

12   COMMITTED OR THAT THIS PERSON HAS ANYTHING TO DO WITH IT, THEN

13   YOUR OBLIGATION, OF COURSE, WOULD BE TO DECLINE TO INDICT, TO

14   TURN THE CASE AWAY AND NOT HAVE IT GO FORWARD.

15          A GRAND JURY CONSISTS OF 23 MEMBERS OF THE COMMUNITY

16   DRAWN AT RANDOM.  I'VE USED THE TERM "INFAMOUS CRIME."  AN

17   INFAMOUS CRIME, UNDER OUR LAW, REFERS TO A SERIOUS CRIME WHICH

18   CAN BE PUNISHED BY IMPRISONMENT BY MORE THAN ONE YEAR.  THE

19   PROSECUTORS WILL PRESENT FELONY CASES TO THE GRAND JURY.

20   MISDEMEANORS, UNDER FEDERAL LAW, THEY HAVE DISCRETION TO

21   CHARGE ON THEIR OWN.  AND THEY'RE NOT -- THOSE CHARGES --

22   MISDEMEANORS AREN'T ENTITLED TO PRESENTMENT BEFORE A GRAND

23   JURY.

24          BUT ANY CASE THAT CARRIES A PENALTY OF A YEAR OR

25   MORE MUST BE PRESENTED TO -- ACTUALLY, MORE THAN A YEAR.  A

COMPUTER-AIDED TRANSCRIPTION

5

PDF created with pdfFactory trial version www.pdffactory.com

5

1    YEAR AND A DAY OR LONGER MUST BE PRESENTED TO A GRAND JURY.

2            THE PURPOSE OF THE GRAND JURY, AS I MENTIONED, IS TO

3    DETERMINE WHETHER THERE'S SUFFICIENT EVIDENCE TO JUSTIFY A

4    FORMAL ACCUSATION AGAINST A PERSON.

5            IF LAW ENFORCEMENT OFFICIALS -- AND I DON'T MEAN

6    THIS IN A DISPARAGING WAY.  BUT IF LAW ENFORCEMENT OFFICIALS,

7    INCLUDING AGENTS AS WELL AS THE FOLKS THAT STAFF THE U.S.

8    ATTORNEY'S OFFICE, WERE NOT REQUIRED TO SUBMIT CHARGES TO AN

9    IMPARTIAL GRAND JURY TO DETERMINE WHETHER THE EVIDENCE WAS

10   SUFFICIENT, THEN OFFICIALS IN OUR COUNTRY WOULD BE FREE TO

11   ARREST AND BRING ANYONE TO TRIAL NO MATTER HOW LITTLE EVIDENCE

12   EXISTED TO SUPPORT THE CHARGE.  WE DON'T WANT THAT.  WE DON'T

13   WANT THAT.

14           WE WANT THE BURDEN OF THE TRIAL TO BE JUSTIFIED BY

15   SUBSTANTIAL EVIDENCE, EVIDENCE THAT CONVINCES YOU OF PROBABLE

16   CAUSE TO BELIEVE THAT A CRIME PROBABLY OCCURRED AND THE PERSON

17   IS PROBABLY RESPONSIBLE.

18           NOW, AGAIN, I MAKE THE DISTINCTION YOU DON'T HAVE TO

19   VOTE ON ULTIMATE OUTCOMES.  THAT'S NOT UP TO YOU.  YOU CAN BE

20   ASSURED THAT IN EACH CASE, YOU INDICT THE PERSON WHO WILL BE

21   ENTITLED TO A FULL SET OF RIGHTS AND THAT THERE WILL BE A JURY

22   TRIAL IF THE PERSON ELECTS ONE.  THE JURY WILL HAVE TO PASS ON

23   THE ACCUSATION ONCE AGAIN USING A MUCH HIGHER STANDARD OF

24   PROOF, PROOF BEYOND A REASONABLE DOUBT.

25           AS MEMBERS OF THE GRAND JURY, YOU, IN A VERY REAL

COMPUTER-AIDED TRANSCRIPTION

6

PDF created with pdfFactory trial version www.pdffactory.com

6

1    SENSE, STAND BETWEEN THE GOVERNMENT AND THE ACCUSED.  IT'S

2    YOUR DUTY TO SEE THAT INDICTMENTS ARE RETURNED ONLY AGAINST

3    THOSE WHOM YOU FIND PROBABLE CAUSE TO BELIEVE ARE GUILTY AND

4    TO SEE TO IT THAT THE INNOCENT ARE NOT COMPELLED TO GO TO

5    TRIAL OR EVEN COMPELLED TO FACE AN ACCUSATION.

6         IF A MEMBER OF THE GRAND JURY IS RELATED BY BLOOD OR

7    MARRIAGE OR KNOWS OR SOCIALIZES TO SUCH AN EXTENT AS TO FIND

8    HIMSELF OR HERSELF IN A BIASED STATE OF MIND AS TO THE PERSON

9    UNDER INVESTIGATION OR ALTERNATIVELY YOU SHOULD FIND YOURSELF

10   BIASED FOR ANY REASON, THEN THAT PERSON SHOULD NOT PARTICIPATE

11   IN THE INVESTIGATION UNDER QUESTION OR RETURN THE

12   INDICTMENT.

13        ONE OF OUR GRAND JURORS, MS. GARFIELD, HAS RELATIVES

14   THAT -- OBVIOUSLY, MS. GARFIELD, IF YOUR SON OR YOUR HUSBAND

15   WAS EVER CALLED IN FRONT OF THE GRAND JURY, THAT WOULD BE A

16   CASE WHERE YOU WOULD SAY, "THIS IS JUST TOO CLOSE.  I'M GOING

17   TO RECUSE MYSELF FROM THIS PARTICULAR CASE.  NO ONE WOULD

18   IMAGINE THAT I COULD BE ABSOLUTELY IMPARTIAL WHEN IT COMES TO

19   MY OWN BLOOD RELATIVES."

20        SO THOSE ARE THE KINDS OF SITUATIONS THAT I REFER TO

21   WHEN I TALK ABOUT EXCUSING YOURSELF FROM A PARTICULAR GRAND

22   JURY DELIBERATION.  IF THAT HAPPENS, YOU SHOULD INDICATE TO

23   THE FOREPERSON OF THE GRAND JURY, WITHOUT GOING INTO DETAIL,

24   FOR WHATEVER REASON, THAT YOU WANT TO BE EXCUSED FROM GRAND

25   JURY DELIBERATIONS ON A PARTICULAR CASE OR CONSIDERATION OF A

PDF created with pdfFactory trial version www.pdffactory.com

7

1    PARTICULAR MATTER IN WHICH YOU FEEL YOU'RE BIASED OR YOU MAY

2    HAVE A CONFLICT.

3            THIS DOES NOT MEAN THAT IF YOU HAVE AN OPPORTUNITY,

4    YOU SHOULD NOT PARTICIPATE IN AN INVESTIGATION.  HOWEVER, IT

5    DOES MEAN THAT IF YOU HAVE A FIXED STATE OF MIND BEFORE YOU

6    HEAR EVIDENCE EITHER ON THE BASIS OF FRIENDSHIP OR BECAUSE YOU

7    HATE SOMEBODY OR HAVE SIMILAR MOTIVATION, THEN YOU SHOULD STEP

8    ASIDE AND NOT PARTICIPATE IN THAT PARTICULAR GRAND JURY

9    INVESTIGATION AND IN VOTING ON THE PROPOSED INDICTMENT.  THIS

10   IS WHAT I MEANT WHEN I TALKED TO YOU ABOUT BEING FAIR-MINDED.

11           ALTHOUGH THE GRAND JURY HAS EXTENSIVE POWERS,

12   THEY'RE LIMITED IN SOME IMPORTANT RESPECTS.

13           FIRST, THESE ARE THE LIMITATIONS ON YOUR SERVICE:

14   YOU CAN ONLY INVESTIGATE CONDUCT THAT VIOLATES THE FEDERAL

15   CRIMINAL LAWS.  THAT'S YOUR CHARGE AS FEDERAL GRAND JURORS, TO

16   LOOK AT VIOLATIONS OR SUSPECTED VIOLATIONS OF FEDERAL CRIMINAL

17   LAW.

18           YOU ARE A FEDERAL GRAND JURY, AND CRIMINAL ACTIVITY

19   WHICH VIOLATES STATE LAW, THE LAWS OF THE STATE OF CALIFORNIA,

20   IS OUTSIDE OF YOUR INQUIRY.  IT MAY HAPPEN AND FREQUENTLY DOES

21   HAPPEN THAT SOME OF THE CONDUCT THAT'S UNDER INVESTIGATION BY

22   THE FEDERAL GRAND JURY ALSO VIOLATES STATE LAW.  AND THIS IS

23   FINE.  THAT'S PROPER.  BUT THERE ALWAYS HAS TO BE SOME FEDERAL

24   CONNECTION TO WHAT IS UNDER INVESTIGATION OR YOU HAVE NO

25   JURISDICTION.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

8

1           THERE'S ALSO A GEOGRAPHIC LIMITATION ON THE SCOPE OF

2     YOUR INQUIRIES AND THE EXERCISE OF YOUR POWERS.  YOU MAY

3     INQUIRE ONLY INTO FEDERAL OFFENSES COMMITTED IN OUR FEDERAL

4     DISTRICT, WHICH INCLUDES SAN DIEGO AND IMPERIAL COUNTIES; THAT

5     IS, THE SOUTHERN DISTRICT OF CALIFORNIA.

6           YOU MAY HAVE CASES THAT IMPLICATE ACTIVITIES IN

7     OTHER AREAS, OTHER DISTRICTS, AND THERE MAY BE SOME EVIDENCE

8     OF CRIMINAL ACTIVITY IN CONJUNCTION WITH WHAT GOES ON HERE

9     THAT'S ALSO HAPPENING ELSEWHERE.  THERE ALWAYS HAS TO BE A

10    CONNECTION TO OUR DISTRICT.

11          THROUGHOUT THE UNITED STATES, WE HAVE 93 DISTRICTS

12    NOW.  THE STATES ARE CUT UP LIKE PIECES OF PIE, AND EACH

13    DISTRICT IS SEPARATELY DENOMINATED, AND EACH DISTRICT HAS

14    RESPONSIBILITY FOR THEIR OWN COUNTIES AND GEOGRAPHY.  AND YOU,

15    TOO, ARE BOUND BY THAT LIMITATION.

16          I'VE GONE OVER THIS WITH A COUPLE OF PEOPLE.  YOU

17    UNDERSTOOD FROM THE QUESTIONS AND ANSWERS THAT A COUPLE OF

18    PEOPLE WERE EXCUSED, I THINK THREE IN THIS CASE, BECAUSE THEY

19    COULD NOT ADHERE TO THE PRINCIPLE THAT I'M ABOUT TO TELL YOU.

20          BUT IT'S NOT FOR YOU TO JUDGE THE WISDOM OF THE

21    CRIMINAL LAWS ENACTED BY CONGRESS; THAT IS, WHETHER OR NOT

22    THERE SHOULD BE A FEDERAL LAW OR SHOULD NOT BE A FEDERAL LAW

23    DESIGNATING CERTAIN ACTIVITY IS CRIMINAL IS NOT UP TO YOU.

24    THAT'S A JUDGMENT THAT CONGRESS MAKES.

25          AND IF YOU DISAGREE WITH THAT JUDGMENT MADE BY

COMPUTER-AIDED TRANSCRIPTION

9

9

1    CONGRESS, THEN YOUR OPTION IS NOT TO SAY "WELL, I'M GOING TO

2    VOTE AGAINST INDICTING EVEN THOUGH I THINK THAT THE EVIDENCE

3    IS SUFFICIENT" OR "I'M GOING TO VOTE IN FAVOR OF EVEN THOUGH

4    THE EVIDENCE MAY BE INSUFFICIENT."  INSTEAD, YOUR OBLIGATION

5    IS TO CONTACT YOUR CONGRESSMAN OR ADVOCATE FOR A CHANGE IN THE

6    LAWS, BUT NOT TO BRING YOUR PERSONAL DEFINITION OF WHAT THE

7    LAW OUGHT TO BE AND TRY TO IMPOSE THAT THROUGH APPLYING IT IN

8    A GRAND JURY SETTING.

9            FURTHERMORE, WHEN YOU'RE DECIDING WHETHER TO INDICT

10   OR NOT TO INDICT, YOU SHOULDN'T BE CONCERNED WITH PUNISHMENT

11   THAT ATTACHES TO THE CHARGE.  I THINK I ALSO ALLUDED TO THIS

12   IN THE CONVERSATION WITH ONE GENTLEMAN.  JUDGES ALONE

13   DETERMINE PUNISHMENT.  WE TELL TRIAL JURIES IN CRIMINAL CASES

14   THAT THEY'RE NOT TO BE CONCERNED WITH THE MATTER OF PUNISHMENT

15   EITHER.  YOUR OBLIGATION AT THE END OF THE DAY IS TO MAKE A

16   BUSINESS-LIKE DECISION ON FACTS AND APPLY THOSE FACTS TO THE

17   LAW AS IT'S EXPLAINED AND READ TO YOU.

18           THE CASES WHICH YOU'LL APPEAR WILL COME BEFORE YOU

19   IN VARIOUS WAYS.  FREQUENTLY, PEOPLE ARE ARRESTED DURING OR

20   SHORTLY AFTER THE COMMISSION OF AN ALLEGED CRIME.  AND THEN

21   THEY'RE TAKEN BEFORE A MAGISTRATE JUDGE, WHO HOLDS A

22   PRELIMINARY HEARING TO DETERMINE WHETHER INITIALLY THERE'S

23   PROBABLE CAUSE TO BELIEVE A PERSON'S COMMITTED A CRIME.

24           ONCE THE MAGISTRATE JUDGE FINDS PROBABLE CAUSE, HE

25   OR SHE WILL DIRECT THAT THE ACCUSED PERSON BE HELD FOR ACTION

PDF created with pdfFactory trial version www.pdffactory.com

10

1    BY THE GRAND JURY.  REMEMBER, UNDER OUR SYSTEM AND THE 5TH

2    AMENDMENT, TRIALS OF SERIOUS AND INFAMOUS CRIMES CAN ONLY

3    PROCEED WITH GRAND JURY ACTION.  SO THE DETERMINATION OF THE

4    MAGISTRATE JUDGE IS JUST TO HOLD THE PERSON UNTIL THE GRAND

5    JURY CAN ACT.  IT TAKES YOUR ACTION AS A GRAND JURY BEFORE THE

6    CASE CAN FORMALLY GO FORWARD.  IT'S AT THAT POINT THAT YOU'LL

7    BE CALLED UPON TO CONSIDER WHETHER AN INDICTMENT SHOULD BE

8    RETURNED IN A GIVEN CASE.

9         OTHER CASES MAY BE BROUGHT TO YOU BY THE UNITED

10   STATES ATTORNEY OR AN ASSISTANT UNITED STATES ATTORNEY BEFORE

11   AN ARREST IS MADE.  BUT DURING THE COURSE OF AN INVESTIGATION

12   OR AFTER AN INVESTIGATION HAS BEEN CONDUCTED, THERE'S TWO WAYS

13   THAT CASES GENERALLY ENTER THE CRIMINAL JUSTICE PROCESS:  THE

14   REACTIVE OFFENSES WHERE, AS THE NAME IMPLIES, THE POLICE REACT

15   TO A CRIME AND ARREST SOMEBODY.  AND THOSE CASES WILL THEN BE

16   SUBMITTED TO YOU AFTER MUCH OF THE FACTS ARE KNOWN.  AND THEN

17   THERE'S PROACTIVE CASES, CASES WHERE MAYBE THERE'S A SUSPICION

18   OR A HUNCH OF WRONGDOING.  THE FBI MAY BE CALLED UPON TO

19   INVESTIGATE OR SOME OTHER FEDERAL AGENCY, AND THEY MAY NEED

20   THE ASSISTANCE OF THE GRAND JURY IN FACILITATING THAT

21   INVESTIGATION.

22        THE GRAND JURY HAS BROAD INVESTIGATORY POWERS.  YOU

23   HAVE THE POWER TO ISSUE SUBPOENAS, FOR EXAMPLE, FOR RECORDS OR

24   FOR PEOPLE TO APPEAR.  SOMETIMES IT HAPPENS THAT PEOPLE SAY "I

25   DON'T HAVE TO TALK TO YOU" TO THE FBI, AND THEY REFUSE TO TALK

PDF created with pdfFactory trial version www.pdffactory.com

11

1    TO THE AUTHORITIES.  UNDER THOSE CIRCUMSTANCES, ON OCCASION,

2    THE FBI MAY GO TO THE U.S. ATTORNEY AND SAY, "LOOK, YOU NEED

3    TO FIND OUT WHAT HAPPENED HERE.  SUMMON THIS PERSON IN FRONT

4    OF THE GRAND JURY."  SO IT MAY BE THAT YOU'RE CALLED UPON TO

5    EVALUATE WHETHER A CRIME OCCURRED AND WHETHER THERE OUGHT TO

6    BE AN INDICTMENT.  YOU, IN A VERY REAL SENSE, ARE PART OF THE

7    INVESTIGATION.

8         IT MAY HAPPEN THAT DURING THE COURSE OF AN

9    INVESTIGATION INTO ONE CRIME, IT TURNS OUT THAT THERE IS

10   EVIDENCE OF A DIFFERENT CRIME THAT SURFACES.  YOU, AS GRAND

11   JURORS, HAVE A RIGHT TO PURSUE THE NEW CRIME THAT YOU

12   INVESTIGATE, EVEN CALLING NEW WITNESSES AND SEEKING OTHER

13   DOCUMENTS OR PAPERS OR EVIDENCE BE SUBPOENAED.

14        NOW, IN THAT REGARD, THERE'S A CLOSE ASSOCIATION

15   BETWEEN THE GRAND JURY AND THE U.S. ATTORNEY'S OFFICE AND THE

16   INVESTIGATIVE AGENCIES OF THE FEDERAL GOVERNMENT.  UNLIKE THE

17   U.S. ATTORNEY'S OFFICE OR THOSE INVESTIGATIVE AGENCIES, THE

18   GRAND JURY DOESN'T HAVE ANY POWER TO EMPLOY INVESTIGATORS OR

19   TO EXPEND FEDERAL FUNDS FOR INVESTIGATIVE PURPOSES.

20        INSTEAD, YOU MUST GO BACK TO THE U.S. ATTORNEY AND

21   ASK THAT THOSE THINGS BE DONE.  YOU'LL WORK CLOSELY WITH THE

22   U.S. ATTORNEY'S OFFICE IN YOUR INVESTIGATION OF CASES.  IF ONE

23   OR MORE GRAND JURORS WANT TO HEAR ADDITIONAL EVIDENCE ON A

24   CASE OR THINK THAT SOME ASPECT OF THE CASE OUGHT TO BE

25   PURSUED, YOU MAY MAKE THAT REQUEST TO THE U.S. ATTORNEY.

PDF created with pdfFactory trial version www.pdffactory.com

12

1          IF THE U.S. ATTORNEY REFUSES TO ASSIST YOU OR IF YOU

2     BELIEVE THAT THE U.S. ATTORNEY IS NOT ACTING IMPARTIALLY, THEN

3     YOU CAN TAKE THE MATTER UP WITH ME.  I'M THE ASSIGNED JURY

4     JUDGE, AND I WILL BE THE LIAISON WITH THE GRAND JURIES.

5          YOU CAN USE YOUR POWER TO INVESTIGATE EVEN OVER THE

6     ACTIVE OPPOSITION OF THE UNITED STATES ATTORNEY.  IF THE

7     MAJORITY OF YOU ON THE GRAND JURY THINK THAT A SUBJECT OUGHT

8     TO BE PURSUED AND THE U.S. ATTORNEY THINKS NOT, THEN YOUR

9     DECISION TRUMPS, AND YOU HAVE THE RIGHT TO HAVE THAT

10    INVESTIGATION PURSUED IF YOU BELIEVE IT'S NECESSARY TO DO SO

11    IN THE INTEREST OF JUSTICE.

12         I MENTION THESE THINGS TO YOU AS A THEORETICAL

13    POSSIBILITY.  THE TRUTH OF THE MATTER IS IN MY EXPERIENCE HERE

14    IN THE OVER 20 YEARS IN THIS COURT, THAT KIND OF TENSION DOES

15    NOT EXIST ON A REGULAR BASIS, THAT I CAN RECALL, BETWEEN THE

16    U.S. ATTORNEY AND GRAND JURIES.  THEY GENERALLY WORK TOGETHER.

17    THE U.S. ATTORNEY IS GENERALLY DEFERENTIAL TO THE GRAND JURY

18    AND WHAT THE GRAND JURY WANTS.

19         IT'S IMPORTANT TO KEEP IN MIND THAT YOU WILL AND DO

20    HAVE AN INVESTIGATORY FUNCTION AND THAT THAT FUNCTION IS

21    PARAMOUNT TO EVEN WHAT THE U.S. ATTORNEY MAY WANT YOU TO DO.

22         IF YOU, AS I SAID, BELIEVE THAT AN INVESTIGATION

23    OUGHT TO GO INTO OTHER AREAS BOTH IN TERMS OF SUBJECT MATTER,

24    BEING A FEDERAL CRIME, AND GEOGRAPHICALLY, THEN YOU AS A GROUP

25    CAN MAKE THAT DETERMINATION AND DIRECT THE INVESTIGATION THAT

PDF created with pdfFactory trial version www.pdffactory.com

13

1    WAY.

2           SINCE THE UNITED STATES ATTORNEY HAS THE DUTY OF

3    PROSECUTING PERSONS CHARGED WITH THE COMMISSION OF FEDERAL

4    CRIMES, SHE OR ONE OF HER ASSISTANTS -- BY THE WAY, THE U.S.

5    ATTORNEY IN OUR DISTRICT IS MS. CAROL LAM -- SHE OR ONE OF HER

6    ASSISTANTS WILL PRESENT THE MATTERS WHICH THE GOVERNMENT HAS

7    DESIRES TO HAVE YOU CONSIDER.  THE ATTORNEY WILL EDUCATE YOU

8    ON THE LAW THAT APPLIES BY READING THE LAW TO YOU OR POINTING

9    IT OUT, THE LAW THAT THE GOVERNMENT BELIEVES WAS VIOLATED.

10   THE ATTORNEY WILL SUBPOENA FOR TESTIMONY BEFORE YOU SUCH

11   WITNESSES AS THE LAWYER THINKS ARE IMPORTANT AND NECESSARY TO

12   ESTABLISH PROBABLE CAUSE AND ALLOW YOU TO DO YOUR FUNCTION,

13   AND ALSO ANY OTHER WITNESSES THAT YOU MAY REQUEST THE ATTORNEY

14   TO CALL IN RELATION TO THE SUBJECT MATTER UNDER INVESTIGATION.

15          REMEMBER THAT THE DIFFERENCE BETWEEN THE GRAND JURY

16   FUNCTION AND THAT OF THE TRIAL JURY IS THAT YOU ARE NOT

17   PRESIDING IN A FULL-BLOWN TRIAL.  IN MOST OF THE CASES THAT

18   YOU APPEAR, THE LAWYER FOR THE GOVERNMENT IS NOT GOING TO

19   BRING IN EVERYBODY THAT MIGHT BE BROUGHT IN AT THE TIME OF

20   TRIAL; THAT IS, EVERYBODY THAT HAS SOME RELEVANT EVIDENCE TO

21   OFFER.  THEY'RE NOT GOING TO BRING IN EVERYONE WHO CONCEIVABLY

22   COULD SAY SOMETHING THAT MIGHT BEAR ON THE OUTCOME.  THEY'RE

23   PROBABLY GOING TO BRING IN A LIMITED NUMBER OF WITNESSES JUST

24   TO ESTABLISH PROBABLE CAUSE.  OFTENTIMES, THEY PRESENT A

25   SKELETON CASE.  IT'S EFFICIENT.  IT'S ALL THAT'S NECESSARY.

PDF created with pdfFactory trial version www.pdffactory.com

14

1    IT SAVES TIME AND RESOURCES.

2            WHEN YOU ARE PRESENTED WITH A CASE, IT WILL TAKE 16

3    OF YOUR NUMBER OUT OF THE 23, 16 MEMBERS OF THE GRAND JURY OUT

4    OF THE 23, TO CONSTITUTE A QUORUM.  YOU CAN'T DO BUSINESS

5    UNLESS THERE'S AT LEAST 16 MEMBERS OF THE GRAND JURY PRESENT

6    FOR THE TRANSACTION OF ANY BUSINESS.  IF FEWER THAN 16 GRAND

7    JURORS ARE PRESENT EVEN FOR A MOMENT, THEN THE PROCEEDINGS OF

8    THE GRAND JURY MUST STOP.  YOU CAN NEVER OPERATE WITHOUT A

9    QUORUM OF AT LEAST 16 MEMBERS PRESENT.

10            NOW, THE EVIDENCE THAT YOU WILL HEAR NORMALLY WILL

11    CONSIST OF TESTIMONY OF WITNESSES AND WRITTEN DOCUMENTS.  YOU

12    MAY GET PHOTOGRAPHS.  THE WITNESSES WILL APPEAR IN FRONT OF

13    YOU SEPARATELY.  WHEN A WITNESS FIRST APPEARS BEFORE YOU, THE

14    GRAND JURY FOREPERSON WILL ADMINISTER AN OATH.  THE PERSON

15    MUST SWEAR OR AFFIRM TO TELL THE TRUTH.  AND AFTER THAT'S BEEN

16    ACCOMPLISHED, THE WITNESS WILL BE QUESTIONED.

17            ORDINARILY, THE U.S. ATTORNEY PRESIDING AT THE --

18    REPRESENTING THE U.S. GOVERNMENT AT THE GRAND JURY SESSION

19    WILL ASK THE QUESTIONS FIRST.  THEN THE FOREPERSON OF THE

20    GRAND JURY MAY ASK QUESTIONS, AND OTHER MEMBERS OF THE GRAND

21    JURY MAY ASK QUESTIONS, ALSO.

22            I USED TO APPEAR IN FRONT OF THE GRAND JURY.  I'LL

23    TELL YOU WHAT I WOULD DO IS FREQUENTLY I'D ASK THE QUESTIONS,

24    AND THEN I'D SEND THE WITNESS OUT AND ASK THE GRAND JURORS IF

25    THERE WERE ANY QUESTIONS THEY WANTED ME TO ASK.  AND THE

PDF created with pdfFactory trial version www.pdffactory.com

1    REASON I DID THAT IS THAT I HAD THE LEGAL TRAINING TO KNOW

2    WHAT WAS RELEVANT AND WHAT MIGHT BE PREJUDICIAL TO THE

3    DETERMINATION OF WHETHER THERE WAS PROBABLE CAUSE.

4           A LOT OF TIMES PEOPLE WILL SAY, "WELL, HAS THIS

5    PERSON EVER DONE IT BEFORE?"  AND WHILE THAT MAY BE A RELEVANT

6    QUESTION, ON THE ISSUE OF PROBABLE CAUSE, IT HAS TO BE

7    ASSESSED ON A CASE-BY-CASE BASIS.  IN OTHER WORDS, THE

8    EVIDENCE OF THIS OCCASION OF CRIME THAT'S ALLEGED MUST BE

9    ADEQUATE WITHOUT REGARD TO WHAT THE PERSON HAS DONE IN THE

10   PAST.  I WOULDN'T WANT THAT QUESTION ANSWERED UNTIL AFTER THE

11   GRAND JURY HAD MADE A DETERMINATION OF WHETHER THERE WAS

12   ENOUGH EVIDENCE.

13          SO WHEN I APPEARED IN FRONT OF THE GRAND JURY, I'D

14   TELL THEM "YOU'LL GET YOUR QUESTION ANSWERED, BUT I'D LIKE YOU

15   TO VOTE ON THE INDICTMENT FIRST.  I'D LIKE YOU TO DETERMINE

16   WHETHER THERE'S ENOUGH EVIDENCE BASED ON WHAT'S BEEN

17   PRESENTED, AND THEN WE'LL ANSWER IT."  I DIDN'T WANT TO

18   PREJUDICE THE GRAND JURY.  THERE MAY BE SIMILAR CONCERNS THAT

19   COME UP.  NOW, THE PRACTICES VARY AMONG THE ASSISTANT U.S.

20   ATTORNEYS THAT WILL APPEAR IN FRONT OF YOU.

21          ON OTHER OCCASIONS WHEN I DIDN'T THINK THERE WAS ANY

22   RISK THAT MIGHT PREJUDICE THE PROCESS, I WOULD ALLOW THE GRAND

23   JURY TO FOLLOW UP THEMSELVES AND ASK QUESTIONS.  A LOT OF

24   TIMES, THE FOLLOW-UPS ARE FACTUAL ON DETAILED MATTERS.  THAT

25   PRACTICE WILL VARY DEPENDING ON WHO IS REPRESENTING THE UNITED

PDF created with pdfFactory trial version www.pdffactory.com

16

1    STATES AND PRESENTING THE CASE TO YOU.  THE POINT IS YOU HAVE

2    THE RIGHT TO ASK ADDITIONAL QUESTIONS OR TO ASK THAT THOSE

3    QUESTIONS BE PUT TO THE WITNESS.

4            IN THE EVENT A WITNESS DOESN'T SPEAK OR UNDERSTAND

5    ENGLISH, THEN ANOTHER PERSON WILL BE BROUGHT INTO THE ROOM.

6    OBVIOUSLY, THAT WOULD BE AN INTERPRETER TO ALLOW YOU TO

7    UNDERSTAND THE ANSWERS.  WHEN WITNESSES DO APPEAR IN FRONT OF

8    THE GRAND JURY, THEY SHOULD BE TREATED COURTEOUSLY.  QUESTIONS

9    SHOULD BE PUT TO THEM IN AN ORDERLY FASHION.  THE QUESTIONS

10   SHOULD NOT BE HOSTILE.

11           IF YOU HAVE ANY DOUBT WHETHER IT'S PROPER TO ASK A

12   PARTICULAR QUESTION, THEN YOU CAN ASK THE U.S. ATTORNEY WHO'S

13   ASSISTING IN THE INVESTIGATION FOR ADVICE ON THE MATTER.  YOU

14   ALONE AS GRAND JURORS DECIDE HOW MANY WITNESSES YOU WANT TO

15   HEAR.  WITNESSES CAN BE SUBPOENAED FROM ANYWHERE IN THE

16   COUNTRY.  YOU HAVE NATIONAL JURISDICTION.

17           HOWEVER, PERSONS SHOULD NOT ORDINARILY BE SUBJECTED

18   TO DISRUPTION OF THEIR DAILY LIVES UNLESS THERE'S GOOD REASON.

19   THEY SHOULDN'T BE HARASSED OR ANNOYED OR INCONVENIENCED.

20   THAT'S NOT THE PURPOSE OF THE GRAND JURY HEARING, NOR SHOULD

21   PUBLIC FUNDS BE EXPENDED TO BRING WITNESSES UNLESS YOU BELIEVE

22   THAT THE WITNESSES CAN PROVIDE MEANINGFUL, RELEVANT EVIDENCE

23   WHICH WILL ASSIST IN YOUR DETERMINATIONS AND YOUR

24   INVESTIGATION.

25           ALL WITNESSES WHO ARE CALLED IN FRONT OF THE GRAND

PDF created with pdfFactory trial version www.pdffactory.com

1    JURY HAVE CERTAIN RIGHTS.  THESE INCLUDE, AMONG OTHERS, THE

2    RIGHT TO REFUSE TO ANSWER QUESTIONS ON THE GROUNDS THAT THE

3    ANSWER TO A QUESTION MIGHT INCRIMINATE THEM AND THE RIGHT TO

4    KNOW THAT ANYTHING THEY SAY MIGHT BE USED AGAINST THEM.

5           THE U.S. ATTORNEYS ARE CHARGED WITH THE OBLIGATION,

6    WHEN THEY'RE AWARE OF IT, OF ADVISING PEOPLE OF THIS RIGHT

7    BEFORE THEY QUESTION THEM.  BUT BEAR THAT IN MIND.

8           IF A WITNESS DOES EXERCISE THE RIGHT AGAINST

9    SELF-INCRIMINATION, THEN THE GRAND JURY SHOULD NOT HOLD THAT

10   AS ANY PREJUDICE OR BIAS AGAINST THAT WITNESS.  IT CAN PLAY NO

11   PART IN THE RETURN OF AN INDICTMENT AGAINST THE WITNESS.  IN

12   OTHER WORDS, THE MERE EXERCISE OF THE PRIVILEGE AGAINST

13   SELF-INCRIMINATION, WHICH ALL OF US HAVE AS UNITED STATES

14   RESIDENTS, SHOULD NOT FACTOR INTO YOUR DETERMINATION OF

15   WHETHER THERE'S PROBABLE CAUSE TO GO FORWARD IN THIS CASE.

16   YOU MUST RESPECT THAT DETERMINATION BY THE PERSON AND NOT USE

17   IT AGAINST THEM.

18          IT'S AN UNCOMMON SITUATION THAT YOU'LL FACE WHEN

19   SOMEBODY DOES CLAIM THE PRIVILEGE AGAINST SELF-INCRIMINATION.

20   THAT'S BECAUSE USUALLY AT THE TIME A PERSON IS SUBPOENAED, IF

21   THERE'S A PROSPECT THAT THEY'RE GOING TO CLAIM THE PRIVILEGE,

22   THE U.S. ATTORNEY IS PUT ON NOTICE OF THAT BEFOREHAND EITHER

23   BY THE PERSON HIMSELF OR HERSELF OR MAYBE A LAWYER

24   REPRESENTING THE PERSON.

25          IN MY EXPERIENCE, MOST OF THE TIME THE U.S. ATTORNEY

PDF created with pdfFactory trial version www.pdffactory.com

18

1    WILL NOT THEN CALL THE PERSON IN FRONT OF YOU BECAUSE IT WOULD

2    BE TO NO EFFECT TO CALL THEM AND HAVE THEM ASSERT THEIR 5TH

3    AMENDMENT PRIVILEGE.  BUT IT SOMETIMES DOES COME UP.  IT

4    SOMETIMES HAPPENS.  SOMETIMES THERE'S A QUESTION OF WHETHER

5    THE PERSON HAS A BONA FIDE PRIVILEGE AGAINST

6    SELF-INCRIMINATION.  THAT'S A MATTER FOR THE COURT TO

7    DETERMINE IN ANCILLARY PROCEEDINGS.  OR THE U.S. ATTORNEY MAY

8    BE UNAWARE OF A PERSON'S INCLINATION TO ASSERT THE 5TH.  SO IT

9    MAY COME UP IN FRONT OF YOU.  IT DOESN'T ALWAYS COME UP.

10          AS I MENTIONED TO YOU IN MY PRELIMINARY REMARKS,

11    WITNESSES ARE NOT PERMITTED TO HAVE A LAWYER WITH THEM IN THE

12    GRAND JURY ROOM.  THE LAW DOESN'T PERMIT A WITNESS SUMMONED

13    BEFORE THE GRAND JURY TO BRING THE LAWYER WITH THEM, ALTHOUGH

14    WITNESSES DO HAVE A RIGHT TO CONFER WITH THEIR LAWYERS DURING

15    THE COURSE OF GRAND JURY INVESTIGATION PROVIDED THE CONFERENCE

16    OCCURS OUTSIDE THE GRAND JURY ROOM.

17          YOU MAY FACE A SITUATION WHERE A WITNESS SAYS "I'D

18    LIKE TO TALK TO MY LAWYER BEFORE I ANSWER THAT QUESTION," IN

19    WHICH CASE THE PERSON WOULD LEAVE THE ROOM, CONSULT WITH THE

20    LAWYER, AND THEN COME BACK INTO THE ROOM WHERE FURTHER ACTION

21    WOULD TAKE PLACE.

22          APPEARANCES BEFORE A GRAND JURY SOMETIMES PRESENT

23    COMPLEX LEGAL PROBLEMS THAT REQUIRE THE ASSISTANCE OF LAWYERS.

24    YOU'RE NOT TO DRAW ANY ADVERSE INFERENCE IF A WITNESS DOES ASK

25    TO LEAVE THE ROOM TO SPEAK TO HIS LAWYER OR HER LAWYER AND

19

PDF created with pdfFactory trial version www.pdffactory.com

19

1   THEN LEAVES FOR THAT PURPOSE.

2           ORDINARILY, NEITHER THE ACCUSED OR ANY WITNESS ON

3   THE ACCUSED'S BEHALF WILL TESTIFY IN THE GRAND JURY SESSION.

4   BUT UPON THE REQUEST OF AN ACCUSED, PREFERABLY IN WRITING, YOU

5   MAY AFFORD THE ACCUSED AN OPPORTUNITY TO APPEAR IN FRONT OF

6   YOU.

7           AS I'VE SAID, THESE PROCEEDINGS TEND TO BE ONE-SIDED

8   NECESSARILY.  THE PROSECUTOR IS ASKING YOU TO RETURN AN

9   INDICTMENT TO A CRIMINAL CHARGE, AND THEY'LL MUSTER THE

10  EVIDENCE THAT THEY HAVE THAT THEY BELIEVE SUPPORTS PROBABLE

11  CAUSE AND PRESENT THAT TO YOU.  BECAUSE IT'S NOT A FULL-BLOWN

12  TRIAL, YOU'RE LIKELY IN MOST CASES NOT TO HEAR THE OTHER SIDE

13  OF THE STORY, IF THERE IS ANOTHER SIDE TO THE STORY.  THERE'S

14  NO PROVISION OF LAW THAT ALLOWS AN ACCUSED, FOR EXAMPLE, TO

15  CONTEST THE MATTER IN FRONT OF THE GRAND JURY.

16          IT MAY HAPPEN, AS I SAID, THAT AN ACCUSED MAY ASK TO

17  APPEAR IN FRONT OF YOU.  BECAUSE THE APPEARANCE OF SOMEONE

18  ACCUSED OF A CRIME MAY RAISE COMPLICATED LEGAL PROBLEMS, YOU

19  SHOULD SEEK THE U.S. ATTORNEY'S ADVICE AND COUNSEL, IF

20  NECESSARY, AND THAT OF THE COURT BEFORE ALLOWING THAT.

21          BEFORE ANY ACCUSED PERSON IS ALLOWED TO TESTIFY,

22  THEY MUST BE ADVISED OF THEIR RIGHTS, AND YOU SHOULD BE

23  COMPLETELY SATISFIED THAT THEY UNDERSTAND WHAT THEY'RE DOING.

24          YOU'RE NOT REQUIRED TO SUMMON WITNESSES WHICH AN

25  ACCUSED PERSON MAY WANT YOU TO HAVE EXAMINED UNLESS PROBABLE

PDF created with pdfFactory trial version www.pdffactory.com

20

1    CAUSE FOR AN INDICTMENT MAY BE EXPLAINED AWAY BY THE TESTIMONY

2    OF THOSE WITNESSES.

3           NOW, AGAIN, THIS EMPHASIZES THE DIFFERENCE BETWEEN

4    THE FUNCTION OF THE GRAND JURY AND THE TRIAL JURY.  YOU'RE ALL

5    ABOUT PROBABLE CAUSE.  IF YOU THINK THAT THERE'S EVIDENCE OUT

6    THERE THAT MIGHT CAUSE YOU TO SAY "WELL, I DON'T THINK

7    PROBABLE CAUSE EXISTS," THEN IT'S INCUMBENT UPON YOU TO HEAR

8    THAT EVIDENCE AS WELL.  AS I TOLD YOU, IN MOST INSTANCES, THE

9    U.S. ATTORNEYS ARE DUTY-BOUND TO PRESENT EVIDENCE THAT CUTS

10   AGAINST WHAT THEY MAY BE ASKING YOU TO DO IF THEY'RE AWARE OF

11   THAT EVIDENCE.

12          THE DETERMINATION OF WHETHER A WITNESS IS TELLING

13   THE TRUTH IS SOMETHING FOR YOU TO DECIDE.  NEITHER THE COURT

14   NOR THE PROSECUTORS NOR ANY OFFICERS OF THE COURT MAY MAKE

15   THAT DETERMINATION FOR YOU.  IT'S THE EXCLUSIVE PROVINCE OF

16   GRAND JURORS TO DETERMINE WHO IS CREDIBLE AND WHO MAY NOT BE.

17          FINALLY, LET ME TELL YOU THIS:  THERE'S ANOTHER

18   DIFFERENCE BETWEEN OUR GRAND JURY PROCEDURE HERE AND

19   PROCEDURES YOU MAY BE FAMILIAR WITH HAVING SERVED ON STATE

20   TRIAL JURIES OR FEDERAL TRIAL JURIES OR EVEN ON THE STATE

21   GRAND JURY; HEARSAY TESTIMONY, THAT IS, TESTIMONY AS TO FACTS

22   NOT PERSONALLY KNOWN BY THE WITNESS, BUT WHICH THE WITNESS HAS

23   BEEN TOLD OR RELATED BY OTHER PERSONS MAY BE DEEMED BY YOU

24   PERSUASIVE AND MAY PROVIDE A BASIS FOR RETURNING AN INDICTMENT

25   AGAINST AN ACCUSED.

PDF created with pdfFactory trial version www.pdffactory.com

21

1          WHAT I MEAN BY THAT IS IF IT'S A FULL-BLOWN TRIAL

2     WHERE THE RULES OF EVIDENCE APPLY -- AND ALL OF US ARE

3     FAMILIAR WITH THIS TERM "HEARSAY EVIDENCE."  GENERALLY, IT

4     FORBIDS SOMEBODY FROM REPEATING WHAT SOMEONE ELSE TOLD THEM

5     OUTSIDE OF COURT.  OH, THERE'S A MILLION EXCEPTIONS TO THE

6     HEARSAY RULE, BUT THAT'S THE GIST OF THE RULE.

7          USUALLY, WE INSIST ON THE SPEAKER OF THE WORDS TO

8     COME IN SO THAT WE CAN KNOW THE CONTEXT OF IT.  THAT RULE

9     DOESN'T APPLY IN THE GRAND JURY CONTEXT.  BECAUSE IT'S A

10    PRELIMINARY PROCEEDING, BECAUSE ULTIMATELY GUILT OR INNOCENCE

11    IS NOT BEING DETERMINED, THE EVIDENTIARY STANDARDS ARE

12    RELAXED.  THE PROSECUTORS ARE ENTITLED TO PUT ON HEARSAY

13    EVIDENCE.

14         HOW DOES THAT PLAY OUT IN REAL LIFE?  WELL, YOU'RE

15    GOING TO BE HEARING A LOT OF BORDER TYPE CASES.  IT DOESN'T

16    MAKE SENSE, IT'S NOT EFFICIENT, IT'S NOT COST-EFFECTIVE TO

17    PULL ALL OF OUR BORDER GUARDS OFF THE BORDER TO COME UP AND

18    TESTIFY.  WHO IS LEFT GUARDING THE BORDER, THEN?

19         WHAT THEY'VE DONE IN THE BORDER CASES IN PARTICULAR

20    IF THEY USUALLY HAVE A SUMMARY WITNESS; A WITNESS FROM, FOR

21    EXAMPLE, BORDER PATROL OR CUSTOMS WHO WILL TALK TO THE PEOPLE

22    OR READ THE REPORTS OF THE PEOPLE WHO ACTUALLY MADE THE

23    ARREST.  THAT PERSON WILL COME IN AND TESTIFY ABOUT WHAT

24    HAPPENED.  THE PERSON WON'T HAVE FIRST-HAND KNOWLEDGE, BUT

25    THEY'LL BE RELIABLY INFORMED BY THE PERSON WITH FIRST-HAND

PDF created with pdfFactory trial version www.pdffactory.com

22

1    KNOWLEDGE OF WHAT OCCURRED, AND THEY'LL BE THE WITNESS BEFORE

2    THE GRAND JURY.

3         YOU SHOULD EXPECT AND COUNT ON THE FACT THAT YOU'RE

4    GOING TO HEAR EVIDENCE IN THE FORM OF HEARSAY THAT WOULD NOT

5    BE ADMISSIBLE IF THE CASE GOES FORWARD TO TRIAL, BUT IS

6    ADMISSIBLE AT THE GRAND JURY STAGE.

7         AFTER YOU'VE HEARD ALL OF THE EVIDENCE THAT THE U.S.

8    ATTORNEY INTENDS TO PRESENT OR THAT YOU WANT TO HEAR IN A

9    PARTICULAR MATTER, YOU'RE THEN CHARGED WITH THE OBLIGATION OF

10   DELIBERATING TO DETERMINE WHETHER THE ACCUSED PERSON OUGHT TO

11   BE INDICTED.  NO ONE OTHER THAN YOUR OWN MEMBERS, THE MEMBERS

12   OF THE GRAND JURY, IS TO BE PRESENT IN THE GRAND JURY ROOM

13   WHILE YOU'RE DELIBERATING.

14        WHAT THAT MEANS IS THE COURT REPORTER, THE ASSISTANT

15   U.S. ATTORNEY, ANYONE ELSE, THE INTERPRETER WHO MAY HAVE BEEN

16   PRESENT TO INTERPRET FOR A WITNESS, MUST GO OUT OF THE ROOM,

17   AND THE PROCEEDING MUST GO FORWARD WITH ONLY GRAND JURORS

18   PRESENT DURING THE DELIBERATION AND VOTING ON AN INDICTMENT.

19        YOU HEARD ME EXPLAIN EARLIER THAT AT VARIOUS TIMES

20   DURING THE PRESENTATION OF MATTERS BEFORE YOU, OTHER PEOPLE

21   MAY BE PRESENT IN THE GRAND JURY.  THIS IS PERFECTLY

22   ACCEPTABLE.  THE RULE THAT I HAVE JUST READ TO YOU ABOUT YOUR

23   PRESENCE ALONE IN THE GRAND JURY ROOM APPLIES ONLY DURING

24   DELIBERATION AND VOTING ON INDICTMENTS.

25        TO RETURN AN INDICTMENT CHARGING SOMEONE WITH AN

PDF created with pdfFactory trial version www.pdffactory.com

23

1    OFFENSE, IT'S NOT NECESSARY, AS I MENTIONED MANY TIMES, THAT

2    YOU FIND PROOF BEYOND A REASONABLE DOUBT.  THAT'S THE TRIAL

3    STANDARD, NOT THE GRAND JURY STANDARD.  YOUR TASK IS TO

4    DETERMINE WHETHER THE GOVERNMENT'S EVIDENCE, AS PRESENTED TO

5    YOU, IS SUFFICIENT TO CONCLUDE THAT THERE'S PROBABLE CAUSE TO

6    BELIEVE THAT THE ACCUSED IS GUILTY OF THE PROPOSED OR CHARGED

7    OFFENSE.

8             I EXPLAINED TO YOU WHAT THAT STANDARD MEANS.  LET

9    ME, AT THE RISK OF BORING YOU, TELL YOU ONE MORE TIME.

10            PROBABLE CAUSE MEANS THAT YOU HAVE AN HONESTLY HELD

11   CONSCIENTIOUS BELIEF AND THAT THE BELIEF IS REASONABLE THAT A

12   FEDERAL CRIME WAS COMMITTED AND THAT THE PERSON TO BE INDICTED

13   WAS SOMEHOW ASSOCIATED WITH THE COMMISSION OF THAT CRIME.

14   EITHER THEY COMMITTED IT THEMSELVES OR THEY HELPED SOMEONE

15   COMMIT IT OR THEY WERE PART OF A CONSPIRACY, AN ILLEGAL

16   AGREEMENT, TO COMMIT THAT CRIME.

17            TO PUT IT ANOTHER WAY, YOU SHOULD VOTE TO INDICT

18   WHEN THE EVIDENCE PRESENTED TO YOU IS SUFFICIENTLY STRONG TO

19   WARRANT A REASONABLE PERSON TO BELIEVE THAT THE ACCUSED IS

20   PROBABLY GUILTY OF THE OFFENSE WHICH IS PROPOSED.

21            EACH GRAND JUROR HAS THE RIGHT TO EXPRESS VIEWS ON

22   THE MATTER UNDER CONSIDERATION.  AND ONLY AFTER ALL GRAND

23   JURORS HAVE BEEN GIVEN A FULL OPPORTUNITY TO BE HEARD SHOULD

24   YOU VOTE ON THE MATTER BEFORE YOU.  YOU MAY DECIDE AFTER

25   DELIBERATION AMONG YOURSELVES THAT YOU NEED MORE EVIDENCE,

24

PDF created with pdfFactory trial version www.pdffactory.com

24

1   THAT MORE EVIDENCE SHOULD BE CONSIDERED BEFORE A VOTE IS

2   TAKEN.  IN SUCH CASES, THE U.S ATTORNEY OR THE ASSISTANT U.S.

3   ATTORNEY CAN BE DIRECTED TO SUBPOENA ADDITIONAL DOCUMENTS OR

4   WITNESSES FOR YOU TO CONSIDER IN ORDER TO MAKE YOUR

5   DETERMINATION.

6           WHEN YOU'VE DECIDED TO VOTE, THE FOREPERSON SHOULD

7   KEEP A RECORD OF THE VOTE.  THAT RECORD SHOULD BE FILED WITH

8   THE CLERK OF THE COURT.  THE RECORD DOESN'T INCLUDE THE NAMES

9   OF THE JURORS OR HOW THEY VOTED, BUT ONLY THE NUMBER OF VOTES

10  FOR THE INDICTMENT.  SO IT'S AN ANONYMOUS VOTE.  YOU'LL KNOW

11  AMONG YOURSELVES WHO VOTED WHICH WAY, BUT THAT INFORMATION

12  DOES NOT GET CAPTURED OR RECORDED, JUST THE NUMBER OF PEOPLE

13  VOTING FOR INDICTMENT.

14          IF 12 OR MORE MEMBERS OF THE GRAND JURY AFTER

15  DELIBERATION BELIEVE THAT AN INDICTMENT IS WARRANTED, THEN

16  YOU'LL REQUEST THE UNITED STATES ATTORNEY TO PREPARE A FORMAL

17  WRITTEN INDICTMENT IF ONE'S NOT ALREADY BEEN PREPARED AND

18  PRESENTED TO YOU.  IN MY EXPERIENCE, MOST OF THE TIME THE U.S.

19  ATTORNEY WILL SHOW UP WITH THE WITNESSES AND WILL HAVE THE

20  PROPOSED INDICTMENT WITH THEM.  SO YOU'LL HAVE THAT TO

21  CONSIDER.  YOU'LL KNOW EXACTLY WHAT THE PROPOSED CHARGES ARE.

22          THE INDICTMENT WILL SET FORTH THE DATE AND THE PLACE

23  OF THE ALLEGED OFFENSE AND THE CIRCUMSTANCES THAT THE U.S.

24  ATTORNEY BELIEVES MAKES THE CONDUCT CRIMINAL.  IT WILL

25  IDENTIFY THE CRIMINAL STATUTES THAT HAVE ALLEGEDLY BEEN

PDF created with pdfFactory trial version www.pdffactory.com

25

1    VIOLATED.

2             THE FOREPERSON, UPON THE GRAND JURY VOTING TO RETURN

3    THE INDICTMENT, WILL THEN ENDORSE OR SIGN THE INDICTMENT,

4    WHAT'S CALLED A TRUE BILL OF INDICTMENT.  THERE'S A SPACE

5    PROVIDED BY THE WORD -- OR FOLLOWED BY THE WORD "FOREPERSON."

6    THE FOREPERSON IS TO SIGN THE INDICTMENT IF THE GRAND JURY

7    BELIEVES THAT THERE'S PROBABLE CAUSE.  A TRUE BILL SIGNIFIES

8    THAT 12 OR MORE GRAND JURORS HAVE AGREED THAT THE CASE OUGHT

9    TO GO FORWARD WITH PROBABLE CAUSE TO BELIEVE THAT THE PERSON

10   PROPOSED FOR THE CHARGE IS GUILTY OF THE CRIME.

11            IT'S THE DUTY OF THE FOREPERSON TO ENDORSE OR SIGN

12   EVERY INDICTMENT VOTED ON BY AT LEAST 12 MEMBERS EVEN IF THE

13   FOREPERSON HAS VOTED AGAINST RETURNING THE INDICTMENT.  SO IF

14   YOU'VE BEEN DESIGNATED A FOREPERSON OR AN ASSISTANT

15   FOREPERSON, EVEN IF YOU VOTED THE OTHER WAY OR YOU'RE

16   OUT-VOTED, IF THERE'S AT LEAST 12 WHO VOTED FOR THE

17   INDICTMENT, THEN YOU MUST SIGN THE INDICTMENT.

18            IF YOU WERE THE 12 MEMBERS OF THE GRAND JURY WHO

19   VOTED IN FAVOR OF THE INDICTMENT, THEN THE FOREPERSON WILL

20   ENDORSE THE INDICTMENT WITH THESE WORDS:  "NOT A TRUE BILL."

21   THEY'LL RETURN IT TO THE COURT.  THE COURT WILL IMPOUND IT.

22            THE INDICTMENTS WHICH HAVE BEEN ENDORSED AS A TRUE

23   BILL ARE PRESENTED EITHER TO ONE OF OUR MAGISTRATE JUDGES OR

24   TO A DISTRICT JUDGE IN OPEN COURT BY YOUR FOREPERSON AT THE

25   CONCLUSION OF EACH SESSION OF THE GRAND JURY.  THIS IS THE

PDF created with pdfFactory trial version www.pdffactory.com

26

1    PROCEDURE THAT YOU HEARD ME ALLUDE TO.  IN THE ABSENCE OF THE

2    FOREPERSON, THE DEPUTY FOREPERSON SHALL PERFORM ALL THE

3    FUNCTIONS AND DUTIES OF THE FOREPERSON.

4         LET ME EMPHASIZE AGAIN IT'S EXTREMELY IMPORTANT FOR

5    THOSE OF YOU WHO ARE GRAND JURORS TO REALIZE THAT UNDER OUR

6    CONSTITUTION, THE GRAND JURY IS AN INDEPENDENT BODY.  IT'S

7    INDEPENDENT OF THE UNITED STATES ATTORNEY.  IT'S NOT AN ARM OR

8    AN AGENT OF FEDERAL BUREAU OF INVESTIGATION OF THE DRUG

9    ENFORCEMENT ADMINISTRATION, THE IRS, OR ANY OTHER GOVERNMENT

10   AGENCY CHARGED WITH PROSECUTING THE CRIME.

11        I USED THE CHARACTERIZATION EARLIER THAT YOU STAND

12   AS A BUFFER BETWEEN OUR GOVERNMENT'S ABILITY TO ACCUSE SOMEONE

13   OF A CRIME AND THEN PUTTING THAT PERSON THROUGH THE BURDEN OF

14   STANDING TRIAL.  YOU ACT AS AN INDEPENDENT BODY OF CITIZENS.

15        IN RECENT YEARS, THERE HAS BEEN CRITICISM OF THE

16   INSTITUTION OF THE GRAND JURY.  THE CRITICISM GENERALLY IS THE

17   GRAND JURY ACTS AS RUBBER STAMPS AND APPROVES PROSECUTIONS

18   THAT ARE BROUGHT BY THE GOVERNMENT WITHOUT THOUGHT.

19        INTERESTINGLY ENOUGH, IN MY DISCUSSION WITH

20   PROSPECTIVE GRAND JURORS, WE HAD ONE FELLOW WHO SAID, "YEAH,

21   THAT'S THE WAY I THINK IT OUGHT TO BE."  WELL, THAT'S NOT THE

22   WAY IT IS.  AS A PRACTICAL MATTER, YOU WILL WORK CLOSELY WITH

23   GOVERNMENT LAWYERS.  THE U.S. ATTORNEY AND THE ASSISTANT U.S.

24   ATTORNEYS WILL PROVIDE YOU WITH IMPORTANT SERVICES AND HELP

25   YOU FIND YOUR WAY WHEN YOU'RE CONFRONTED WITH COMPLEX LEGAL

COMPUTER-AIDED TRANSCRIPTION

27

PDF created with pdfFactory trial version www.pdffactory.com

27

1    MATTERS.  IT'S ENTIRELY PROPER THAT YOU SHOULD RECEIVE THE

2    ASSISTANCE FROM THE GOVERNMENT LAWYERS.

3          BUT AT THE END OF THE DAY, THE DECISION ABOUT

4    WHETHER A CASE GOES FORWARD AND AN INDICTMENT SHOULD BE

5    RETURNED IS YOURS AND YOURS ALONE.  IF PAST EXPERIENCE IS ANY

6    INDICATION OF WHAT TO EXPECT IN THE FUTURE, THEN YOU CAN

7    EXPECT THAT THE U.S. ATTORNEYS THAT WILL APPEAR IN FRONT OF

8    YOU WILL BE CANDID, THEY'LL BE HONEST, THAT THEY'LL ACT IN

9    GOOD FAITH IN ALL MATTERS PRESENTED TO YOU.

10         HOWEVER, AS I SAID, ULTIMATELY YOU HAVE TO DEPEND ON

11   YOUR INDEPENDENT JUDGMENT IN MAKING THE DECISION THAT YOU ARE

12   CHARGED WITH MAKING AS GRAND JURORS.  YOU'RE NOT AN ARM OF THE

13   U.S. ATTORNEY'S OFFICE.  YOU'RE NOT AN ARM OF ANY GOVERNMENT

14   AGENCY.  THE GOVERNMENT'S LAWYERS ARE PROSECUTORS, AND YOU'RE

15   NOT.

16         IF THE FACTS SUGGEST TO YOU THAT YOU SHOULD NOT

17   INDICT, THEN YOU SHOULD NOT DO SO EVEN IN THE FACE OF

18   OPPOSITION OR STATEMENTS OR ARGUMENTS FROM ONE OF THE

19   ASSISTANT UNITED STATES ATTORNEYS.  YOU SHOULD NOT SURRENDER

20   AN HONESTLY OR CONSCIOUSLY HELD BELIEF WITHOUT THE WEIGHT OF

21   THE EVIDENCE AND SIMPLY DEFER TO THE U.S. ATTORNEY.  THAT'S

22   YOUR DECISION TO MAKE.

23         JUST AS YOU MUST MAINTAIN YOUR INDEPENDENCE IN YOUR

24   DEALINGS WITH GOVERNMENT LAWYERS, YOUR DEALINGS WITH THE COURT

25   MUST BE ON A FORMAL BASIS, ALSO.  IF YOU HAVE A QUESTION FOR

COMPUTER-AIDED TRANSCRIPTION

28

PDF created with pdfFactory trial version www.pdffactory.com

28

1    THE COURT OR A DESIRE TO MAKE A PRESENTMENT OR A RETURN OF AN

2    INDICTMENT TO THE COURT, THEN YOU MAY CONTACT ME THROUGH MY

3    CLERK.  YOU'LL BE ABLE TO ASSEMBLE IN THE COURTROOM OFTENTIMES

4    FOR THESE PURPOSES.

5         LET ME TELL YOU ALSO THAT EACH GRAND JUROR IS

6    DIRECTED TO REPORT IMMEDIATELY TO THE COURT ANY ATTEMPT BY

7    ANYBODY UNDER ANY PRETENSE WHATSOEVER TO ADDRESS YOU OR

8    CONTACT YOU FOR THE PURPOSE OF TRYING TO GAIN INFORMATION

9    ABOUT WHAT'S GOING ON IN FRONT OF THE GRAND JURY.  THAT SHOULD

10   NOT HAPPEN.  IF IT DOES HAPPEN, I SHOULD BE INFORMED OF THAT

11   IMMEDIATELY BY ANY OF YOU, COLLECTIVELY OR INDIVIDUALLY.  IF

12   ANY PERSON CONTACTS YOU OR ATTEMPTS TO INFLUENCE YOU IN ANY

13   MANNER IN CARRYING OUT YOUR DUTIES AS A GRAND JUROR, LET ME

14   KNOW ABOUT IT.

15        LET ME TALK A LITTLE BIT MORE ABOUT THE OBLIGATION

16   OF SECRECY, WHICH I'VE MENTIONED AND ALLUDED TO.  AS I TOLD

17   YOU BEFORE, THE HALLMARK OF THE GRAND JURY, PARTICULARLY OUR

18   FEDERAL GRAND JURY, IS THAT IT OPERATES SECRETLY.  IT OPERATES

19   IN SECRECY, AND ITS PROCEEDINGS ARE ENTIRELY SECRET.

20        YOUR PROCEEDINGS AS GRAND JURORS ARE ALWAYS SECRET,

21   AND THEY MUST REMAIN SECRET PERMANENTLY UNLESS AND UNTIL THE

22   COURT DETERMINES OTHERWISE.  YOU CAN'T RELATE TO YOUR FAMILY,

23   THE NEWS MEDIA, TELEVISION REPORTERS, OR TO ANYONE WHAT

24   HAPPENED IN FRONT OF THE GRAND JURY.  IN FACT, TO DO SO IS TO

25   COMMIT A CRIMINAL OFFENSE.  YOU COULD BE HELD CRIMINALLY

PDF created with pdfFactory trial version www.pdffactory.com

29

1    LIABLE FOR REVEALING WHAT OCCURRED IN FRONT OF THE GRAND JURY.

2         THERE ARE SEVERAL IMPORTANT REASONS WHY WE DEMAND

3    SECRECY IN THE INSTITUTION OF THE GRAND JURY.  FIRST -- AND I

4    MENTIONED THIS, AND THIS IS OBVIOUS -- THE PREMATURE

5    DISCLOSURE OF INFORMATION THAT THE GRAND JURY IS ACTING ON

6    COULD VERY WELL FRUSTRATE THE ENDS OF JUSTICE IN PARTICULAR

7    CASES.  IT MIGHT GIVE AN OPPORTUNITY FOR SOMEONE WHO'S ACCUSED

8    OF A CRIME TO ESCAPE OR BECOME A FUGITIVE OR TO DESTROY

9    EVIDENCE THAT MIGHT OTHERWISE BE UNCOVERED LATER ON.  YOU

10   DON'T WANT TO DO THAT.

11        IN THE COURSE OF AN INVESTIGATION, IT'S ABSOLUTELY

12   IMPERATIVE THAT THE INVESTIGATION AND THE FACTS OF THE

13   INVESTIGATION REMAIN SECRET, AND YOU SHOULD KEEP THAT FOREMOST

14   IN YOUR MIND.  ALSO, IF THE TESTIMONY OF A WITNESS IS

15   DISCLOSED, THE WITNESS MAY BE SUBJECT TO INTIMIDATION OR

16   SOMETIMES RETALIATION OR BODILY INJURY BEFORE THE WITNESS IS

17   ABLE TO TESTIFY.  IT IS SOMETHING THAT THE LAW ENFORCEMENT --

18   IT'S SOMETIMES THE CASE THAT LAW ENFORCEMENT WILL TELL A

19   WITNESS WHO IS COOPERATING WITH AN INVESTIGATION THAT THEIR

20   SECRECY IS GUARANTEED.  IT SOMETIMES TAKES THAT KIND OF

21   ASSURANCE FROM THE POLICE OR LAW ENFORCEMENT AGENTS TO GET A

22   WITNESS TO TELL WHAT THEY KNOW.  AND THAT GUARANTEE CAN ONLY

23   BE SECURED IF YOU MAINTAIN THE OBLIGATION OF SECRECY.

24        THE GRAND JURY IS FORBIDDEN BY LAW FROM DISCLOSING

25   ANY INFORMATION ABOUT THE GRAND JURY PROCESS WHATSOEVER.  IT'S

PDF created with pdfFactory trial version www.pdffactory.com

30

1    ON THE BASIS SOMETIMES OF REPRESENTATIONS LIKE THAT RELUCTANT

2    WITNESSES DO COME FORWARD.  AGAIN, IT UNDERSCORES THE

3    IMPORTANCE OF SECRECY.

4         AS I'VE ALSO MENTIONED, THE REQUIREMENT OF SECRECY

5    PROTECTS INNOCENT PEOPLE WHO MAY HAVE COME UNDER

6    INVESTIGATION, BUT WHO ARE CLEARED BY THE ACTIONS OF THE GRAND

7    JURY.  IT'S A TERRIBLE THING TO BE IMPROPERLY ACCUSED OF A

8    CRIME.  IT'S LIKE A SCARLET LETTER THAT PEOPLE SOMETIMES WEAR

9    FOREVER.  IT'S WORSE IF THE CRIME OR THE ACCUSATION NEVER

10   BECOMES FORMAL.  JUST THE IDEA THAT SOMEONE IS UNDER

11   INVESTIGATION CAN HAVE DISASTROUS CONSEQUENCES FOR THAT PERSON

12   OR HIS OR HER BUSINESS OR HIS OR HER FAMILY.  THIS IS ANOTHER

13   IMPORTANT REASON WHY THE GRAND JURY PROCEEDINGS MUST REMAIN

14   SECRET.

15        IN THE EYES OF SOME PEOPLE, INVESTIGATION BY THE

16   GRAND JURY ALONE CARRIES WITH IT THE STIGMA OR SUGGESTION OF

17   GUILT.  SO GREAT INJURY CAN BE DONE TO A PERSON'S GOOD NAME

18   EVEN THOUGH ULTIMATELY YOU DECIDE THAT THERE'S NO EVIDENCE

19   SUPPORTING AN INDICTMENT OF THE PERSON.

20        TO ENSURE THE SECRECY OF THE GRAND JURY PROCEEDINGS,

21   THE LAW PROVIDES THAT ONLY AUTHORIZED PEOPLE MAY BE IN THE

22   GRAND JURY ROOM WHILE EVIDENCE IS BEING PRESENTED.  AS I'VE

23   MENTIONED TO YOU NOW SEVERAL TIMES, THE ONLY PEOPLE WHO MAY BE

24   PRESENT DURING THE FUNCTIONING OF THE GRAND JURY ARE THE GRAND

25   JURORS THEMSELVES, THE UNITED STATES ATTORNEY OR AN ASSISTANT

PDF created with pdfFactory trial version www.pdffactory.com

31

1    WHO'S PRESENTING THE CASE, A WITNESS WHO IS THEN UNDER

2    EXAMINATION, A COURT REPORTER, AND AN INTERPRETER, IF

3    NECESSARY.  ALL THE OTHERS EXCEPT THE GRAND JURORS GO OUT

4    DURING THE DELIBERATION AND VOTING.

5            YOU MAY DISCLOSE TO THE U.S. ATTORNEY WHO IS

6    ASSISTING THE GRAND JURY CERTAIN INFORMATION.  AS I SAID, IF

7    YOU HAVE QUESTIONS, IF GRAND JURORS HAVE QUESTIONS THAT THEY

8    WANT ANSWERED, OBVIOUSLY THAT INFORMATION IS TO BE CONVEYED TO

9    THE U.S. ATTORNEY TO GET THE QUESTIONS ANSWERED.

10           BUT YOU SHOULD NOT DISCLOSE THE CONTEXT OF YOUR

11   DELIBERATIONS OR THE VOTE OF ANY PARTICULAR GRAND JUROR TO

12   ANYONE, EVEN THE GOVERNMENT LAWYERS, ONCE THE VOTE HAS BEEN

13   DONE.  THAT'S ONLY THE BUSINESS OF THE GRAND JURY.  IN OTHER

14   WORDS, YOU'RE NOT TO INFORM THE GOVERNMENT LAWYER WHO VOTED

15   ONE WAY ON THE INDICTMENT AND WHO VOTED THE OTHER WAY.

16           LET ME CONCLUDE NOW -- I APPRECIATE YOUR PATIENCE,

17   AND IT'S BEEN A LONG SESSION THIS MORNING -- BY SAYING THAT

18   THE IMPORTANCE OF THE SERVICE YOU PERFORM IS DEMONSTRATED BY

19   THE VERY IMPORTANT AND COMPREHENSIVE OATH WHICH YOU TOOK A

20   SHORT WHILE AGO.  IT'S AN OATH THAT IS ROOTED IN OUR HISTORY

21   AS A COUNTRY.  THOUSANDS OF PEOPLE BEFORE YOU HAVE TAKEN A

22   SIMILAR OATH.  AND AS GOOD CITIZENS, YOU SHOULD BE PROUD TO

23   HAVE BEEN SELECTED TO ASSIST IN THE ADMINISTRATION OF JUSTICE.

24           IT HAS BEEN MY PLEASURE TO MEET YOU.  I WOULD BE

25   HAPPY TO SEE YOU IN THE FUTURE IF THE NEED ARISES.  AT THIS

PDF created with pdfFactory trial version www.pdffactory.com

32

1    POINT, THE U.S. ATTORNEY, MR. ROBINSON, WILL ASSIST YOU IN

2    FURTHER ORGANIZATION.  SO THIS PART OF THE ADMINISTRATION OF

3    YOUR RESPONSIBILITY AS GRAND JURORS INVOLVING THE COURT IS

4    OVER.

5              IT MIGHT BE APPROPRIATE TO TAKE A BREAK BEFORE WE GO

6    ON TO THE NEXT PROCEEDING.  I'VE HELD THESE FOLKS FOR A LONG

7    TIME.

8              LADIES AND GENTLEMEN, MY GREAT PLEASURE TO MEET ALL

9    OF YOU.  GOOD LUCK WITH YOUR GRAND JURY SERVICE.  I THINK

10   YOU'LL FIND IT REWARDING AND INTERESTING AND COMPELLING.

11                          --oOo--

12

13

14

15              I HEREBY CERTIFY THAT THE TESTIMONY

16              ADDUCED IN THE FOREGOING MATTER IS

17              A TRUE RECORD OF SAID PROCEEDINGS.

18

19              _____

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

# EXHIBIT "B"

Reporter's Transcript of Proceedings
January 11, 2007
In Re: The Impanelment of Grand
Jury Panels 07-1 and 07-2

34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE:  THE IMPANELMENT          )
                                 )
OF GRAND JURY PANELS 07-1 AND    )
                                 )
07-2                             )
                                 )
                                 )
_____  )

BEFORE THE HONORABLE LARRY ALAN BURNS

UNITED STATES DISTRICT JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

WEDNESDAY, JANUARY 11, 2007

COURT REPORTER:

EVA OEMICK
OFFICIAL COURT REPORTER
UNITED STATES COURTHOUSE
940 FRONT STREET, STE. 2190
SAN DIEGO, CA 92101
TEL: (619) 615-3103

1    SAN DIEGO, CALIFORNIA-WEDNESDAY, JANUARY 11, 2007-10:45 A.M.

2        MR. HAMRICK:   YOU AND EACH OF YOU DO SOLEMNLY SWEAR

3    OR AFFIRM THAT YOU WILL GIVE TRUE ANSWERS TO ALL QUESTIONS

4    THAT WILL BE PUT TO YOU TOUCHING ON YOUR QUALIFICATION TO

5    SERVE AS A GRAND JUROR DURING THIS SESSION OF COURT, SO HELP

6    YOU?

7        (ALL GRAND JURORS RESPOND AFFIRMATIVELY)

8        MR. HAMRICK:   THANK YOU.   PLEASE BE SEATED AND COME

9    TO ORDER.

10        THE COURT:   LADIES AND GENTLEMEN, GOOD MORNING AND

11    WELCOME TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN

12    DISTRICT OF CALIFORNIA.   YOU'RE HERE TODAY IN CONNECTION WITH

13    OUR EFFORT TO IMPANEL GRAND JURIES.   I KNOW ALL OF YOU HAVE

14    SEEN THE FILM ABOUT THE FUNCTION OF THE GRAND JURY.   I'M GOING

15    TO TALK A LITTLE BIT MORE ABOUT THAT LATER IN MY REMARKS AND

16    MY INTERACTIONS WITH YOU TODAY.

17        WE'RE ESSENTIALLY LOOKING FOR PEOPLE WHO CAN FAIRLY

18    AND CONSCIENTIOUSLY EVALUATE A SET OF FACTS AND MAKE AN

19    IMPORTANT DECISION ABOUT WHETHER CASES SHOULD MOVE FORWARD TO

20    TRIAL.   THAT'S THE FUNCTION OF THE GRAND JURY.   YOU'RE TO WEED

21    OUT THE GROUNDLESS CHARGES FROM THOSE THAT HAVE MERIT,

22    ALTHOUGH ACKNOWLEDGING THAT YOU'RE NOT MAKING A FINAL DECISION

23    ON WHETHER A PERSON IS GUILTY OR NOT OF A CRIMINAL CHARGE.

24    BUT THE IDEA OF PUTTING A PERSON THROUGH A TRIAL OF ITSELF IS

25    A SIGNIFICANT RESPONSIBILITY, AND THAT'S THE RESPONSIBILITY

3

1    THAT WE CALL ON YOU TO FULFILL.

2              MY NAME IS LARRY BURNS.  I'M THE JURY JUDGE.  I'LL

3    TELL YOU A LITTLE BIT ABOUT OUR COURT.

4              WE HAVE 12 ACTIVE JUDGES HERE NOW AND FIVE SENIOR

5    JUDGES.  WHEN A FEDERAL JUDGE TURNS 65 AND ASSUMING THEIR AGE

6    AND THEIR YEARS OF SERVICE ADD UP TO 80, THEY CAN GO SENIOR

7    AND WORK A REDUCED CASELOAD.  BUT OUR SENIORS IN OUR VERY BUSY

8    DISTRICT WORK VERY, VERY HARD.

9              EACH OF US, EACH OF OUR JUDGES HERE, WAS APPOINTED

10   BY ONE OF THE PRESIDENTS OF THE UNITED STATES AND CONFIRMED BY

11   THE SENATE.  WE HAVE A VERY BUSY, ACTIVE DISTRICT HERE.  OUR

12   PROXIMITY TO THE BORDER GIVES US LOTS OF CASES.  I THINK IF

13   YOU SERVE ON THE GRAND JURY OR IF YOU'VE BEEN HERE BEFORE

14   SERVING AS A TRIAL JUROR, YOU'RE AWARE THAT PEOPLE TRY TO

15   BRING THE STRANGEST THINGS ACROSS THE BORDER, A LOT OF WHICH

16   ARE PROHIBITED; PEOPLE, DRUGS, PARROTS, KNOCK-OFF CALVIN KLEIN

17   JEANS.  ALL THOSE THINGS ARE NOW IMPLICATED BY THE FEDERAL

18   LAWS.

19              LET ME INTRODUCE THE CLERK OF OUR COURT,

20   MR. HAMRICK.  HE'S THE THAT CALLED COURT TO ORDER.

21              WE ALSO HAVE SOME REPRESENTATIVES HERE FROM THE

22   UNITED STATES ATTORNEY'S OFFICE.  THEY WORK VERY CLOSELY WITH

23   THE GRAND JURY.  THEY'RE THE ONES THAT DECIDE, IN THE FIRST

24   INSTANCE, WHETHER A CASE SHOULD BE BROUGHT.  IT'S SUBJECT TO

25   THE APPROVAL OF THE GRAND JURY THAT THE CASE CAN GO FORWARD.

COMPUTER-AIDED TRANSCRIPTION

37

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 5 of 69

4

```
 1          IF YOU'RE CHOSEN AS A GRAND JUROR, YOU'RE GOING TO

 2   BE HEARING, BY AND LARGE, CASES PRESENTED BY THE ASSISTANT

 3   UNITED STATES ATTORNEYS WHO WORK IN OUR DISTRICT.

 4          REPRESENTING THAT OFFICE IS MR. TODD ROBINSON.  HE'S

 5   A VERY FINE LAWYER.  I'VE KNOWN HIM FOR YEARS.  HE'S A FINE

 6   TRIAL LAWYER, VERY SMART FELLOW.

 7          AND ███████████ WHO'S BEEN WITH THE U.S.

 8   ATTORNEY'S OFFICE FOR SOME TIME, ALSO, SHE'S THE GRAND JURY

 9   ASSISTANT.  YOU'LL BE GETTING TO KNOW HER IN WORKING WITH HER.

10          AND THEN WHOSE ███████████ OUR JURY

11   ADMINISTRATOR.

12          AND THEN FINALLY I THINK MOST OF YOU HAVE MET ██████

13   ███████    SHE'S OUR JURY CLERK.

14          AND THEN THIS YOUNG WOMAN HERE, EVA OEMICK, SHE'S MY

15   COURT REPORTER.  YOU'LL SEE HER OCCASIONALLY WHEN YOU COME

16   DOWN TO RETURN GRAND JURY INDICTMENTS.  AFTER YOU DECIDE WHICH

17   CASES SHOULD GO FORWARD, USUALLY THE FOREPERSON OR THE DEPUTY

18   FOREPERSON WILL COME DOWN.  SOMETIMES TO MY COURT; SOMETIMES

19   TO OTHERS.  BUT THAT'S A REPORTED PROCEEDING.

20          SO WE'RE GLAD TO HAVE YOU HERE TODAY.  THIS IS

21   IMPORTANT SERVICE, AND WE APPRECIATE YOU BEING HERE.  THE MOST

22   FAMILIAR RESPONSE I GET FROM FOLKS CALLED IN FOR JURY SERVICE

23   OR GRAND JURY SERVICE IS "I WISH I WAS SOMEWHERE ELSE."

24          AND I UNDERSTAND THE SENTIMENT.  WE ALL LEAD VERY

25   BUSY LIVES.  THIS IS REALLY IMPORTANT SERVICE.  IT'S LIKE
```

COMPUTER-AIDED TRANSCRIPTION

5

1    TRIAL JURY SERVICE.  I TELL OUR TRIAL JURORS THAT IF YOU WERE

2    IN THE POSITION OF A DEFENDANT IN A CASE OR A PLAINTIFF IN A

3    CIVIL CASE OR EVEN THE UNITED STATES GOVERNMENT,

4    MR. ROBINSON'S POSITION, YOU'D WANT THE CASE TO BE DECIDED BY

5    PEOPLE WHO HAVE A STAKE IN THE COMMUNITY, PEOPLE WHO ARE

6    FAIR-MINDED, PEOPLE WHO ARE CONSCIENTIOUS.  THAT'S WHAT OUR

7    JURY SYSTEM IS ABOUT.  OUR GRAND JURY SYSTEM DEPENDS ON THAT

8    AS WELL.  WE WANT FAIR-MINDED PEOPLE TO MAKE THESE VERY

9    IMPORTANT DECISIONS.

10           SO WHILE I ACKNOWLEDGE AND I UNDERSTAND THAT YOU

11    LEAD VERY BUSY LIVES, WE APPRECIATE THE COMMITMENT THAT YOU

12    MAKE.  OUR SYSTEM DEPENDS ON IT.  AT SOME POINT, IF YOU COUNT

13    ON THE SYSTEM TO GIVE YOU JUSTICE, THEN YOU MUST BE PREPARED

14    TO MAKE THIS KIND OF COMMITMENT WHEN CALLED UPON TO DO IT.  SO

15    AGAIN, I APPRECIATE YOU BEING HERE.

16           THAT SAID, WE'VE TRIED TO SCREEN THOSE PEOPLE

17    PREVIOUSLY WHO, IN THEIR QUESTIONNAIRES, TOLD US THAT THEY HAD

18    INSURMOUNTABLE PROBLEMS THAT WOULD PREVENT THEM FROM SERVING.

19    MY EXPERIENCE IS THAT BETWEEN THE TIME WE GET THE

20    QUESTIONNAIRES AND THE SESSION TODAY, THE SESSION WHERE WE

21    ACTUALLY SPEAK TO PEOPLE PERSONALLY, THAT SOMETIMES THERE'S

22    SOME ADDITIONAL PROBLEMS THAT ARISE THAT WEREN'T FORESEEN AND

23    WEREN'T KNOWN AT THE TIME ALL OF YOU FILLED OUT THE

24    QUESTIONNAIRES.

25           MADAM CLERK, IF YOU'LL CALL THE FIRST 23 NAMES.

COMPUTER-AIDED TRANSCRIPTION

6

1          THE CLERK:  THIS IS THE PANEL 07-1, THE WEDNESDAY

2     PANEL.

3     ▬▬▬▬▬▬▬▬▬▬

4     ▬▬▬▬▬▬▬▬▬▬

5     ▬▬▬▬▬▬▬▬▬

6          THE NEXT NAME HAS BEEN EXCUSED.  I'LL DRAW A NEW

7     NAME.

8          NO. ▬▬▬▬▬▬▬▬

9          ▬▬▬▬▬▬▬▬

10         ▬▬▬▬▬▬▬▬

11         ▬▬▬▬▬▬▬

12         ▬▬▬▬▬▬▬▬▬

13         THE NEXT NAME HAS BEEN EXCUSED.  I'LL DRAW ANOTHER

14    NAME RANDOMLY.

15         NO. ▬▬▬▬▬▬▬▬▬

16         ▬▬▬▬▬▬▬▬▬

17         ▬▬▬▬▬▬▬▬▬

18         ▬▬▬▬▬▬▬▬

19         ▬▬▬▬▬▬▬▬

20    ▬▬▬▬▬▬▬▬▬

21         ▬▬▬▬▬▬▬▬

22         ▬▬▬▬▬▬▬▬▬

23         ▬▬▬▬▬▬▬▬

24         ▬▬▬▬▬▬▬▬

25         ▬▬▬▬▬▬▬

COMPUTER-AIDED TRANSCRIPTION

40

```
 1    ████████████████████
 2    ████████████████████
 3    ████████████████████
 4    ████████████████████
 5         THE COURT:  GOOD MORNING AGAIN.
 6    ██████████████  YOU HAVE A COPY OF THE QUESTIONNAIRE
 7    WITH THE BASIC BIOGRAPHICAL INFORMATION.
 8         WOULD YOU TELL US ABOUT YOURSELF, PLEASE.
 9         PROSPECTIVE JUROR:  MY MAKE ██████████  I
10    LIVE IN ██████  I'M A TEACHER.  MY WIFE IS A ████████  I HAVE
11    ONE ADULT CHILD.  HE'S █████████████████.  I HAD
12    SOME EXPERIENCE IN THE STATE COURT.  I WAS IN A TRIAL IN
13    NOVEMBER OR OCTOBER.  YES, I CAN BE FAIR AND IMPARTIAL.
14         THE COURT:  WHERE DO YOU TEACH?
15         PROSPECTIVE JUROR:  ████████████ SCHOOL DISTRICT.
16         THE COURT:  WHAT IS YOUR DISCIPLINE?
17         PROSPECTIVE JUROR:  LANGUAGE, ARTS, SOCIAL
18    STUDIES.
19         THE COURT:  I HAVE TWO SONS WHO ████████████
20    ████████████  I DON'T LIVE IN ████ ANYMORE.  I LIVED
21    THERE 24 YEARS.  AND AS SOON AS THE YOUNGEST ONE GRADUATED,
22    TWO WEEKS LATER I MOVED CLOSER TO DOWNTOWN BECAUSE THE DRIVE
23    ████████ WAS KILLING ME.
24         HOW LONG HAVE YOU BEEN A TEACHER?
25         PROSPECTIVE JUROR:  I STARTED AT ██████████ AND
```

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 9 of 69

8

```
 1    I'VE BEEN AT ███████████████      FOR 15 YEARS.

 2            THE COURT:  NICE TO HAVE YOU.

 3            THERE'S A DIFFERENCE, OF COURSE, BETWEEN THE

 4    FUNCTION OF THE GRAND JURY AND THE FUNCTION OF THE TRIAL JURY.

 5    HERE THE STANDARD OF PROOF IS NOT PROOF BEYOND A REASONABLE

 6    DOUBT BECAUSE THE GRAND JURY IS NOT MAKING AN ULTIMATE

 7    DECISION ABOUT WHETHER SOMEONE IS GUILTY OR NOT OF THE CHARGE.

 8    INSTEAD, THE GRAND JURY IS DETERMINING REALLY TWO FACTORS:

 9    "DO WE HAVE A REASONABLE -- COLLECTIVELY, DO WE HAVE A

10    REASONABLE BELIEF THAT A CRIME WAS COMMITTED?  AND SECOND, DO

11    WE HAVE A REASONABLE BELIEF THAT THE PERSON THAT THEY PROPOSE

12    THAT WE INDICT COMMITTED THE CRIME?"

13            IF THE ANSWER IS "YES" TO BOTH OF THOSE, THEN THE

14    CASE SHOULD MOVER FORWARD.  IF THE ANSWER TO EITHER OF THE

15    QUESTIONS IS "NO," THEN THE GRAND JURY SHOULD HESITATE AND NOT

16    INDICT.

17            YOU UNDERSTAND THAT LEGAL DIFFERENCE BETWEEN GRAND

18    JURY FUNCTION AND TRIAL JURY FUNCTION?

19            PROSPECTIVE JUROR:  YES, I DO.

20            THE COURT:  THANK YOU, ████████████  I APPRECIATE

21    YOUR ANSWERS.

22            ████████████████  TELL US ABOUT YOURSELF.

23            PROSPECTIVE JUROR:  MY NAME IS ████████████.  I

24    LIVE IN ██████████  I'M A MANAGER OF IMPLEMENTATIONS FOR A

25    SOFTWARE COMPANY.  I'M NOT MARRIED.  I HAVE NO CHILDREN.  I'VE
```

COMPUTER-AIDED TRANSCRIPTION

42

9

1    SERVED AS A FEDERAL GRAND JUROR IN '99, I BELIEVE.

2              THE COURT:  HERE IN THIS DISTRICT?

3         PROSPECTIVE JUROR:  YES.

4              THE COURT:  YOU'RE A VETERAN.  YOU KNOW ALL ABOUT

5    THIS PROCESS.

6         PROSPECTIVE JUROR:  CORRECT.

7         YES, I CAN FAIR.

8              THE COURT:  ARE YOU UP TO THE TASK?

9         PROSPECTIVE JUROR:  YES.

10             THE COURT:  I THINK IT MIGHT BE INTERESTING TO THE

11   OTHER ASSEMBLED PEOPLE WHO HAVE NOT BEEN ON A GRAND JURY

12   BEFORE, DID YOU ENJOY YOUR PRIOR SERVICE?

13        PROSPECTIVE JUROR:  I DID.

14             THE COURT:  INTERESTING?  LEARNED A LOT OF THINGS?

15        PROSPECTIVE JUROR:  YES.

16             THE COURT:  MOST PEOPLE WHO'VE SERVED ON THE GRAND

17   JURY TELL ME IT'S ONE OF THE BEST LEARNING EXPERIENCES OF

18   THEIR LIFE.  THEY MEET INTERESTING PEOPLE.  THEY DEAL WITH

19   INTERESTING ISSUES.

20             THANK YOU.  I APPRECIATE YOUR ANSWERS.  WELCOME

21   BACK.

22

23        PROSPECTIVE JUROR:  ████████  I LIVE IN ████

24   ████████████     I'M A REGISTERED NURSE.  I'M MARRIED,

25   AND MY HUSBAND IS A ████████████  I HAVE ██ ADULT CHILD

COMPUTER-AIDED TRANSCRIPTION

43

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 11 of 69

10

1    WHO'S IN HIS ███████████████████████████████ I HAVE

2    EXPERIENCE AS A TRIAL JUROR IN MY MID-20'S.  I COULD BE FAIR

3    IF SELECTED FOR A GRAND JURY.

4             THE COURT:  YOU WERE IN YOUR MID-20'S OR YOU'VE

5    HEARD 25 CASES?

6             PROSPECTIVE JUROR:  I WAS IN MY MID-20'S.  A LONG

7    TIME AGO.

8             THE COURT:  I ASKED ███████████ABOUT THE

9    DIFFERENCE.  ALL OF YOU, OF COURSE, HAVE SEEN THE ORIENTATION

10   TAPE ABOUT THE FUNCTION OF THE GRAND JURY.

11            YOU APPRECIATE THE DIFFERENCE IN THE FUNCTION

12   BETWEEN THE TWO ENTITIES, TRIAL JURIES AND GRAND JURIES?

13            PROSPECTIVE JUROR:  YES.

14            THE COURT:  YOU CAN CONSCIENTIOUSLY FULFILL THE JOB

15   OF BEING A GRAND JUROR SHOULD YOU BE ACCEPTED TO SIT ON THIS

16   PANEL?

17            PROSPECTIVE JUROR:  YES, I CAN.

18            THE COURT:  ███████████ GOOD MORNING.

19            PROSPECTIVE JUROR:  GOOD MORNING.

20            MY NAME IS ███████████ I LIVE IN ███████████ I'M

21   RETIRED NOW SINCE JUNE OF LAST YEAR.  I WAS A PRINCIPAL

22   RESEARCH TECHNICIAN FOR ███████████ I'VE BEEN MARRIED FOR

23   ███ YEARS.  MY WIFE IS A ███████████ WE DON'T HAVE ANY

24   CHILDREN.  AND I WAS ON A CIVIL REAL ESTATE TRIAL FOR A COUPLE

25   OF WEEKS MAYBE 10 OR 12 YEARS AGO.  AND I CAN BE FAIR.

COMPUTER-AIDED TRANSCRIPTION

44

Case 3:08-cr-01637-WQH    Document 10-5    Filed 06/23/2008    Page 12 of 69
Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 12 of 69

11

1          THE COURT: ▮▮▮▮▮▮▮ AS YOU'VE HEARD ME ALLUDE TO,

2    THE GRAND JURY FUNCTION IS TO DETERMINE WHETHER THERE'S ENOUGH

3    EVIDENCE FOR A CASE TO GO FORWARD FOR A FULL-BLOWN TRIAL.

4    THAT'S A PRELIMINARY DECISION IN THE CRIMINAL JUSTICE PROCESS,

5    BUT IT'S AN IMPORTANT DECISION.  SOMETIMES THE POWER TO CHARGE

6    SOMEBODY TO BRING AN INDICTMENT AGAINST SOMEBODY IS THE POWER

7    TO RUIN SOMEBODY.

8          SO WE WANT YOU TO LOOK AT THE CASES CAREFULLY AND

9    ANSWER THE TWO QUESTIONS THAT I MENTIONED TO ▮▮▮▮▮▮▮

10   "DO I HAVE A REASONABLE BELIEF THAT A FEDERAL CRIME WAS

11   COMMITTED?  AND DO I HAVE A REASONABLE BELIEF, BASED ON THE

12   PRESENTATION OF EVIDENCE SO FAR, THAT THIS PERSON THEY WANT ME

13   TO INDICT HAD SOMETHING TO DO WITH THAT, EITHER COMMITTED IT

14   OR HELPED IN THE COMMISSION OF THE CRIME?"

15         CAN YOU MAKE DECISIONS SUCH AS THAT IF YOU WERE

16   IMPANELED AS A GRAND JUROR HERE?

17         PROSPECTIVE JUROR:  YES.

18         THE COURT:  THANK YOU.

19   ▮▮▮▮▮▮▮ GOOD MORNING.

20   TELL US ABOUT YOURSELF.

21         PROSPECTIVE JUROR:  I'M ▮▮▮▮▮▮▮.  I LIVE IN

22   ▮▮▮▮▮▮▮ I WORK AS A SPEECH PATHOLOGIST.  I'M NOT MARRIED.  I

23   DON'T HAVE ADULT CHILDREN.  I'VE BEEN ON THREE TRIAL JURIES

24   ACROSS THE STREET.

25         THE COURT:  WHAT WAS YOUR MOST RECENT TRIAL JURY

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 13 of 69

12

1    SERVICE, HOW LONG AGO?

2              PROSPECTIVE JUROR:  IN THE '80S.

3              AND I COULD BE A FAIR JUROR.

4              THE COURT:  YOU MAKE THAT STATEMENT MINDFUL OF THE

5    QUESTIONS THAT I'VE PUT TO THE OTHER PROSPECTIVE GRAND JURORS?

6              PROSPECTIVE JUROR:  YES.

7              THE COURT:  THANK YOU, ▓▓▓▓▓▓

8              ▓▓▓▓▓▓▓  GOOD MORNING.

9              PROSPECTIVE JUROR:  MY NAME IS ▓▓▓▓▓▓▓  I

10   LIVE IN ▓▓▓▓▓  I'M A PRINCIPAL FOR AN ELEMENTARY SCHOOL.

11   I'M MARRIED, AND MY SPOUSE ▓▓▓▓▓▓  I HAVE ▓▓ ADULT

12   ▓▓▓▓▓▓  SHE IS ▓▓▓▓▓▓  I'VE SERVED AS A TRIAL JUROR

13   IN THE STATE COURT IN THE '80S.  AND YES, I CAN BE FAIR.

14             THE COURT:  DOES YOUR ▓▓▓▓▓▓▓▓▓▓

15   ▓▓▓▓▓▓

16             PROSPECTIVE JUROR:  YES.  SHE'S ▓▓▓▓▓▓▓▓Y.

17             THE COURT:  ▓▓▓▓▓▓▓

18             WHAT IS THE NATURE OF HER ▓▓▓▓▓▓?  DOES SHE ▓▓

19   ▓▓▓▓▓▓▓▓▓▓▓?

20             PROSPECTIVE JUROR:  ▓▓▓▓▓▓▓▓

21             THE COURT:  THANK YOU, ▓▓▓▓▓▓

22             ▓▓▓▓▓

23             PROSPECTIVE JUROR:  MY NAME IS ▓▓▓▓▓▓  I LIVE

24   ▓▓▓▓▓▓  I WORK FOR THE POST OFFICE.  I'M MARRIED.  MY

25   HUSBAND'S ▓▓▓▓▓ MY ▓▓▓▓ I ONLY HAVE ▓▓▓▓ AND HE

COMPUTER-AIDED TRANSCRIPTION

46

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 14 of 69

13

1  WORKS FOR THE ███████    I HAVE NO EXPERIENCE.  YES, I CAN

2  BE FAIR.

3        THE COURT:  THANK YOU, ███████

4  ███████

5        PROSPECTIVE JUROR:  MY NAME IS ███████    I LIVE

6  IN S███████    I'M A NURSE.  I'M MARRIED TO ███████

7  I HAVE ███ CHILDREN, ███ AND ███.  AND I'VE NEVER HAD ANY

8  EXPERIENCE AS A TRIAL JUROR.

9        THE COURT:  YOU WATCHED OUR ORIENTATION FILM THIS

10 MORNING AND HAVE IN MIND THE DISTINCTION BETWEEN THE FUNCTION

11 OF THE GRAND JURY AND THE FUNCTION OF THE TRIAL JURY?

12       PROSPECTIVE JUROR:  YES.

13       THE COURT:  YOU'RE PREPARED TO SERVE THE FUNCTION OF

14 A GRAND JUROR?

15       PROSPECTIVE JUROR:  I'LL TRY.

16       THE COURT:  THANK YOU, ███████

17 ███████

18       PROSPECTIVE JUROR:  HI.  MY NAME IS ███████

19 I LIVE IN ███████    I'M A SERVICE FOR THE SOCIAL SECURITY

20 ADMINISTRATION.  I'M NOT MARRIED, BUT I'LL BE GETTING MARRIED

21 IN APRIL.  I DON'T HAVE ANY CHILDREN.  I DON'T HAVE ANY

22 EXPERIENCE AS A TRIAL JUROR.  AND YES, I WILL BE FAIR.

23       THE COURT:  ███████    THANK YOU.

24 ███████

25       PROSPECTIVE JUROR:  MY NAME IS ███████.  I

COMPUTER-AIDED TRANSCRIPTION

47

14

1    LIVE IN ▓▓▓▓▓▓▓▓▓▓▓ I'M A SYSTEMS ANALYST FOR A LARGE

2    PUBLISHING COMPANY.  MY WIFE IS AN ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3    ▓▓▓▓▓▓▓ I HAVE ▓▓▓ CHILDREN THAT THINK THEY'RE ADULTS, BUT

4    THE OLDEST IS REALLY ▓▓▓ I'VE BEEN ON THREE SUPERIOR COURT

5    TRIALS.  AND I'M SURE I CAN FAIR AS A GRAND JUROR.

6            THE COURT:  ▓▓▓▓▓▓▓▓▓ THE PRESENTATION OF

7    EVIDENCE TO THE GRAND JURY IS NECESSARILY ONE-SIDED.  THAT'S

8    WHAT THE SYSTEM CONTEMPLATES.  YOU'RE GOING TO BE HEARING ONLY

9    FROM THE PROSECUTOR.  THE PROSECUTOR IS GOING TO BE PRESENTING

10   EVIDENCE IN SUPPORT OF THE PROPOSED CHARGE.

11           THERE'S A LATER OPPORTUNITY, IF AN INDICTMENT IS

12   RETURNED, FOR THE PERSON TO DEFEND HIMSELF OR HERSELF AND

13   PRESENT HIS OR HER SIDE OF THE CASE, CONFRONT THE ACCUSERS AND

14   THE WITNESSES AGAINST HIM.

15           BUT I WANT TO MAKE SURE THAT YOU'RE PREPARED FOR

16   THAT SITUATION; THAT YOU'RE GOING TO BE HEARING JUST ONE SIDE,

17   AND YOU'RE GOING TO BE ASKED TO MAKE A DECISION BASED ON THE

18   PROSECUTOR'S EVIDENCE ALONE.

19           YOU'RE PREPARED FOR THAT; RIGHT?

20           PROSPECTIVE JUROR:  I UNDERSTAND THAT.

21           THE COURT:  THAT'S ONE OF THE FUNDAMENTAL

22   DIFFERENCES BETWEEN THE FULL ADVERSARY SYSTEM OF A JURY TRIAL

23   AND THEN OUR GRAND JURY PROCEEDING.

24           NOW, HAVING TOLD YOU THAT, MY EXPERIENCE IS THAT THE

25   PROSECUTORS DON'T PLAY HIDE-THE-BALL.  IF THERE'S SOMETHING

COMPUTER-AIDED TRANSCRIPTION

48

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 16 of 69

15

1    ADVERSE OR THAT CUTS AGAINST THE CHARGE, YOU'LL BE INFORMED OF

2    THAT.   THEY HAVE A DUTY TO DO THAT.

3            BUT THAT'S NOT TO SAY THAT EVERY CHARGE WILL PASS

4    MUSTER.   THAT'S UP TO YOU AND YOUR FELLOW GRAND JURORS.

5            UNDERSTANDING THAT THAT'S THE TASK OF THE GRAND

6    JURY, I TAKE IT YOU'RE UP TO IT?

7            PROSPECTIVE JUROR:   I BELIEVE SO.

8            THE COURT:   THANK YOU.

9

10           PROSPECTIVE JUROR:   MY NAME IS

11   I LIVE IN SAN DIEGO IN THE MISSION HILLS AREA.   I'M RETIRED.

12   I WAS A CLINICAL SOCIAL WORKER.   I'M SINGLE.   NO CHILDREN.

13   I'VE BEEN CALLED FOR JURY SERVICE A NUMBER OF TIMES, BUT I'VE

14   NEVER ACTUALLY BEEN SELECTED AS A JUROR.   CAN I BE FAIR?   I'LL

15   TRY.   BECAUSE OF THE NATURE OF THE WORK THAT I DID, I HAVE

16   SOME FAIRLY STRONG OPINIONS ABOUT SOME OF THE PEOPLE WHO COME

17   INTO THE LEGAL SYSTEM.   BUT I WOULD TRY TO WORK WITH THAT.

18           THE COURT:   WE'RE ALL PRODUCTS OF OUR EXPERIENCE.

19   WE'RE NOT GOING TO TRY TO DISABUSE YOU OF EXPERIENCES OR

20   JUDGMENTS THAT YOU HAVE.   WHAT WE ASK IS THAT YOU NOT ALLOW

21   THOSE TO CONTROL INVARIABLY THE OUTCOME OF THE CASES COMING IN

22   FRONT OF YOU; THAT YOU LOOK AT THE CASES FRESH, YOU EVALUATE

23   THE CIRCUMSTANCES, LISTEN TO THE WITNESS TESTIMONY, AND THEN

24   MAKE AN INDEPENDENT JUDGMENT.

25           DO YOU THINK YOU CAN DO THAT?

COMPUTER-AIDED TRANSCRIPTION

16

```
 1            PROSPECTIVE JUROR:  I'LL DO MY BEST.
 2            THE COURT:  IS THERE A CERTAIN CATEGORY OF CASE THAT
 3   YOU THINK MIGHT BE TROUBLESOME FOR YOU TO SIT ON THAT YOU'D BE
 4   INSTINCTIVELY TILTING ONE WAY IN FAVOR OF INDICTMENT OR THE
 5   OTHER WAY AGAINST INDICTING JUST BECAUSE OF THE NATURE OF THE
 6   CASE?
 7            PROSPECTIVE JUROR:  WELL, I HAVE SOME FAIRLY STRONG
 8   FEELINGS REGARDING DRUG CASES.  I DO NOT BELIEVE THAT ANY
 9   DRUGS SHOULD BE CONSIDERED ILLEGAL, AND I THINK WE'RE SPENDING
10   A LOT OF TIME AND ENERGY PERSECUTING AND PROSECUTING CASES
11   WHERE RESOURCES SHOULD BE DIRECTED IN OTHER AREAS.
12            I ALSO HAVE STRONG FEELINGS ABOUT IMMIGRATION CASES.
13   AGAIN, I THINK WE'RE SPENDING A LOT OF TIME PERSECUTING PEOPLE
14   THAT WE SHOULD NOT BE.
15            THE COURT:  WELL, LET ME TELL YOU, YOU'VE HIT ON THE
16   TWO TYPES OF CASES THAT ARE REALLY KIND OF THE STAPLE OF THE
17   WORK WE DO HERE IN THE SOUTHERN DISTRICT OF CALIFORNIA.  AS I
18   MENTIONED IN MY INITIAL REMARKS, OUR PROXIMITY TO THE BORDER
19   KIND OF MAKES US A FUNNEL FOR BOTH DRUG CASES AND IMMIGRATION
20   CASES.  YOU'RE GOING TO BE HEARING THOSE CASES I CAN TELL YOU
21   FOR SURE.  JUST AS DAY FOLLOWS NIGHT, YOU'RE HEAR CASES LIKE
22   THAT.
23            NOW, THE QUESTION IS CAN YOU FAIRLY EVALUATE THOSE
24   CASES?  JUST AS THE DEFENDANT ULTIMATELY IS ENTITLED TO A FAIR
25   TRIAL AND THE PERSON THAT'S ACCUSED IS ENTITLED TO A FAIR
```

COMPUTER-AIDED TRANSCRIPTION

50

Case 3:07-cr-00491-BTM     Document 18     Filed 07/30/2007     Page 18 of 69

17

1   APPRAISAL OF THE EVIDENCE OF THE CASE THAT'S IN FRONT OF YOU,

2   SO, TOO, IS THE UNITED STATES ENTITLED TO A FAIR JUDGMENT.  IF

3   THERE'S PROBABLE CAUSE, THEN THE CASE SHOULD GO FORWARD.  I

4   WOULDN'T WANT YOU TO SAY, "WELL, YEAH, THERE'S PROBABLE CAUSE.

5   BUT I STILL DON'T LIKE WHAT OUR GOVERNMENT IS DOING.  I

6   DISAGREE WITH THESE LAWS, SO I'M NOT GOING TO VOTE FOR IT TO

7   GO FORWARD."  IF THAT'S YOUR FRAME OF MIND, THEN PROBABLY YOU

8   SHOULDN'T SERVE.  ONLY YOU CAN TELL ME THAT.

9           PROSPECTIVE JUROR:  WELL, I THINK I MAY FALL IN THAT

10  CATEGORY.

11          THE COURT:  IN THE LATTER CATEGORY?

12          PROSPECTIVE JUROR:  YES.

13          THE COURT:  WHERE IT WOULD BE DIFFICULT FOR YOU TO

14  SUPPORT A CHARGE EVEN IF YOU THOUGHT THE EVIDENCE WARRANTED

15  IT?

16          PROSPECTIVE JUROR:  YES.

17          THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  I

18  APPRECIATE YOUR HONEST ANSWERS.

19          THE COURT:  ████████ DO YOU WANT TO PICK A REPLACEMENT

20  AT THIS POINT?

21          THE CLERK:  YES, SIR.

22          JUROR NO. ████████████████████

23          THE COURT:  LET ME GIVE YOU A MINUTE TO GET A COPY

24  OF THE SHEET.  TAKE A LOOK AT IT.  I THINK WE KNOW WHO YOU

25  ARE.

COMPUTER-AIDED TRANSCRIPTION

51

18

1          ████████████████

2          PROSPECTIVE JUROR:  CORRECT.

3          I LIVE IN ████████   MY HUSBAND AND I HAVE OUR OWN

4    BUSINESS.  WE ARE ENGINEERING AND MANUFACTURING COMPONENTS FOR

5    ████████████████ WE'VE BEEN IN BUSINESS ABOUT ██████

6    YEARS NOW.  WE'RE DOING REALLY WELL.  HE FREAKED OUT WHEN HE

7    TOLD ME I SHOULD JUST TELL YOU I SEE GUILTY PEOPLE.

8          THE COURT:  OH, I SAY THROUGH THE PHONY EXCUSES.

9    YOU THINK OTHERS HAVEN'T TRIED THAT BEFORE.

10          PROSPECTIVE JUROR:  I'M SURE THEY HAVE.

11          WE'VE BEEN MARRIED 31 YEARS.  I HAVE TWO ADULT

12   CHILDREN.  ONE'S A ████████████ AND THE OTHER ONE'S A ████

13   ████████ STUDENT AT ██████ IN ████████ IT'S MY FIRST COURT

14   APPEARANCE.  AND I THINK I CAN BE FAIR.

15          THE COURT:  I THINK YOU'LL ACTUALLY ENJOY IT, AND I

16   HOPE YOU'LL BE ABLE TO ACCOMMODATE YOUR WORK SCHEDULE HELPING

17   YOUR HUSBAND WITH THAT.

18          PROSPECTIVE JUROR:  I'M KIND OF CONCERNED ABOUT OUR

19   SCHEDULE.

20          THE COURT:  MOST PEOPLE FIND A WAY TO WORK IT OUT.

21   WE HEAR OFTEN "WELL, I'M SELF-EMPLOYED.  THIS IS GOING TO BE A

22   TREMENDOUS FINANCIAL BURDEN."

23          HERE'S WHAT I'M BUFFETED BY AS THE PERSON CHARGED

24   WITH MAKING THE DECISIONS:  THE CONSTITUTION REQUIRES THAT

25   JURIES, TRIAL JURIES AND GRAND JURIES, BE DRAWN FROM A FAIR

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 20 of 69

19

1    AND ACCURATE CROSS-SECTION OF THE COMMUNITY.  AND WHAT THE

2    COURTS HAVE SAID OVER THE YEARS IS NO GROUP IS AUTOMATICALLY

3    EXCLUDED.  YOU'VE GOT TO LOOK AT EVERYBODY.  AND THE EXCUSES

4    HAVE TO BE ON A CASE-BY-CASE BASIS.

5            AS YOU CAN IMAGINE, IF I EXCUSED EVERYONE WHO HAD

6    FINANCIAL HARDSHIP OR WAS SELF-EMPLOYED, THEN WE WOULD SKEW

7    OUR JURY POOLS.  WE WOULD HAVE WHOLE SEGMENTS OF OUR COMMUNITY

8    HERE THAT WERE NOT REPRESENTED, AND THAT WOULDN'T BE

9    CONSISTENT WITH THE CONSTITUTIONAL GUARANTEES.

10           AND SO I'M THE GUY AT THE FLOODGATE WITH THE BIG

11   WHEEL TRYING TO TURN IT AND MAKE THE DECISIONS.  I SAY THAT

12   RELUCTANTLY BECAUSE I'M NOT UNMINDFUL AT ALL OF THE BURDEN IT

13   PLACES ON NOT ONLY SELF-EMPLOYED PEOPLE, BUT PEOPLE WITH

14   REGULAR FULL-TIME JOBS THAT ARE GOING TO BE AWAY FOR A PERIOD

15   OF TIME.

16           WE DO APPRECIATE YOUR SERVICE.  IT'S IMPORTANT

17   SERVICE.  YOU SAY THIS IS YOUR FIRST TIME HERE.  IF YOU WERE

18   EVER HERE IN SOME OTHER CAPACITY, WITH LITIGATION OF SOME

19   TYPE, WHETHER CIVIL OR CRIMINAL, YOU WOULD WANT CONSCIENTIOUS

20   PEOPLE FROM THE COMMUNITY.  THAT'S THE GUARANTEE THAT WE TRY

21   TO GIVE; IS THAT "WE'RE GOING TO GIVE YOU A JUST DECISION, AND

22   IT WILL BE A JURY OF YOUR PEERS, PEOPLE JUST LIKE YOU FROM OUR

23   COMMUNITY WHO WILL MAKE THE DECISION.  WE CAN'T CONTINUE TO

24   GIVE THAT GUARANTEE UNLESS WE HAVE PEOPLE WILLING TO SERVE.

25           I THANK YOU.  I APPRECIATE THE SACRIFICE.  WELCOME.

COMPUTER-AIDED TRANSCRIPTION

53

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 21 of 69

20

1    WE'RE GLAD TO HAVE YOU.

2

3            PROSPECTIVE JUROR:  MY NAME IS ███████████  I

4    LIVE IN █████████████ AND I'M A JANITOR.  I'M MARRIED.  MY

5    WIFE IS A ██████████████ I HAVE ███ ADULT CHILDREN.  MY

6    █████████████ IN ███████████ IN ██████████████ MY ████ IS

7    WORKING ████████████████ AN ████████████████████████

8    AND I HAVE ONCE BEEN A TRIAL JUROR ABOUT 15 YEARS AGO.

9            THE COURT:  CRIMINAL OR CIVIL?

10            PROSPECTIVE JUROR:  CIVIL CASE.

11            AND I COULD BE FAIR.

12            THE COURT:  YOU MAKE THAT STATEMENT MINDFUL OF THE

13    QUESTIONS I'VE PUT TO OTHERS AND THE ANSWERS THAT THEY'VE

14    GIVEN?

15            PROSPECTIVE JUROR:  YES.

16            THE COURT:  THANK YOU.

17

18            PROSPECTIVE JUROR:  ██████████████  I LIVE IN

19    ████████  I'M AN ENGINEER FOR THE █████████████████  I

20    INSTALL AND MAINTAIN ████████████████████████████████

21    ██████████████████████  I'M NOT MARRIED.  I HAVE NO CHILDREN.

22    I HAVE NOT SERVED ON A JURY BEFORE.

23            THE COURT:  ANY TYPE OF JURY?

24            PROSPECTIVE JUROR:  ANY TYPE OF JURY.

25            I HOPE I CAN BE FAIR.

COMPUTER-AIDED TRANSCRIPTION

54

21

1          THE COURT:  I THINK YOU CAN BE FAIR.

2          THE QUESTION IS JUST A TIME PROBLEM; RIGHT?

3          THE DEFENDANT:  YES, SIR.

4          THE COURT:  DOESN'T HAVE TO DO WITH FAIRLY --

5          PROSPECTIVE JUROR:  NO, SIR.

6          THE COURT:  I SPOKE TO YOU AT SIDEBAR ABOUT THAT.

7    IF IT BECOMES A PROBLEM, WE CAN DEAL WITH IT.  I'LL REVISIT IT

8    AT SOME LATER TIME.

9          BUT I THINK THE EXPLANATION I GAVE TO ███████ ALSO

10   WOULD APPLY IN YOUR CASE.  I CAN'T JUST SUMMARILY SAY, "WELL,

11   THIS FELLOW'S GOT A TIME PROBLEM, SO WE'VE GOT TO LET HIM GO."

12         WHERE'S YOUR DUTY STATION HERE?  WHERE'S YOUR

13   WORKPLACE?

14         PROSPECTIVE JUROR:  IN ███████

15         THE COURT:  ███████  THANK YOU.  I APPRECIATE

16   YOUR ANSWERS.

17         ███████

18         PROSPECTIVE JUROR:  MY NAME IS ███████       I

19   LIVE IN ███████.  I'M A STATISTICIAN AT ███████

20   ███████ I'M SEPARATED RIGHT NOW.  I HAVE TWO ███████

21   CHILDREN.  I'VE BEEN ON A TRIAL JURY ON A CRIMINAL CASE AT THE

22   SUPERIOR COURT ABOUT TWO YEARS AGO.  AND I CAN BE FAIR.

23         THE COURT:  YOU WATCHED THE FILM AND APPRECIATE THE

24   DIFFERENCE BETWEEN THE FUNCTION OF THE GRAND JURY AND THEN

25   WHAT A CRIMINAL TRIAL JURY DOES?

COMPUTER-AIDED TRANSCRIPTION

55

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 23 of 69

22

```
 1          PROSPECTIVE JUROR:  YES.

 2          THE COURT:  THANK YOU, ███████████

 3          I'M NOT GOING TO MAKE ANY JOKES ABOUT ██████

 4     ████████████

 5          PROSPECTIVE JUROR:  MY NAME IS ██████████████  I

 6     LIVE IN ████████████████JUST EAST OF HERE.  I'M A PROJECT

 7     MANAGER FOR THE CITY OF ███████████████████

 8     ████████████I'M MARRIED.  MY WIFE'S A ██████████████, BUT

 9     SHE'S ON LEAVE RIGHT NOW RAISING ████KIDS, ████████AND

10     ████MONTHS.  SO THEY'RE NOT ADULTS.  I HAVE NO EXPERIENCE

11     SERVING ON ANY JURY OF ANY TYPE.  I'VE BEEN SUMMONED.  I'VE

12     BEEN EXCUSED FROM ONE OR TWO.  I'VE SIMPLY NOT BEEN CALLED FOR

13     OTHERS.  I BELIEVE I CAN BE FAIR.

14          THE COURT:  THANK YOU.

15     ████████████████

16          PROSPECTIVE JUROR:  ██████████████  I LIVE IN THE

17     COMMUNITY OF ████████ I DRIVE A SCHOOL FOR THE █████████████

18     ██████ SCHOOL DISTRICT.  MY WIFE IS A ██████████████████████

19     ████████.  I HAVE TWO █████CHILDREN.  ONE'S A ████████████████

20     ██████████IN ███████████████BACK IN ███████████  MY OTHER SON

21     WORKS AS A ███████████████████████

22          THE COURT:  HOW LONG HAVE YOU DRIVEN A SCHOOL BUS UP

23     IN THE ██████████

24          PROSPECTIVE JUROR:  THREE YEARS NOW.  ACTUALLY, I'VE

25     ONLY HAD TO DRIVE UP TO ████████WITH A BUS FOR ABOUT THREE
```

COMPUTER-AIDED TRANSCRIPTION

23

1    MONTHS.  MOST OF MY STUFF HAS BEEN IN THE ██████████████

2    AREA.  NOW I'M OVER BY ████████████ DRIVING.  I DRIVE

3    SPECIAL NEEDS CHILDREN.

4         THE COURT:  IT'S BEEN A WHILE SINCE MY KIDS WERE

5    SMALL.  I TOOK THEM TO SNOW.

6         ██████ IS UP IN THE MOUNTAINS; RIGHT?

7         PROSPECTIVE JUROR:  JUST ABOVE ████████ WHERE THE

8    FIRE WAS.

9         THE COURT:  OH.  I'M THINKING WAY FARTHER EAST AND

10   COLDER THAN ████████.

11        YOU'RE NOT DRIVING OUT IN THE SNOW DURING THE

12   WINTER, ARE YOU?

13        PROSPECTIVE JUROR:  NONE OF THE ████████████

14   SCHOOLS.

15        AND I'VE NEVER BEEN ON A JURY AT ALL.  I THINK I CAN

16   DO ALL THIS.

17        THE COURT:  YOU HAVE NO RESERVATION ABOUT YOUR

18   ABILITY TO BE FAIR AND IMPARTIAL AND LOOK AT THE EVIDENCE AND

19   PERFORM THE FUNCTION THAT THE GRAND JURY PERFORMS.

20        PROSPECTIVE JUROR:  NO, SIR.

21        THE COURT:  ████████.

22        PROSPECTIVE JUROR:  MY NAME IS ████████ I LIVE

23   IN ██████ I WORK AS A SCHOOL PSYCHOLOGIST.  I'M AT THE

24   ██████ SCHOOL DISTRICT.  I AM MARRIED.  MY HUSBAND IS A

25   ████████████ SO NOW HE ████████████ I HAVE ███

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 25 of 69

24

1   ADULT STEPCHILDREN.  ONE IS AN ▮▮▮▮▮▮▮▮▮▮▮▮ AND ONE

2   IS IN ▮▮▮▮▮▮▮▮ I SERVED AS A TRIAL JUROR IN VISTA MAYBE

3   TEN YEARS AGO NOW.  AND YES, I CAN BE FAIR.

4         THE COURT:  THANK YOU.  I APPRECIATE YOUR ANSWERS.

5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6         PROSPECTIVE JUROR:  MY NAME IS ▮▮▮▮▮▮▮▮ I'M

7   FROM ▮▮▮▮▮▮▮▮ I'M A HOMEMAKER.  MY HUSBAND IS A ▮▮▮▮

8   ▮▮▮▮▮▮ OUR ▮▮▮▮▮▮▮▮▮▮▮▮ I'VE NEVER BEEN SELECTED

9   FOR A JURY, ALTHOUGH I WAS CALLED.  AND I THINK I CAN BE FAIR.

10        THE COURT:  WERE YOU CALLED UP TO VISTA?  IS THAT

11   WHERE YOU WOULD REPORT?

12        PROSPECTIVE JUROR:  YES.

13        THE COURT:  ▮▮▮▮▮▮▮▮▮▮▮▮

14        PROSPECTIVE JUROR:  MAY NAME IS ▮▮▮▮▮▮▮ I

15   LIVE IN ▮▮▮▮▮▮▮ I'M A REAL ESTATE AGENT.  NOT MARRIED.  NO

16   KIDS.  HAVE NOT SERVED.  AND AS FAR AS BEING FAIR, IT KIND OF

17   DEPENDS UPON WHAT THE CASE IS ABOUT BECAUSE THERE IS A

18   DISPARITY BETWEEN STATE AND FEDERAL LAW.

19        THE COURT:  IN WHAT REGARD?

20        PROSPECTIVE JUROR:  SPECIFICALLY, MEDICAL

21   MARIJUANA.

22        THE COURT:  WELL, THOSE THINGS -- THE CONSEQUENCES

23   OF YOUR DETERMINATION SHOULDN'T CONCERN YOU IN THE SENSE THAT

24   PENALTIES OR PUNISHMENT, THINGS LIKE THAT -- WE TELL TRIAL

25   JURORS, OF COURSE, THAT THEY CANNOT CONSIDER THE PUNISHMENT OR

COMPUTER-AIDED TRANSCRIPTION

58

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 26 of 69

25

1    THE CONSEQUENCE THAT CONGRESS HAS SET FOR THESE THINGS.  WE'D

2    ASK YOU TO ALSO ABIDE BY THAT.  WE WANT YOU TO MAKE A

3    BUSINESS-LIKE DECISION AND LOOK AT THE FACTS AND MAKE A

4    DETERMINATION OF WHETHER THERE WAS A PROBABLE CAUSE.

5            COULD YOU DO THAT?  COULD YOU PUT ASIDE STRONG

6    PERSONAL FEELINGS YOU MAY HAVE?

7            PROSPECTIVE JUROR:  IT DEPENDS.  I HAVE A VERY

8    STRONG OPINION ON IT.  WE LIVE IN THE STATE OF CALIFORNIA, NOT

9    FEDERAL CALIFORNIA.  THAT'S HOW I FEEL ABOUT IT VERY STRONGLY.

10            THE COURT:  WELL, I DON'T KNOW HOW OFTEN MEDICAL

11    MARIJUANA USE CASES COME UP HERE.  I DON'T HAVE A GOOD FEEL

12    FOR THAT.  MY INSTINCT IS THEY PROBABLY DON'T ARISE VERY

13    OFTEN.  BUT I SUPPOSE ONE OF THE SOLUTIONS WOULD BE IN A CASE

14    IMPLICATING MEDICAL USE OF MARIJUANA, YOU COULD RECUSE

15    YOURSELF FROM THAT CASE.

16            ARE YOU WILLING TO DO THAT?

17            PROSPECTIVE JUROR:  SURE.

18            THE COURT:  ALL OTHER CATEGORIES OF CASES YOU COULD

19    GIVE A FAIR, CONSCIENTIOUS JUDGMENT ON?

20            PROSPECTIVE JUROR:  FOR THE MOST PART, BUT I ALSO

21    FEEL THAT DRUGS SHOULD BE LEGAL.

22            THE COURT:  OUR LAWS ARE DIFFERENT FROM THAT.  AND

23    AS YOU HEARD ME EXPLAIN TO ████████████ A LOT OF THE CASES

24    THAT COME THROUGH IN OUR COURT ARE DRUG CASES.  YOU'LL BE

25    CALLED UPON TO EVALUATE THOSE CASES OBJECTIVELY AND THEN MAKE

COMPUTER-AIDED TRANSCRIPTION

26

1    THE TWO DETERMINATIONS THAT I STARTED OFF EXPLAINING TO

2    ▓▓▓▓▓▓▓▓▓    "DO I HAVE A REASONABLE BELIEF THAT A CRIME WAS

3    COMMITTED?  WHETHER I AGREE WITH WHETHER IT OUGHT TO BE A

4    CRIME OR NOT, DO I BELIEVE THAT A CRIME WAS COMMITTED AND THAT

5    THE PERSON THAT THE GOVERNMENT IS ASKING ME TO INDICT WAS

6    SOMEHOW INVOLVED IN THIS CRIME, EITHER COMMITTED IT OR HELPED

7    WITH IT?"

8              COULD YOU DO THAT IF YOU SIT AS A GRAND JUROR?

9              PROSPECTIVE JUROR:  THE LAST JURY I WAS ASKED TO SIT

10    ON, I GOT EXCUSED BECAUSE OF THAT REASON.

11              THE COURT:  YOU SAID YOU COULDN'T DO IT?  YOUR

12    SENTIMENTS ARE SO STRONG THAT THEY WOULD IMPAIR YOUR

13    OBJECTIVITY ABOUT DRUG CASES?

14              PROSPECTIVE JUROR:  I THINK RAPISTS AND MURDERERS

15    OUGHT TO GO TO JAIL, NOT PEOPLE USING DRUGS.

16              THE COURT:  I THINK RAPISTS AND MURDERERS OUGHT TO

17    GO TO JAIL, TOO.  IT'S NOT FOR ME AS A JUDGE TO SAY WHAT THE

18    LAW IS.  WE ELECT LEGISLATORS TO DO THAT.  WE'RE SORT OF AT

19    THE END OF THE PIPE ON THAT.  WE'RE CHARGED WITH ENFORCING THE

20    LAWS THAT CONGRESS GIVES US.

21              I CAN TELL YOU SOMETIMES I DON'T AGREE WITH SOME OF

22    THE LEGAL DECISIONS THAT ARE INDICATED THAT I HAVE TO MAKE.

23    BUT MY ALTERNATIVE IS TO VOTE FOR SOMEONE DIFFERENT, VOTE FOR

24    SOMEONE THAT SUPPORTS THE POLICIES I SUPPORT AND GET THE LAW

25    CHANGED.  IT'S NOT FOR ME TO SAY, "WELL, I DON'T LIKE IT.  SO

COMPUTER-AIDED TRANSCRIPTION

Case 3:08-cr-01637-WQH    Document 10-5    Filed 06/23/2008    Page 28 of 69
Case 3:07-cr-00401-BTM    Document 18    Filed 07/30/2007    Page 28 of 69

27

```
 1   I'M NOT GOING TO FOLLOW IT HERE."
 2          YOU'D HAVE A SIMILAR OBLIGATION AS A GRAND JUROR
 3   EVEN THOUGH YOU MIGHT HAVE TO GRIT YOUR TEETH ON SOME CASES.
 4   PHILOSOPHICALLY, IF YOU WERE A MEMBER OF CONGRESS, YOU'D VOTE
 5   AGAINST, FOR EXAMPLE, CRIMINALIZING MARIJUANA.  I DON'T KNOW
 6   IF THAT'S IT, BUT YOU'D VOTE AGAINST CRIMINALIZING SOME DRUGS.
 7          THAT'S NOT WHAT YOUR PREROGATIVE IS HERE.  YOUR
 8   PREROGATIVE INSTEAD IS TO ACT LIKE A JUDGE AND TO SAY, "ALL
 9   RIGHT.  THIS IS WHAT I'VE GOT TO DEAL WITH OBJECTIVELY.  DOES
10   IT SEEM TO ME THAT A CRIME WAS COMMITTED?  YES.  DOES IT SEEM
11   TO ME THAT THIS PERSON'S INVOLVED?  IT DOES."  AND THEN YOUR
12   OBLIGATION, IF YOU FIND THOSE THINGS TO BE TRUE, WOULD BE TO
13   VOTE IN FAVOR OF THE CASE GOING FORWARD.
14          I CAN UNDERSTAND IF YOU TELL ME "LOOK, I GET ALL
15   THAT, BUT I JUST CAN'T DO IT OR I WOULDN'T DO IT."  I DON'T
16   KNOW WHAT YOUR FRAME OF MIND IS.  YOU HAVE TO TELL ME ABOUT
17   THAT.
18          PROSPECTIVE JUROR:  I'M NOT COMFORTABLE WITH IT.
19          THE COURT:  DO YOU THINK YOU'D BE INCLINED TO LET
20   PEOPLE GO ON DRUG CASES EVEN THOUGH YOU WERE CONVINCED THERE
21   WAS PROBABLE CAUSE THEY COMMITTED A DRUG OFFENSE?
22          PROSPECTIVE JUROR:  IT WOULD DEPEND UPON THE CASE.
23          THE COURT:  IS THERE A CHANCE THAT YOU WOULD DO
24   THAT?
25          PROSPECTIVE JUROR:  YES.
```

COMPUTER-AIDED TRANSCRIPTION

28

1    THE COURT:  I APPRECIATE YOUR ANSWERS.  I'LL EXCUSE

2  YOU AT THIS TIME.

3    THE CLERK:  ██████████████████

4    THE COURT:  GOOD MORNING, ████████████

5    PROSPECTIVE JUROR:  GOOD MORNING.

6    THE COURT:  LET ME GIVE YOU A MINUTE TO GET

7  ORIENTED.

8    PROSPECTIVE JUROR:  MY NAME IS ████████████  I

9  LIVE IN ████████████  I'M A CONTRACT ADMINISTRATOR FOR THE

10  STATE OF CALIFORNIA ON THEIR ████████████ PROJECTS.

11  I'M NOT MARRIED.  I DON'T HAVE ANY CHILDREN.  I HAVE

12  EXPERIENCE IN THE '80'S AS A TRIAL JUROR.  AND I CAN BE

13  FAIR.

14    THE COURT:  DO YOU HAVE ANYTHING TO DO WITH GETTING

15  THE TELEPHONE POLES DOWN IN MY NEIGHBORHOOD?

16    PROSPECTIVE JUROR:  NO, BUT I CAN GET YOU A NUMBER

17  TO CALL.

18    THE COURT:  THAT'S GOOD ENOUGH.  WE'RE GOING TO KEEP

19  YOU ON THIS GRAND JURY.

20  ████████████████

21    PROSPECTIVE JUROR:  MY NAME IS ████████████  I LIVE

22  IN ████████████  I'M A SPECIAL ED ASSISTANT AT ████████████

23  ████████████ SCHOOL DISTRICT.  I'VE BEEN THERE FOR ABOUT ██ YEARS.

24  I'VE BEEN MARRIED FOR ██ YEARS.  MY HUSBAND IS ████████████  HE

25  ████████████████  I HAVE ██ ADULT CHILDREN:  ONE'S A

COMPUTER-AIDED TRANSCRIPTION

62

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 30 of 69

29

1    ███████████ MY ██████BOYS WORK FOR THE ████████████IN

2    ████████████████ AND THEY WORK FOR A COMPANY WHERE THEY GO

3    INTO THE ████████████ AND THE ████████████TO COPY OFF ████████

4    RECORDS.

5            THE COURT:  THEY BOTH HAVE THE SAME JOB, SAME JOB

6    FUNCTIONS?

7            PROSPECTIVE JUROR:  YES.  WELL, ACTUALLY, MY OLDER

8    BOY HAD THIS JOB FOR -- HE'S BEEN WORKING FOR THE COMPANY FOR

9    A LONG TIME.

10           THE COURT:  TOLD HIS BROTHER "THIS IS A GOOD GIG"?

11           PROSPECTIVE JUROR:  YEAH.  HIS BROTHER WAS WORKING

12   IN ████████FOR A WHILE.  THEN THE JOB OPENED UP, AND MY

13   YOUNGER ONE NOW IS WORKING THERE.  HE GOES ALSO ALL OVER

14   ██████████ █████████████████

15           THE COURT:  WHERE'S THE OLDER BROTHER?

16           PROSPECTIVE JUROR:  THE OLDER BROTHER NOW IS IN

17   ██████████ THINGS WERE A LITTLE BIT BETTER FOR HIM TO GROW AND

18   BE ABLE TO BUY A HOME.  SO HE'S OVER THERE WITH HIS WIFE AND

19   TWO KIDS.

20           I HAVE BEEN ON A JURY BEFORE FOR FEDERAL IN 1980

21   MAYBE.  A LONG, LONG TIME AGO.  I'VE BEEN CALLED FOR SUPERIOR

22   COURT IN EL CAJON AND HERE IN SAN DIEGO.

23           THE COURT:  DID YOU WATCH OUR ORIENTATION FILM THIS

24   MORNING AND APPRECIATE THE DIFFERENCE IN FUNCTIONS BETWEEN

25   GRAND JURIES AND TRIAL JURIES?

COMPUTER-AIDED TRANSCRIPTION

63

30

```
1              PROSPECTIVE JUROR:  YES.

2              THE COURT:  ANY REASON YOU CAN THINK OF WHY YOU

3    WOULDN'T BE FAIR AND IMPARTIAL?

4              PROSPECTIVE JUROR:  NO.  I CAN BE FAIR.

5              THE COURT:  THANK YOU, ████████████████

6              ████████████████

7              PROSPECTIVE JUROR:  MY NAME IS ████████████  I COME

8    FROM ██████████ WHICH IS ████████████████  I WORK FOR THE POST

9    OFFICE.  I'M A MAIL CARRIER.  I'M DIVORCED.  I HAVE ONE ADULT

10   ████████████  SHE WORKS IN A ██████████ AND ALSO AT THE ████████████

11   DOWN THERE.  I'VE BEEN ON TWO TRIALS:  ONE WAS A CRIMINAL,

12   SPOUSAL ABUSE; AND THE OTHER ONE WAS A CRIMINAL **.

13             THE COURT:  WAS THAT OUT IN ████████████

14             PROSPECTIVE JUROR:  SUPERIOR COURT, YES.

15             AND YES, I CAN BE FAIR.

16             THE COURT:  HOW LONG WAS YOUR DRIVE OVER TODAY?

17             PROSPECTIVE JUROR:  TWO HOURS.

18             THE COURT:  DID THE DESERT FLOWERS START TO BLOOM

19   YET?

20             PROSPECTIVE JUROR:  NOT YET.

21             THE COURT:  WHEN DOES THAT HAPPEN?

22             PROSPECTIVE JUROR:  JUST ABOUT MAY, USUALLY.

23             THE COURT:  WHAT TIME WOULD ██████████ HAVE TO BE

24   HERE ORDINARILY?

25             THE CLERK:  THEY TELL YOU YOU CAN COME OVERNIGHT.
```

COMPUTER-AIDED TRANSCRIPTION

64

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 32 of 69

31

1    PROSPECTIVE JUROR:  YES, I FOUND THAT OUT WHEN I GOT

2    HERE.

3    THE COURT:  IF THE DRIVE'S NOT GOING TO BE A

4    PROBLEM, YOU'RE HAPPY TO SERVE?

5    PROSPECTIVE JUROR:  I CAN SERVE, YES.

6    THE COURT:  WE'RE HAPPY TO HAVE YOU HERE.

7    THE SOUTHERN DISTRICT OF CALIFORNIA, LADIES AND

8    GENTLEMEN, COMPRISES BOTH SAN DIEGO COUNTY -- AND MOST OF US

9    ARE FROM SAN DIEGO COUNTY -- AND ALSO IMPERIAL COUNTY.  WE TRY

10   TO PULL RANDOMLY BUT SYSTEMATICALLY FROM IMPERIAL COUNTY, TOO.

11   IT'S NOT OUT OF THE ORDINARY.  IT'S A LITTLE UNUSUAL THAT I'LL

12   GET MORE THAN ONE OR TWO IMPERIAL COUNTY PROSPECTIVE JURORS

13   EVEN ON A TRIAL JURY.

14   BUT WE'RE HAPPY TO HAVE YOU, TEN-GALLON HAT AND ALL.

15

16   PROSPECTIVE JUROR:  MY NAME IS ▓▓▓▓▓▓▓▓  I

17   LIVE IN THE ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  I'M RETIRED.  I'VE

18   BEEN RETIRED FOR SIX YEARS.

19   THE COURT:  WHAT KIND OF WORK DID YOU DO?

20   PROSPECTIVE JUROR:  I WAS IN THE PRINTING INDUSTRY

21   FOR ▓▓ YEARS.

22   MY WIFE IS ▓▓▓▓▓▓  WE HAVE ▓▓▓▓ ADULT

23   CHILDREN.  TWO OF THEM LIVE ▓▓▓▓▓▓▓▓▓  ONE'S AN ▓▓▓▓

24   ▓▓▓▓▓▓▓▓▓▓  THE OTHER IS A ▓▓▓▓▓▓

25   ▓▓▓▓▓  AND MY OTHER ▓▓▓▓▓ LIVES IN ▓▓▓▓▓▓▓

COMPUTER-AIDED TRANSCRIPTION

32

1    SHE'S A ████████████████████

2            THE COURT:  DID THE ████████████ SING IN THE SHOWER

3    WHEN ████ LIVED AT HOME?

4            PROSPECTIVE JUROR: ██████ STILL SINGS IN THE SHOWER.

5            AND I'VE BEEN CALLED A FEW TIMES, BUT HAVE NOT

6    SERVED ON ANY JURIES.  AND I CERTAINLY CAN BE FAIR.

7            THE COURT:  THANK YOU, ████████████ WE'RE HAPPY

8    TO HAVE YOU.

9            FINALLY, ████████████

10           PROSPECTIVE JUROR:  MY NAME IS ████████████ I LIVE

11   IN ████████████ I'M AN ACTIVE REAL ESTATE BROKER.  MY

12   WIFE IS ██████████ WE HAVE ████ ADULT CHILDREN: ██████ F THEM

13   ARE MARRIED, AND ONE'S A ████████████████████    I

14   HAVE NO EXPERIENCE AS A JUROR.  HOWEVER, I HAVE SERVED AS A

15   WITNESS FOR THE GRAND JURY.

16           THE COURT:  YOU'VE ACTUALLY BEEN CALLED AS A WITNESS

17   BEFORE A GRAND JURY?

18           PROSPECTIVE JUROR:  YES, I HAVE.

19           THE COURT:  HOW LONG AGO WAS THAT?

20           PROSPECTIVE JUROR:  I WOULD SAY ABOUT TEN YEARS.

21           AND YES, I CAN BE FAIR.

22           THE COURT:  WELL, YOU MAY KNOW FROM YOUR EXPERIENCE

23   THAT IF YOU HAVE COUNSEL AS A WITNESS, YOUR COUNSEL DOESN'T

24   ACCOMPANY YOU IN TO THE GRAND JURY.  THE HALLMARK OF THE GRAND

25   JURY IS THAT IT'S A SECRET PROCEEDING AND NECESSARILY SO.

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 34 of 69

33

1    BECAUSE IF YOU, AS A GRAND JURY, DECIDE NO CHARGES SHOULD BE

2    BROUGHT, THEN NO ONE'S THE WORSE FOR THE WEAR. NO ONE EVER

3    KNOWS ABOUT THAT.

4            WE DO ALLOW WITNESSES TO CONSULT WITH THEIR LAWYERS,

5    BUT THEY MUST LEAVE THE GRAND JURY ROOM, CONSULT OUTSIDE WITH

6    THE LAWYER, AND THEN COME BACK IN.  SO THAT'S WHAT YOU CAN

7    EXPECT IF THERE ARE WITNESSES WHO ARE REPRESENTED BY COUNSEL.

8            PROSPECTIVE JUROR:  IT WAS SO SECRETIVE THAT I

9    DIDN'T EVEN KNOW WHAT I WAS THERE FOR.

10            THE COURT:  I'M GOING TO TOUCH ON THAT IN MY

11    REMARKS.  BUT IT'S VERY IMPORTANT THAT -- IT'S CHARACTERISTIC

12    OF THE GRAND JURY, AND YOU WILL BE UNDER LEGAL OBLIGATIONS NOT

13    TO SPEAK OF WHAT GOES ON IN FRONT OF THE GRAND JURY.  THERE'S

14    A LOT OF INTEREST SERVED BY THAT SECRECY, AS I SAID.

15            ORDINARILY, EVERYTHING IS SUPPOSED TO BE

16    TRANSCRIBED.  WE'RE SUPPOSED TO KNOW WHAT OUR GOVERNMENT IS

17    DOING.  BUT THIS IS ONE AREA WHERE TRADITIONALLY THE COURTS

18    AND EVERYONE ELSE SAYS, "NO.  WE NEED TO HAVE CONFIDENTIALITY

19    AND SECRECY HERE."  I TOUCHED ON ONE OF THE REASONS WHY IT HAS

20    TO DO WITH NOT RUINING THE REPUTATIONS OF PEOPLE, FOR EXAMPLE,

21    WHO MAY BE UNDER INVESTIGATION, BUT NO CHARGES EVER RESULT.

22    SOMETIMES THE POWER TO INDICT SOMEONE CAN BE THE POWER TO RUIN

23    A REPUTATION.

24            THERE ARE A LOT OF OTHER GOOD REASONS WHY THE GRAND

25    JURY HAS TO FUNCTION SECRETLY.  FIRST, IT PROMOTES YOUR

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 35 of 69

34

1   SECURITY.  PEOPLE WON'T KNOW THAT YOU'RE GRAND JURORS UNLESS

2   YOU TELL THEM.  A LOT OF TIMES THE CRIMES UNDER INVESTIGATION,

3   THE GOVERNMENT IS NOT SURE YET WHETHER IT'S A CRIME.  WE NEED

4   THE HELP OF THE GRAND JURY IN ASCERTAINING WHAT'S GOING ON.

5   SO THEY DON'T WANT TO TIP THEIR HAND AND SAY, "WE'RE LOOKING

6   AT SOMETHING."  THEY DON'T WANT PEOPLE TO TAKE MEASURES TO

7   COVER UP CRIMINAL ACTIVITIES.

8           ON OTHER OCCASIONS, SOMEONE WHO KNOWS HE'S THE

9   OBJECT OF AN INVESTIGATION MIGHT FLEE TO A DIFFERENT COUNTRY

10  AND GET OUTSIDE THE JURISDICTION OF THE UNITED STATES WHERE

11  THEY COULDN'T BE REACHED.

12          SO ALL OF THOSE REASONS AND OTHERS PROMOTE THE

13  POLICY OF GRAND JURY SECRECY.  YOU TOUCHED ON SOMETHING THAT'S

14  VERY IMPORTANT.  IT WILL BE INCUMBENT UPON ALL OF YOU TO

15  MAINTAIN THE SECRECY OF THE GRAND JURY IF YOU TAKE THE OATH

16  AND SERVE AS GRAND JURORS.

17          HOW'S THE REAL ESTATE MARKET THESE DAYS, SLOW?

18          PROSPECTIVE JUROR:  IT'S A LITTLE SLOW.  I

19  SPECIALIZE IN INVESTMENT PROPERTIES.

20          THE COURT:  SOME THINGS ARE HELPING, THOUGH; RIGHT?

21  THE MORTGAGE RATES ARE STARTING TO DROP?

22          PROSPECTIVE JUROR:  THEY'VE DROPPED A LITTLE BIT.

23          THE COURT:  THAT OUGHT TO HELP.

24          PROSPECTIVE JUROR:  YEAH.  THE MARKET'S STILL PRETTY

25  HIGH HERE IN SAN DIEGO PRICE-WISE.

COMPUTER-AIDED TRANSCRIPTION

35

1          THE COURT:  I READ WHERE PEOPLE ARE JUST STAYING

2    LONGER.  THE SELLERS ARE NOT GIVING UP THEIR PLACES FOR LESS.

3    THEY JUST SAY, "WELL, WE'LL STICK IT OUT.  WE'LL DIG IN OUR

4    HEELS AND STAY."

5          IS THAT WHAT YOU'RE EXPERIENCING, TOO?

6          PROSPECTIVE JUROR:  YES, I FIND A LOT OF THAT.  WHAT

7    YOU HAVE TO REALIZE IS THAT A LOT OF PEOPLE, IF THEY JUST

8    BOUGHT RECENTLY AND THEY'RE TRYING TO GET OUT OR THEY BOUGHT

9    SOME SECONDARY PROPERTY AND SO ON, THOSE ARE THE PEOPLE THAT

10   ARE HAVING PROBLEMS.

11         THE COURT:  THEY'RE A LITTLE BIT UNDERWATER?

12         PROSPECTIVE JUROR:  SOME OF THEM ARE, YES.

13         THE COURT:  THANK YOU, ███████████ I APPRECIATE

14   YOUR ANSWERS.

15         LADIES AND GENTLEMEN, HAVING SPOKEN WITH ALL OF YOU

16   AND PASSED ON YOUR GENERAL QUALIFICATIONS TO SIT, IT'S NOW MY

17   RESPONSIBILITY TO SELECT TWO OF YOUR NUMBER:  ONE AS A

18   FOREPERSON, THE OTHER AS A DEPUTY FOREPERSON.  THE FOREPERSON

19   PRESIDES OVER THE DELIBERATIONS OF THE GRAND JURY AND ACTS AS

20   THE CONTACT WITH BOTH THE COURT AND THE U.S. ATTORNEY'S

21   OFFICE.

22         NEITHER THE FOREPERSON OR THE DEPUTY FOREPERSON HAVE

23   ANY GREATER SAY.  IT'S THE DELIBERATIVE PROCESS.  THE 23 OF

24   YOU ALL HAVE AN EQUAL SAY.

25         BUT I THINK, HAVING LISTENED TO YOUR ANSWERS AND

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 37 of 69

36

1    EVALUATED YOUR BACKGROUNDS, IT APPEARS TO ME, ████████

2    HAVING PRIOR GRAND JURY SERVICE, THAT YOU WOULD BE A GOOD

3    PERSON TO ACT AS THE FOREPERSON OF THE GRAND JURY.

4           ARE YOU UP TO THE TASK AND WILLING TO ACCEPT THAT

5    ASSIGNMENT?

6           PROSPECTIVE JUROR:  I AM.

7           THE COURT:  THE COURT WOULD THEN APPOINT

8    ████████████ AS THE FOREPERSON OF THIS GRAND JURY.

9           ████████████ ARE YOU WILLING TO SERVE AS THE DEPUTY

10   FOREPERSON?

11          PROSPECTIVE JUROR:  CERTAINLY.

12          THE COURT:  YOU WOULD BE THE PRESIDING GRAND JUROR

13   IN THE ABSENCE OF ████████████

14          THOSE ARE THE DESIGNATIONS I WOULD MAKE, THEN:

15   ████████████ AS FOREPERSON; ████████████ AS DEPUTY

16   FOREPERSON.

17                        --oOo--

18          THE CLERK:  NEXT PANEL, 07-2, THIS IS THE THURSDAY

19   PANEL.

20   ████████████████████

21   ████████████████████

22   ████████████████████

23   ████████████████████

24   ████████████████████

25   ████████████████████

COMPUTER-AIDED TRANSCRIPTION

37

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17　　　THE COURT:  GOOD MORNING.

18

19　　　PROSPECTIVE JUROR:  I'                    I LIVE

20            I'M A                    FOR AN INDIAN TRIBE IN

21                    I'M MARRIED.  MY HUSBAND IS A

22                    I DO NOT HAVE ANY CHILDREN.

23 I HAVE NOT BEEN A JUROR BEFORE.  AND YES, I CAN BE FAIR.

24　　　THE COURT:  YOU'VE HAD THE ADVANTAGE OF SITTING

25 THROUGH ONE IMPANELMENT ALREADY.  YOU HEARD THE QUESTIONS

COMPUTER-AIDED TRANSCRIPTION

71

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 39 of 69

38

1    GENERALLY THAT I POSED TO THE OTHER PROSPECTIVE GRAND JURORS

2    ABOUT THE DIFFERENCES BETWEEN TRIAL JURIES AND GRAND JURIES

3    AND WHETHER INDIVIDUALS COULD FULFILL THAT FUNCTION.

4         WOULD YOUR ANSWERS HAVE BEEN BASICALLY THE SAME AS

5    THOSE THAT I'VE BEEN GIVEN WITH THE EXCEPTION OF THE TWO

6    PEOPLE THAT HAVE BEEN EXCUSED?

7         PROSPECTIVE JUROR:  YES.

8         THE COURT:  ███████████

9         PROSPECTIVE JUROR:  I'M ████████████ I LIVE IN

10   ████████████ I WORK FOR AN INSURANCE COMPANY ████████████

11   I'M MARRIED.  MY WIFE IS A ████████████████████████  I

12   HAVE ████ KIDS AGE ████ AND ████  I'VE BEEN A JUROR BEFORE

13   PROBABLY TEN YEARS AGO ON KIND OF A LOW-LEVEL CRIMINAL CASE.

14   AND IN THE NAME OF FULL DISCLOSURE, I'D PROBABLY SUGGEST I'D

15   BE THE FLIPSIDE OF SOME OF THE INDIVIDUALS WHO HAVE CONVEYED

16   THEIR CONCERNS PREVIOUSLY.  I HAVE A STRONG BIAS FOR THE U.S.

17   ATTORNEY, WHATEVER CASES THEY MIGHT BRING.  I DON'T THINK

18   THEY'RE HERE TO WASTE OUR TIME, THE COURT'S TIME, THEIR OWN

19   TIME.  I APPRECIATE THE EVIDENTIARY STANDARDS, I GUESS, MORE

20   OR LESS, AS A LAYPERSON WOULD; THAT THEY ARE CALLED UPON IN

21   ORDER TO BRING THESE CASES OR SEEK AN INDICTMENT.

22        AND THE GATEKEEPER ROLE THAT I GUESS WE'RE BEING

23   ASKED TO PLAY IS ONE THAT I'D HAVE A DIFFICULT TIME, IN ALL

24   HONESTY.  I'M PROBABLY SUGGESTING THAT THE U.S. ATTORNEY'S

25   CASE WOULD BE ONE THAT I WOULD BE WILLING TO STAND IN FRONT

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 40 of 69

39

1    OF; IN OTHER WORDS, PREVENT FROM GOING TO A JURY.

2            THE COURT:  IT SOMETIMES HAPPENS THAT AT THE TIME

3    THE CASE IS INITIALLY PRESENTED TO THE U.S. ATTORNEY'S OFFICE,

4    THINGS APPEAR DIFFERENTLY THAN 10 DAYS LATER, 20 DAYS LATER

5    WHEN IT'S PRESENTED TO A GRAND JURY.  THAT'S WHY THIS

6    GATEKEEPER ROLE IS VERY, VERY IMPORTANT.

7            YOU'RE NOT PART OF THE PROSECUTING ARM.  YOU'RE

8    INTENDED TO BE A BUFFER INDEPENDENT OF THE U.S. ATTORNEY'S

9    OFFICE.  AND THE REAL ROLE OF THE GRAND JURY IS TO MAKE SURE

10   THAT UNSUBSTANTIATED CHARGES DON'T GO FORWARD.

11           YOU'VE HEARD MY GENERAL COMMENTS.  YOU HAVE AN

12   APPRECIATION ABOUT HOW AN UNSUBSTANTIATED CHARGE COULD CAUSE

13   PROBLEMS FOR SOMEONE EVEN IF THEY'RE ULTIMATELY ACQUITTED.

14           YOU APPRECIATE THAT; RIGHT?

15           PROSPECTIVE JUROR:  I THINK I COULD APPRECIATE THAT,

16   YES.

17           THE COURT:  AND SO WE'RE -- LOOK, I'LL BE HONEST

18   WITH YOU.  THE GREAT MAJORITY OF THE CHARGES THAT THE GRAND

19   JURY PASSES ON THAT ARE PRESENTED BY THE U.S. ATTORNEY'S

20   OFFICE DO GO FORWARD.  MOST OF THE TIME, THE GRAND JURY PUTS

21   ITS SEAL OF APPROVAL ON THE INITIAL DECISION MADE BY THE U.S.

22   ATTORNEY.

23           OBVIOUSLY, I WOULD SCREEN SOMEBODY OUT WHO SAYS, "I

24   DON'T CARE ABOUT THE EVIDENCE.  I'M NOT GOING TO PAY ATTENTION

25   TO THE EVIDENCE.  IF THE U.S. ATTORNEY SAYS IT'S GOOD, I'M

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 41 of 69

40

1    GOING TO GO WITH THAT." IT DIDN'T SOUND LIKE THAT'S WHAT YOU

2    WERE SAYING.  YOU WERE SAYING YOU GIVE A PRESUMPTION OF GOOD

3    FAITH TO THE U.S. ATTORNEY AND ASSUME, QUITE LOGICALLY, THAT

4    THEY'RE NOT ABOUT THE BUSINESS OF TRYING TO INDICT INNOCENT

5    PEOPLE OR PEOPLE THAT THEY BELIEVE TO BE INNOCENT OR THE

6    EVIDENCE DOESN'T SUBSTANTIATE THE CHARGES AGAINST.  THAT'S

7    WELL AND GOOD.

8           YOU MUST UNDERSTAND THAT AS A MEMBER OF THE GRAND

9    JURY, YOU'RE THE ULTIMATE ARBITER.  THEY DON'T HAVE THE

10   AUTHORITY TO HAVE A CASE GO FORWARD WITHOUT YOU AND FELLOW

11   GRAND JURORS' APPROVAL.  I WOULD WANT YOU NOT TO JUST

12   AUTOMATICALLY DEFER TO THEM OR SURRENDER THE FUNCTION AND

13   GIVER THE INDICTMENT DECISION TO THE U.S. ATTORNEY.  YOU HAVE

14   TO MAKE THAT INDEPENDENTLY.

15          YOU'RE WILLING TO DO THAT IF YOU'RE RETAINED HERE?

16          PROSPECTIVE JUROR:  I'M NOT A PERSON THAT THINKS OF

17   ANYBODY IN THE BACK OF A POLICE CAR AS NECESSARILY GUILTY, AND

18   I WOULD DO MY BEST TO GO AHEAD AND BE OBJECTIVE.  BUT AGAIN,

19   JUST IN THE NAME OF FULL DISCLOSURE, I FELT LIKE I SHOULD LET

20   YOU KNOW THAT I HAVE A VERY STRONG PRESUMPTION WITH RESPECT TO

21   ANY DEFENDANT THAT WOULD BE BROUGHT IN FRONT OF US.

22          THE COURT:  I UNDERSTAND WHAT YOU'RE SAYING.  LET ME

23   TELL YOU THE PROCESS WILL WORK MECHANICALLY.  THEY'RE GOING TO

24   CALL WITNESSES.  AND WHAT THEY'RE GOING TO ASK YOU TO DO IS

25   EVALUATE THE TESTIMONY YOU HEAR FROM WITNESSES.

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 42 of 69

41

1          BEFORE YOU REACH A POINT WHERE YOU VOTE ON ANY

2   INDICTMENT, THE U.S. ATTORNEY AND THE STENOGRAPHER LEAVE.  THE

3   ONLY PEOPLE LEFT WHEN THE VOTE IS TAKEN ARE THE GRAND JURORS

4   THEMSELVES.  THAT'S THE WAY THE PROCESS IS GOING TO WORK.

5          YOU'RE GOING TO HAVE TO SAY EITHER "WELL, IT HAS THE

6   RING OF TRUTH TO ME, AND I THINK IT HAPPENED THE WAY IT'S

7   BEING SUGGESTED HERE.  AT LEAST I'M CONVINCED ENOUGH TO LET

8   THE CASE GO FORWARD" OR "THINGS JUST DON'T HAPPEN LIKE THAT IN

9   MY EXPERIENCE, AND I THINK THIS SOUNDS CRAZY TO ME.  I WANT

10  EITHER MORE EVIDENCE OR I'M NOT CONVINCED BY WHAT'S BEEN

11  PRESENTED AND I'M NOT GOING TO LET IT GO FORWARD."

12          CAN YOU MAKE AN OBJECTIVE ON FACTS LIKE THE ONES

13  I'VE JUST DESCRIBED?

14          PROSPECTIVE JUROR:  I WOULD DO MY BEST TO DO THAT.

15  I CERTAINLY WOULD WANT ME SITTING ON A GRAND JURY IF I WERE A

16  DEFENDANT COMING BEFORE THIS GRAND JURY.  HAVING SAID THAT, I

17  WOULD DO MY BEST.  I HAVE TO ADMIT TO A STRONG BIAS IN FAVOR

18  OF THE U.S. ATTORNEY THAT I'M NOT SURE I COULD OVERCOME.

19          THE COURT:  ALL I'M TRYING TO GET AT IS WHETHER

20  YOU'RE GOING TO AUTOMATICALLY VOTE TO INDICT IRRESPECTIVE OF

21  THE FACTS.

22          A FEW YEARS AGO, I IMPANELED A FELLOW HERE THAT WAS

23  A SERGEANT ON THE SHERIFF'S DEPARTMENT.  AND YEARS AGO WHEN I

24  WAS A PROSECUTOR, I WORKED WITH HIM.  HE WAS ALL ABOUT

25  ARRESTING AND PROSECUTING PEOPLE.  BUT WHEN HE GOT HERE, HE

75

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 43 of 69

42

1    SAID, "LOOK, I UNDERSTAND THAT THIS IS A DIFFERENT FUNCTION.

2    I CAN PERFORM THAT FUNCTION." HE SERVED FAITHFULLY AND WELL

3    FOR A NUMBER OF -- OVER A YEAR, I THINK. 18 MONTHS, MAYBE.

4    HE EVENTUALLY GOT A PROMOTION, SO WE RELIEVED HIM FROM THE

5    GRAND JURY SERVICE.

6         BUT, YOU KNOW, HE TOOK OFF ONE HAT AND ONE UNIFORM

7    AND PUT ON A DIFFERENT HAT ON THE DAYS HE REPORTED TO THE

8    GRAND JURY. HE WAS A POLICEMAN. HE'D BEEN INVOLVED IN

9    PROSECUTING CASES. BUT HE UNDERSTOOD THAT THE FUNCTION HE WAS

10   PERFORMING HERE WAS DIFFERENT, THAT IT REQUIRED HIM TO

11   INDEPENDENTLY AND OBJECTIVELY ANALYZE CASES AND ASSURED ME

12   THAT HE COULD DO THAT, THAT HE WOULD NOT AUTOMATICALLY VOTE TO

13   INDICT JUST BECAUSE THE U.S. ATTORNEY SAID SO.

14        AGAIN, I DON'T WANT TO PUT WORDS IN YOUR MOUTH. BUT

15   I DON'T HEAR YOU SAYING THAT THAT'S THE EXTREME POSITION THAT

16   YOU HAVE. I HEAR YOU SAYING INSTEAD THAT COMMON SENSE AND

17   YOUR EXPERIENCE TELLS YOU THE U.S. ATTORNEY'S NOT GOING TO

18   WASTE TIME ON CASES THAT LACK MERIT. THE CONSCIENTIOUS PEOPLE

19   WHO WORK FOR THE U.S. ATTORNEY'S OFFICE AREN'T GOING TO TRY TO

20   TRUMP UP PHONY CHARGES AGAINST PEOPLE.

21        MY ANECDOTAL EXPERIENCE SUPPORTS THAT, TOO. THAT

22   DOESN'T MEAN THAT EVERY CASE THAT COMES IN FRONT OF ME I SAY,

23   "WELL, THE U.S. ATTORNEY'S ON THIS. THE PERSON MUST BE

24   GUILTY." I CAN'T DO THAT. I LOOK AT THE CASES STAND-ALONE,

25   INDEPENDENT, AND I EVALUATE THE FACTS. I DO WHAT I'M CHARGED

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 44 of 69

43

1    WITH DOING, WHICH IS MAKING A DECISION BASED ON THE EVIDENCE

2    THAT'S PRESENTED.

3            SO THAT'S THE QUESTION I HAVE FOR YOU.  I CAN

4    UNDERSTAND THE DEFERENCE TO THE U.S. ATTORNEY.  AND FRANKLY, I

5    AGREE WITH THE THINGS THAT YOU'RE SAYING.  THEY MAKE SENSE TO

6    ME.  BUT AT THE END OF THE DAY, YOUR OBLIGATION IS STILL TO

7    LOOK AT THESE CASES INDEPENDENTLY AND FORM AN INDEPENDENT

8    CONSCIENTIOUS BUSINESS-LIKE JUDGMENT ON THE TWO QUESTIONS THAT

9    I'VE MENTIONED EARLIER:  DO I HAVE A REASONABLE BELIEF THAT A

10   CRIME WAS COMMITTED?  DO I HAVE A REASONABLE BELIEF THAT THE

11   PERSON TO BE CHARGED COMMITTED IT OR HELPED COMMIT IT?

12           CAN YOU DO THAT?

13           PROSPECTIVE JUROR:  AGAIN, I WOULD DO MY BEST TO DO

14   THAT.  BUT I DO BRING A VERY, VERY STRONG BIAS.  I BELIEVE

15   THAT, FOR EXAMPLE, THE U.S. ATTORNEY WOULD HAVE OTHER FACTS

16   THAT WOULD RISE TO LEVEL THAT THEY'D BE ABLE TO PRESENT TO US

17   THAT WOULD BEAR ON THE TRIAL.  I WOULD LOOK AT THE CASE AND

18   PRESUME AND BELIEVE THAT THERE ARE OTHER FACTS OUT THERE THAT

19   AREN'T PRESENTED TO US THAT WOULD ALSO BEAR ON TAKING THE CASE

20   TO TRIAL.  I'D HAVE A VERY DIFFICULT TIME.

21           THE COURT:  YOU WOULDN'T BE ABLE TO DO THAT.  WE

22   WOULDN'T WANT YOU TO SPECULATE THAT THERE'S OTHER FACTS THAT

23   HAVEN'T BEEN PRESENTED TO YOU.  YOU HAVE TO MAKE A DECISION

24   BASED ON WHAT'S BEEN PRESENTED.

25           BUT LOOK, I CAN TELL YOU I IMAGINE THERE'S PEOPLE IN

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 45 of 69

44

1    THE U.S. ATTORNEY'S OFFICE THAT DISAGREE WITH ONE ANOTHER

2    ABOUT THE MERITORIOUSNESS OF A CASE OR WHETHER A CASE CAN BE

3    WON AT A JURY TRIAL.

4            IS THAT RIGHT, MR. ROBINSON?

5            MR. ROBINSON:  ON OCCASION, YOUR HONOR.  NOT VERY

6    OFTEN.

7            THE COURT:  IT COMES UP EVEN IN AN OFFICE WITH

8    PEOPLE CHARGED WITH THE SAME FUNCTION.  I DON'T WANT TO BEAT

9    YOU UP ON THIS, ██████████. I'M EQUALLY CONCERNED WITH

10   SOMEBODY WHO WOULD SAY, "I'M GOING TO AUTOMATICALLY DROP THE

11   TRAP DOOR ON ANYBODY THE U.S ATTORNEY ASKS."  I WOULDN'T WANT

12   YOU TO DO THAT.  IF YOU THINK THERE'S A POSSIBILITY YOU'LL DO

13   THAT, THEN I'D BE INCLINED TO EXCUSE YOU.

14           PROSPECTIVE JUROR:  I THINK THAT THERE'S A

15   POSSIBILITY I WOULD BE INCLINED TO DO THAT.

16           THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  THANK

17   YOU.  I APPRECIATE YOUR ANSWERS.

18           LADIES AND GENTLEMEN, IF YOU'LL GIVE ME JUST A SHORT

19   PAUSE.  I'M GOING TO RECESS THIS PROCEEDING.  I HAVE A JURY

20   TRIAL OUT.  THE JURY HAS SENT A QUESTION.  I'M GOING TO

21   DISCUSS HOW TO ANSWER THE QUESTION WITH COUNSEL.  YOU'RE ALL

22   WELCOME TO STAY AND LISTEN TO THIS.  WE'LL BE IN RECESS

23   MOMENTARILY.

24                   --oOo--

25           THE COURT:  NOW BACK TO THE GRAND JURY IMPANELMENT.

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 46 of 69

45

1        AND WE WERE ABOUT TO CALL A REPLACEMENT FOR

2     ██████████

3            THE CLERK: ████████████████████████████████

4            THE COURT:  GOOD MORNING, ██████████████

5            PROSPECTIVE JUROR:  GOOD MORNING.  MY NAME IS

6     ██████████████████  I LIVE IN ████████████ ████████████

7     I'M RETIRED.  MARRIED FOR ████ YEARS.

8            THE COURT:  GOOD FOR YOU.  YOU KNOW WHAT THEY SAY

9     ABOUT THAT.  THE REASON THAT COUPLES CAN STICK TOGETHER THAT

10    LONG, ALL THOSE YEARS YOU'VE BOTH BEEN IN LOVE WITH THE SAME

11    MAN.

12            PROSPECTIVE JUROR:  MY HUSBAND ████████████████████

13    ████████████████

14            THE COURT: ██████████████████████

15            PROSPECTIVE JUROR:  AND HE'S BEEN ████████████████

16    ████████████████████████

17            THE COURT:  HE'S AN ALUMNUS OF THE ████████████

18    ████████  HE WENT TO ████████████████

19            PROSPECTIVE JUROR:  I WENT TO ████████COLLEGE.

20            THE COURT:  I'M A GRADUATE OF PT. LOMA COLLEGE.

21    PROBABLY A LITTLE BEFORE YOU.

22            PROSPECTIVE JUROR:  I DON'T THINK SO.

23            I HAVE ██████ADULT CHILDREN.  MY ████████WORKS FOR

24    ████████████████████████████████ SHE'S IN ████████████

25    ████████.  ONE ████WORKS WITH ████████████ AND I HAVE A ████WHO

COMPUTER-AIDED TRANSCRIPTION

79

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 47 of 69

46

1    WORKS FOR ███████████████

2              THE COURT:  IS HE AN ████████████████████████

3              PROSPECTIVE JUROR:  ███████████    HE WORKS FOR THE

4    ████████████████

5              I'VE BEEN ON TWO TRIALS:  ONE WAS A MUNICIPAL COURT

6    TRIAL.  IT WASN'T CRIMINAL.  MONEY WAS INVOLVED.  AND THE

7    OTHER ONE WAS A CRIMINAL.  AND THE FIRST ONE WAS IN THE '80'S

8    SOMETIME.  THE LAST ONE WAS PROBABLY TEN YEARS AGO.  AND YES,

9    I CAN BE FAIR.

10             THE COURT:  HOW'S THE ██████████ GOING.

11             PROSPECTIVE JUROR:  VERY WELL.

12             THE COURT:  WHEN I WAS STILL A COLLEGE STUDENT, WE

13   HAD EMBARKED UPON A SPEAKERS PROGRAM.  I GOT TOGETHER WITH

14   █████████ AT █████████████  AND WE MADE AN ARRANGEMENT

15   WHERE THE SPEAKERS WOULD COME.  AND THESE WERE ███████████████

16   THE ████████ DRAWS IN PEOPLE OF STATURE THAT HAVE SOMETHING

17   IMPORTANT TO SAY.

18             WE USED TO HAVE THEM STAY AT THE ███████████ AND THE

19   ████████ SAID THAT "IF THEY'LL POSE FOR A PICTURE HERE AT THE

20   ███████ THEN ALL THE ACCOMMODATIONS ARE ON US," WHICH WAS A

21   GREAT ACCOMMODATION FOR OUR LITTLE TINY SPEAKERS PROGRAM.  BUT

22   THEY WOULD SPEAK AT THE COLLEGE THE NIGHT BEFORE BACK IN 1976,

23   AND THEN THEY'D GO TO ███████ THE NEXT DAY.

24             SO I HAVE FOND MEMORIES OF THAT.  PLEASE GIVE ████

25   ████████ MY REGARDS.

COMPUTER-AIDED TRANSCRIPTION

80

47

1        PROSPECTIVE JUROR:  I WILL.

2        THE COURT:  ██████████████

3        PROSPECTIVE JUROR:  I'M ████████████  I LIVE IN

4    ████████████████  ████ EARS IN THE NAVY AS A NAVAL AVIATOR.

5    28 YEARS IN INDUSTRY, IN R&D, DEFENSE INDUSTRY.  I'M MARRIED.

6    MY WIFE IS ██████████  SHE DID ████████████████ ADULT

7    CHILDREN, ALL OVER 40: ██████ OF THEM PRODUCED CHILDREN FOR A

8    LIVING, I THINK.  MY DAUGHTER IS ██ IN ██████████  I HAVE A ████

9    UP IN THE BAY AREA WHO'S IN ████████████████ AND ONE ██████

10   ████ IN ██████ WHO DOES █████████████████ FOR ████████████

11   ████████ ONE'S A █████████████████ WHO ████████████ AT

12   ████████████ AND █████████████████ THE ███████████████████ I

13   HAVE BEEN SELECTED AND BOUNCED OFF A NUMBER OF FEDERAL AND

14   STATE JURIES, BUT I DID SERVE ON ONE CIVIL CASE IN THE

15   SUPERIOR COURT.  I UNDERSTAND THE DISTINCTION BETWEEN THAT

16   WORK AND THE GRAND JURY.

17       THE COURT:  THE BASIS FOR BOUNCING YOU, WERE YOU PRO

18   PROSECUTION OR PRO DEFENSE?

19       PROSPECTIVE JUROR:  I THINK HALF THE TIME IT WAS

20   JUST THE MILITARY EXPERIENCE.  THE STORY IS IN COURT MARTIAL,

21   IF IT WEREN'T TRUE, THEY WOULDN'T HAVE CHARGED THEM TYPE OF

22   THING.

23       THE COURT:  YOU HEARD ████████████ HE ADHERED TO THAT

24   KIND OF BELIEF IN THIS CIVILIAN PROCEEDING.

25       YOU'RE NOT OF THAT FRAME OF MIND?

COMPUTER-AIDED TRANSCRIPTION

48

1     PROSPECTIVE JUROR:  NO.

2     THE COURT:  IT'S UNFAIR TO ASK YOU WHY YOU WERE

3 BOUNCED.  I'D HAVE TO ASK THE LAWYERS.  WHEN WE PICK TRIAL

4 JURIES A LOT OF TIME, SOME PEOPLE -- I TALK TO PEOPLE LIKE MY

5 NEIGHBORS AND ALL.  THEY SAY, "THEY BOUNCED ME OFF."  THEY'RE

6 UPSET ABOUT IT.  AND I TRY TO ASSUAGE THEM BY SAYING, "LOOK,

7 LET ME TELL YOU SOMETHING."  AND THIS IS IN A TRIAL JURY

8 CONTEXT.  "IT REALLY SAYS MORE ABOUT THE LAWYER THAN IT DOES

9 ABOUT YOU.  BECAUSE LAWYERS HAVE THESE IDEAS OF WHO THEY WANT

10 ON A JURY OR WHAT THE COMPOSITION OF THE JURY OUGHT TO BE."

11     EVA'S HEARD ME TELL THIS STORY BEFORE.  WHEN I WAS A

12 YOUNG LAWYER TRYING CASES JUST STARTING OUT, MY RULE OF THUMB

13 AS TO THE TEN CHALLENGES I HAD WAS NO ONE YOUNGER THAN I AM.

14 IF THEY'RE YOUNGER THAN I AM, THEY HAVEN'T HAD TO MAKE HARD

15 DECISIONS.  THEY DON'T HAVE A SUFFICIENT STAKE IN THE

16 COMMUNITY.  I COULD RATTLE OFF THREE OR FOUR JUSTIFICATIONS

17 FOR IT.

18     THE TRUTH OF THE MATTER IS I PROBABLY BOUNCED A LOT

19 OF PEOPLE THAT WOULD HAVE BEEN FINE.  IT REALLY ILLUSTRATES

20 THE POINT THAT IT SAYS MORE ABOUT THE LAWYER THAN IT SAYS

21 ABOUT THE PERSON BEING BOUNCED.

22     THANK YOU, ██████████    I APPRECIATE YOUR ANSWERS.

23 ██████████████

24     PROSPECTIVE JUROR:  MY NAME IS ██████████████ I

25 LIVE IN ████████████████I'M A PRODUCTION SCHEDULER.  I'M

COMPUTER-AIDED TRANSCRIPTION

82

49

1    MARRIED. MY WIFE ████████████████          I HAVE ████

2    BOYS FROM ██ TO ██

3              THE COURT:  YOU POOR SOUL.

4              PROSPECTIVE JUROR:  I HAVE NO TRIAL EXPERIENCE, AND

5    I COULD BE FAIR.

6              THE COURT:  MY GOODNESS.

7              WHAT'S THE AGE SPAN BETWEEN YOUR BOYS?

8              PROSPECTIVE JUROR:  FROM ██ TO ██  THEY KEEP ME VERY

9    BUSY.

10             THE COURT:  I RAISED TWO THAT WERE TWO YEARS APART,

11   AND THAT KEPT ME RUNNING ALL THE TIME.

12             YOU HAVE ████████ HUH?

13             PROSPECTIVE JUROR:  WE TRIED FOR A GIRL, AND IT

14   NEVER WORKED.

15             THE COURT:  DO YOU HAVE BROTHERS AND SISTERS?

16             PROSPECTIVE JUROR:  I HAVE ANOTHER BROTHER AND TWO

17   SISTERS.

18             THE COURT:  HIGH INCIDENCE OF BOYS IN YOUR FAMILY?

19             PROSPECTIVE JUROR:  VERY MUCH.

20             THE COURT:  DID YOUR MOTHER HAVE A LOT OF BOYS, TOO?

21             PROSPECTIVE JUROR:  MY SISTER HAS ████████ BUT MY

22   COUSINS, IT'S LIKE ██ BOYS AND ██ GIRLS.

23             THE COURT:  IT MUST BE SOMETHING IN ONE'S GENETIC

24   CODE.  WE HAVE TO ASK THE DOCTOR, THE GENETICIST, ABOUT IT.

25   MY FAMILY TREE RUNS THE SAME WAY, ALMOST ALL BOYS.  ALL OF US

COMPUTER-AIDED TRANSCRIPTION

50

1    KNOCK OUT BOYS.  I DIDN'T KEEP GOING.

2              PROSPECTIVE JUROR:  I'M DONE.

3              THE COURT:  THANK YOU, ▇▇▇▇▇▇▇

4    ▇▇▇▇▇▇▇▇▇

5              PROSPECTIVE JUROR:  MY NAME IS ▇▇▇▇▇▇▇  I LIVE

6    IN ▇▇▇▇▇▇▇▇▇  I'M A REGISTERED NURSE.  I'M MARRIED.

7    WE HAVE ▇▇▇ ADULT CHILDREN.  MY HUSBAND WORKS FOR ▇▇▇▇▇

8    ▇▇▇▇▇▇▇ HE'S A ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

9    ▇▇▇▇▇▇▇▇▇▇ ONE ▇▇ IS A ▇▇▇▇▇▇▇▇ WHO WORKS

10   FOR ▇▇▇  A ▇▇▇▇ IS ▇▇▇▇▇▇▇ AND ANOTHER ▇▇ IS

11   AN ▇▇▇▇▇▇▇▇▇▇▇      AND ONE ▇▇▇▇▇ IS A ▇▇▇▇.

12   ▇▇▇▇▇▇▇▇  I HAVE NO EXPERIENCE AS A JUROR.  AND I THINK I

13   CAN BE FAIR.

14             THE COURT:  ▇▇▇▇▇▇▇  YOU'RE GOING TO HEAR CASES,

15   I'M SURE, INVOLVING AGENTS ▇▇▇▇▇▇

16             YOU SAID YOUR OTHER SON IS A ▇▇▇▇▇▇

17             PROSPECTIVE JUROR:  HE'S AN ▇▇▇▇▇▇▇▇

18             THE COURT:  ONE'S AN ▇▇▇▇▇▇▇ AND THE OTHER

19   IS.

20             PROSPECTIVE JUROR:  A ▇▇▇▇▇▇▇

21             THE COURT:  I THOUGHT YOU HAD TWO ▇▇▇▇▇

22   ▇▇▇▇▇▇▇

23             JUST ONE?

24             PROSPECTIVE JUROR:  MY HUSBAND WORKS FOR ▇▇▇ ND

25   ▇▇▇▇▇▇▇

COMPUTER-AIDED TRANSCRIPTION

51

1          THE COURT:  YOU'RE GOING TO BE HEARING CASES FROM

2   ████████ AND ██████████████████

3          CAN YOU BE OBJECTIVE ABOUT THOSE CASES?  CAN YOU

4   LISTEN TO THE FACTS AND MAKE A STAND-ALONE DECISION ON EACH

5   CASE WITHOUT INSTINCTIVELY SAYING, "WELL, THEY WORK FOR THE

6   ██████████ AS MY SON OR MY HUSBAND."

7          PROSPECTIVE JUROR:  I THINK I CAN BE FAIR.

8          THE COURT:  THAT WOULD BE YOUR OBLIGATION.  YOU'RE

9   NOT AUTOMATICALLY DISQUALIFIED.  AS YOU HEARD ME SAY, WE HAD A

10  SERGEANT ON THE SHERIFF'S DEPARTMENT THAT WAS SERVING ON ONE

11  OF OUR GRAND JURIES.  SO IT'S NOT AUTOMATICALLY DISQUALIFYING.

12  BUT YOU HAVE TO BE ABLE TO ASSURE ME THAT "I'LL LOOK AT THESE

13  CASES INDEPENDENTLY.  I UNDERSTAND THE IMPORTANCE OF ACTING AS

14  A BUFFER BETWEEN THE GOVERNMENT'S POWER TO CHARGE SOMEONE WITH

15  A CRIME AND THEN BRINGING THEM TO TRIAL.  AND I'LL FULFILL

16  THAT FUNCTION CONSCIENTIOUSLY."

17         YOU CAN DO THAT?

18         PROSPECTIVE JUROR:  I CAN DO THAT.

19         THE COURT:  THANK YOU.

20         ████████████████

21         PROSPECTIVE JUROR:  MY NAME IS ██████████████   I LIVE

22  IN ████████████████████████   I'M A TRAFFIC ENGINEER WITH THE

23  CITY OF ██████████

24         THE COURT:  MAYBE YOU CAN GET THOSE TELEPHONE POLES

25  DOWN.  I HAVE A BIG POLE RIGHT ON THE LEFT SIDE.  I JUST READ

COMPUTER-AIDED TRANSCRIPTION

85

52

1    IN THE PAPER THAT WE'RE GOING TO PAY MORE FOR OUR TELEPHONE

2    BILLS SO THAT THEY CAN TAKE ALL THESE POLES DOWN, AND I

3    EXPECTED TO HEAR THAT CHAINSAWS THE NEXT MORNING.  YOU CAN BET

4    WHEN THE NEXT BILL COMES, I'M GOING TO HAVE THE ASSESSMENT.

5           YOU DON'T KNOW ANYTHING ABOUT THAT?

6           PROSPECTIVE JUROR:  THE PEOPLE IN THE UTILITIES

7    PROGRAM KNOW.

8           I'M NOT MARRIED.  I DON'T HAVE ANY CHILDREN.  I WAS

9    JUST ON A CRIMINAL CASE IN THE SUPERIOR COURT JUST LAST MONTH.

10   SO I'M GETTING HIT AGAIN HERE.  AND I UNDERSTAND THE

11   DIFFERENCE BETWEEN TRIAL AND --

12          THE COURT:  I WAS GOING TO SAY, YOU MUST BE

13   REPORTING EARLY AND OFTEN IF YOU'VE BEEN CALLED FOR BOTH STATE

14   AND FEDERAL SERVICE AT THE SAME TIME.

15          PROSPECTIVE JUROR:  I CAN BE FAIR.

16          THE COURT:  THANK YOU, ████████████

17   ████████████████

18          PROSPECTIVE JUROR:  MY NAME IS ██████████    I LIVE

19   IN ██████████  I'M AN INVESTIGATOR AND HOUSING COORDINATOR

20   FOR THE ████████████████████████████████████████  I'M

21   MARRIED FOR 12 YEARS.  MY HUSBAND IS ████████████████    WE

22   DON'T HAVE CHILDREN BY CHOICE.  I DON'T HAVE ANY EXPERIENCE IN

23   THE COURT SYSTEM.  I CAN BE FAIR.  IT WOULD BE AN HONOR,

24   SIR.

25          THE COURT:  THANK YOU.  I APPRECIATE YOUR ANSWERS.

COMPUTER-AIDED TRANSCRIPTION



Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 54 of 69

53

1

2      PROSPECTIVE JUROR:  MY NAME IS ███████████  I

3  LIVE IN ██████████ I'M A CHILDCARE WORKER/MENTAL HEALTH

4  WORKER WORKING WITH ABUSED -- PHYSICALLY AND SEXUALLY ABUSED

5  CHILDREN.  I'M NOT MARRIED.  I DON'T HAVE ANY KIDS.  I DON'T

6  HAVE ANY EXPERIENCE AS A TRIAL JUROR.  YES, I CAN BE FAIR.

7      THE COURT:  THANK YOU, ███████████

8

9      PROSPECTIVE JUROR:  MY NAME IS ███████  I LIVE IN

10  ████████ CALIFORNIA.  THAT'S ████████

11      THE COURT:  WELCOME.

12      PROSPECTIVE JUROR:  I'M AN AIRCRAFT MECHANIC FOR

13  ████████████████████ I'M MARRIED.  MY WIFE IS A

14  ████████████████

15      THE COURT:  DO YOU HAVE ANY LAW ENFORCEMENT FUNCTION

16  AT ALL?

17      PROSPECTIVE JUROR:  I'M ████████

18  I HAVE TWO ADULT BOYS.  AND I HAVE NO EXPERIENCE IN

19  FEDERAL COURT.  AND I CAN BE FAIR.

20      THE COURT:  YOU CAN EVALUATE THESE CASES

21  INDEPENDENTLY?  YOU'RE ACTING AS A CITIZEN AND NOT SO MUCH AS

22  A ████████████████████ DO YOU UNDERSTAND THAT?

23      PROSPECTIVE JUROR:  YES.

24      THE COURT:  ████████ IS THE ████████

25  CALIFORNIA?

COMPUTER-AIDED TRANSCRIPTION

87

54

1          PROSPECTIVE JUROR:  THAT'S ABOUT IT.

2          THE COURT:  MY SON JUST WENT OVER TO THE ▬▬▬▬▬

3  ▬▬▬▬▬▬▬▬▬▬▬  WE DROVE HIM IN THE SUMMER.  I WANTED

4  TO GET OVER THERE QUICKLY.  SOMEBODY WARNED ME AFTERWARDS THAT

5  THEY'RE A VERY AGGRESSIVE ▬▬▬▬▬ HIGHWAY PATROL.

6          PROSPECTIVE JUROR:  THEY'RE OUT THERE.

7          THE COURT:  CAN I USE YOUR NAME IN CASE I GET

8  STOPPED?

9          THANK YOU, ▬▬▬▬▬▬▬

10  ▬▬▬▬▬▬▬

11          PROSPECTIVE JUROR:  MY NAME IS ▬▬▬▬▬▬ I LIVE

12  IN ▬▬▬▬▬▬▬  I DO CONVENTION SERVICES AT THE ▬▬▬ IN

13  ▬▬▬▬▬ I'M NOT MARRIED.  I HAVE NO KIDS.  I DON'T HAVE ANY

14  EXPERIENCE AS A TRIAL JUROR.  AND I COULD BE FAIR.

15          THE COURT:  THANK YOU.  WE'RE GLAD TO HAVE YOU.

16  ▬▬▬▬▬▬

17          PROSPECTIVE JUROR:  MY NAME IS ▬▬▬▬▬ I LIVE IN

18  ▬▬▬▬▬▬ MY WIFE AND I ARE BOTH RETIRED.  WE HAVE ▬▬▬▬

19  ADULT CHILDREN.

20          THE COURT:  WHAT WAS YOUR WORK BEFORE YOU RETIRED?

21          PROSPECTIVE JUROR:  I WAS ▬▬ YEARS AN EDUCATOR.

22          AND WE HAVE NINE GRANDCHILDREN.  OUR IMMEDIATE ADULT

23  CHILDREN, ONE IS A SUCCESSFUL ▬▬▬▬▬▬▬▬ ONE IS A

24  SUCCESSFUL ▬▬▬▬ MY ▬▬▬▬▬▬▬▬▬▬▬ OF

25  ▬▬▬▬▬▬ IN ▬▬▬▬ AND PART OF ▬▬▬▬ AND

COMPUTER-AIDED TRANSCRIPTION

88

55

1    UNFORTUNATELY, MY OTHER SON HAS ███████████ HE HAS BEEN

2    ███████████ FOR SEVERAL YEARS.  I'VE HAD EXPERIENCE ON ONE

3    TRIAL.  IT WAS A CRIMINAL CASE AT THE VISTA COURTHOUSE.  AND I

4    CERTAINLY CAN BE FAIR.

5         THE COURT:  THANK YOU.

6         ███████████ GOOD AFTERNOON.

7         PROSPECTIVE JUROR:  MY NAME IS ███████████ I LIVE IN

8    ███████████ I'M MARRIED.  I HAVE ███████████ CHILDREN.  ONE IS A

9    ███████████ MY WIFE IS A ███████████ IN ███████████

10   ███████████ MY SON IS A ███████████ AT ███████████

11   ███████████ I'M A CONTRACT OFFICER FOR THE NAVY WORKING AT THE

12   ███████████ AT ███████████ AND I'VE BEEN CALLED

13   THREE TIMES.  I'VE NEVER BEEN IMPANELED ON A JURY.  I'VE

14   STATED MY PRO POLICE VIEWS.

15        THE COURT:  YOU CAN SERVE IN THIS FUNCTION AS A

16   GRAND JUROR OBJECTIVELY, LOOK AT THE EVIDENCE, AND ANSWER THE

17   QUESTIONS THAT I'VE REPEATED NOW SEVERAL TIMES:  DO I HAVE A

18   REASONABLE BELIEF THAT A CRIME WAS COMMITTED?  DO I HAVE A

19   REASONABLE BELIEF THAT THE PERSON THEY WANT ME TO INDICT

20   EITHER COMMITTED THE CRIME OR ASSISTED WITH IT?

21        PROSPECTIVE JUROR:  YES, SIR.

22        THE COURT:  THANK YOU, ███████████

23   ███████████

24        PROSPECTIVE JUROR:  ███████████.  I LIVE IN ███████████

25   ███████████

COMPUTER-AIDED TRANSCRIPTION

89

56

1          THE COURT:  HOW IS THAT?

2          PROSPECTIVE JUROR:  I LOVE BEING �OOO▓  I WOULD

3    HAVE WALKED TODAY, EXCEPT I THINK IT'S GOING TO RAIN.

4          I'M A CPA.  I'M MARRIED.  NO CHILDREN.  AND I HAVE

5    NEVER SERVED ON A JURY.  AND I CAN BE FAIR.

6          THE COURT:  THANK YOU ▓▓▓▓▓

7    ▓▓▓▓▓

8          PROSPECTIVE JUROR:  ▓▓▓▓▓▓▓  I LIVE IN

9    ▓▓▓▓▓  I DO NOT WORK.  I'VE BEEN MARRIED FOR

10   ▓ YEARS.  MY HUSBAND IS RETIRED FROM THE ▓▓▓▓▓▓

11   BUT NOW IS A ▓▓▓▓▓▓▓▓▓

12   ▓▓▓▓▓

13         THE COURT:  WHAT WAS HIS JOB WITH THE ▓▓▓▓▓

14   ▓▓▓

15         PROSPECTIVE JUROR:  HE WAS A ▓▓▓▓▓▓▓

16   ▓▓▓  BUT ALWAYS WORKED IN ▓▓▓▓▓▓▓

17   ▓▓▓▓▓▓    ▓▓▓▓▓▓▓

18         THE COURT:  WHAT DOES HE DO NOW AS A ▓▓▓▓ WITH

19   THE ▓▓▓▓▓▓

20         PROSPECTIVE JUROR:  HE'S A ▓▓▓▓ EMPLOYEE  HE

21   WORKS IN ▓▓▓▓▓  AND THEN, FOR EXAMPLE, ▓▓▓ HE'LL

22   BE WORKING ▓▓▓▓ AT THE ▓▓▓▓▓

23         THE COURT:  LET'S HOPE THEY WIN THAT GAME.

24         PROSPECTIVE JUROR:  YES.

25         THE COURT:  I'M A LITTLE WORRIED ABOUT IT.  I WAS

COMPUTER-AIDED TRANSCRIPTION

57

1   TORN WITH THE KANSAS CITY CHIEFS.  I WAS HOPING -- I THOUGHT

2   THEY WOULD BE THE EASIER TEAM FOR THE CHARGERS TO BEAT.

3           PROSPECTIVE JUROR:  WE HAVE ▓▓▓▓ADULT ▓▓▓▓▓▓AND

4   ▓▓▓▓ GRANDCHILDREN.  OUR ▓▓▓▓▓▓▓ IS A ▓▓▓AND ▓▓▓▓▓▓

5   ▓▓▓▓▓▓ FOR ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6   ▓▓▓▓▓.  OUR Y▓▓▓▓▓▓▓▓▓▓ IS A ▓▓▓▓▓▓▓▓▓▓▓▓ FOR

7   ▓▓▓▓▓COMPANY IN ▓▓▓▓▓▓▓▓▓▓  I'VE BEEN CALLED, BUT NEVER

8   SERVED ON A JURY.  YES, I COULD BE FAIR.

9           THE COURT:  YOU SAY THAT MINDFUL OF EVERYTHING YOU

10  LEARNED ON THE TAPE AND ALL THE QUESTIONS AND ANSWERS THAT

11  HAVE BEEN GIVEN SO FAR?

12          PROSPECTIVE JUROR:  YES.

13          THE COURT: ▓▓▓▓▓▓▓▓▓▓

14          PROSPECTIVE JUROR:  MY NAME IS ▓▓▓▓▓▓▓  I LIVE

15  IN THE ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  I'M UNEMPLOYED AT THE CURRENT

16  TIME.  I'M A HOUSEWIFE.  I WAS A BOOKKEEPER FOR SEVERAL YEARS.

17  I'VE BEEN MARRIED FOR 19.  MY SPOUSE IS A ▓▓▓▓▓▓▓▓▓▓▓

18  ▓▓▓▓▓▓▓  WE HAVE ▓▓▓ ADULT ▓▓▓, BOTH WHO LIVE IN ▓▓▓▓▓

19  ONE WORKS IN ▓▓▓▓▓ THE OTHER ▓▓▓▓▓▓▓▓▓▓▓▓▓▓  I

20  THINK I WAS CALLED FOR TRIAL JURY OVER AT SUPERIOR COURT ABOUT

21  15 YEARS AGO, BUT I DON'T REMEMBER -- I DON'T THINK I WAS

22  IMPANELED, AT LEAST NOT THAT I REMEMBER.  I LIKE THINGS TO

23  BALANCE OUT.  I LIKE TO FIND HOW THINGS WORK.  THAT'S WHY I

24  ENJOY WORKING WITH NUMBERS.  I GREW UP ABOUT 20 MINUTES AWAY

25  FROM GILLETTE STADIUM.

COMPUTER-AIDED TRANSCRIPTION

58

1    THE COURT:  YOU'RE WORRIED, TOO.

2

3    PROSPECTIVE JUROR:  MY NAME IS ████████  I LIVE

4    IN ██████████NOW.  I JUST MOVED DOWN THERE FROM

5    ███████  I WORK FROM HOME AS A MORTGAGE BROKER, AND I'VE

6    DONE THAT FOR ████YEARS.  NO KIDS.  NEVER BEEN MARRIED.  I HAVE

7    BEEN CALLED FOR JURY DUTY, BUT NEVER PULLED UP FROM MAIN

8    SELECTION.  AND YES, I CAN BE FAIR.

9    THE COURT:  THANK YOU.

10

11    PROSPECTIVE JUROR: ████████████  I LIVE IN

12    ██████  I DON'T WORK.  I'M MARRIED.  MY HUSBAND WORKS FOR

13    ██████████  I HAVE ████KIDS.  NO EXPERIENCE.  AND

14    I CAN BE FAIR.

15    THE COURT:  WHAT DOES HE DO FOR THE ██████

16    PROSPECTIVE JUROR:  HE'S ████████████

17    THE COURT:  WAS HE A ██████

18    PROSPECTIVE JUROR:  NO.  HE ████████████

19    HE'S ██████ FOR A MILLION YEARS.  HE TRAVELS.  WE LIVE ████

20    AND HE JUST TRAVELS.

21    THE COURT:  WHERE DO THEY DO ████████████

22    PROSPECTIVE JUROR: ████████

23    THE COURT:  YOU JOIN HIM SOMETIMES FOR ████████

24    ████████████

25    PROSPECTIVE JUROR:  YES.

COMPUTER-AIDED TRANSCRIPTION

92

59

1          THE COURT:  THANK YOU.

2          ████████████████

3          PROSPECTIVE JUROR:  MY NAME IS ████████████

4    I LIVE ██████████ I WORK AT A CHILDREN'S BOOK STORE IN

5    ████████ I'M MARRIED.  MY HUSBAND WORKS ████████ MY ████

6    ADULT CHILDREN, MY OLDEST ████ GRADUATED FROM ████████ AS

7    A ████████ HE'S A ████████████████

8    ████████████  MY SECOND ████ GRADUATED FROM ████████ HE'S

9    AN ████████████████ I'VE BEEN CALLED TO JURY DUTY, BUT

10   NEVER IMPANELED.  I CAN BE FAIR.

11         THE COURT:  LET ME TEST MY MEMORY WITH YOU.

12         "WHERE THE WILD THINGS ARE."

13         PROSPECTIVE JUROR:  ████████████

14         THE COURT:  IS THAT BOOK STILL VERY POPULAR?

15         PROSPECTIVE JUROR:  VERY.  I CAN'T KEEP IT ON THE

16   SHELF.  THAT'S WHAT EVERYBODY WANTS FOR A BABY GIFT.

17         THE COURT:  ████████████ DO YOU USE THAT BOOK WITH

18   YOUR BOYS?

19         PROSPECTIVE JUROR:  YES.

20         THE COURT:  THANK YOU.

21         ████████████

22         PROSPECTIVE JUROR:  MY NAME IS ████████████ I LIVE

23   IN ████████████████ I'M A TEACHER AND A COACH

24   FOR ADOLESCENT KIDS; HEALTH, P.E., LA CROSSE.  I'M MARRIED.

25   MY SPOUSE IS ████████████████.  HE'S GONE BACK TO

COMPUTER-AIDED TRANSCRIPTION

93

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 61 of 69

60

1   SCHOOL.  HE TINKERS IN THE ██████I DON'T HAVE ADULT

2   CHILDREN.  I HAVE HAD EXPERIENCE IN CRIMINAL AND CIVIL CASES.

3          THE COURT:  HOW MUCH EXPERIENCE?  YOU'VE SAT ON BOTH

4   CRIMINAL AND CIVIL JURIES?

5          PROSPECTIVE JUROR:  YES, SIR.

6          THE COURT:  WHEN WAS YOUR MOST RECENT JURY

7   EXPERIENCE?

8          PROSPECTIVE JUROR:  APPROXIMATELY FIVE YEARS AGO, A

9   CIVIL CASE.

10         THE COURT:  LET ME PUT TO YOU THE QUESTION THAT I

11  PUT TO MANY WHO'VE HAD BOTH TYPES OF JURY EXPERIENCE.

12         YOU UNDERSTAND THE DISTINCTION HERE THAT THIS GRAND

13  JURY WOULD PERFORM A DIFFERENT FUNCTION FROM THE ONE --

14         PROSPECTIVE JUROR:  I UNDERSTAND THAT.

15         THE COURT:  AND ██████I WANT TO MAKE SURE I GOT

16  YOUR LAST ANSWER.

17         YOU CAN BE FAIR?

18         PROSPECTIVE JUROR:  I CAN BE FAIR.

19         THE COURT:  THANK YOU.

20         ██████

21         PROSPECTIVE JUROR:  MY NAME IS ██████ I LIVE

22  IN ██████ I'M A CATHOLIC DEACON AT A CHURCH ██████

23  ██████AND I'M ALSO PRESIDENT OF A COMPANY IN ██████THAT

24  MAKES ██████ FOR ██████I'VE BEEN MARRIED FOR

25  ██████EARS.  MY WIFE IS A ██████THE ██████

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 62 of 69

61

1  WORK.  I HAVE ▮▮▮ ADULT CHILDREN AND TWO GRANDCHILDREN.  MY

2  ▮▮▮▮▮ IS A ▮▮▮▮▮▮▮ FOR ▮▮▮▮▮ THE ▮▮▮▮▮    MY

3  ▮ DOES ▮▮▮▮▮▮▮ ON ▮▮▮▮ AT ▮▮▮▮▮▮ AT

4  ▮▮▮▮▮    AND HE'S PRESENTLY ▮▮▮▮▮▮ AS WE DISCUSSED.

5  TEN YEARS AGO, I WAS A JUROR ON A CIVIL CASE.  AND I HAVE TO

6  SAY I'M SOFT ON IMMIGRATION BECAUSE I'VE DONE VOLUNTEER WORK

7  WITH IMMIGRANTS IN THE FIELD.  BUT I DO NOT THINK THAT WOULD

8  STAND IN MY WAY OF MAKING FAIR AND OBJECTIVE DECISIONS.

9      THE COURT:  AS YOU HEARD ME EXPLAIN EARLIER TO ONE

10  OF THE PROSPECTIVE GRAND JURORS, WE'RE NOT ABOUT TRYING TO

11  CHANGE PEOPLE'S PHILOSOPHIES OR ATTITUDES HERE.  THAT'S NOT MY

12  BUSINESS.  BUT WHAT I HAVE TO INSIST ON IS THAT YOU FOLLOW THE

13  LAW THAT'S GIVEN TO US BY UNITED STATES CONGRESS.  WE ENFORCE

14  THE FEDERAL LAWS HERE.

15      I THINK I CONFESSED ALOUD THAT THERE'S SOME OF THE

16  LAWS THAT I DISAGREE WITH THAT I HAVE TO ENFORCE.  SO IT'S NOT

17  ABOUT ME OR MY PHILOSOPHIES.  IT'S ABOUT PERFORMING A

18  CONSCIENTIOUS FUNCTION HERE AND SEEING IF THE FACTS SUPPORT AN

19  OUTCOME ONE WAY OR THE OTHER.

20      CAN YOU DO THAT?

21      PROSPECTIVE JUROR:  I DON'T THINK I WOULD HAVE ANY

22  PROBLEM.

23      THE COURT:  THANK YOU.

24  ▮▮▮▮▮▮▮▮▮▮

25      PROSPECTIVE JUROR:  MY NAME IS ▮▮▮▮▮▮▮  I

COMPUTER-AIDED TRANSCRIPTION

95

62

1    LIVE IN [redacted]    I HAVE WORKED AS A CHEMICAL ENGINEER, AS A

2    LAWYER, AS A SOCIAL WORKER, AND AS A LAW SCHOOL PROFESSOR.

3          THE COURT:  WHAT WAS DISCIPLINE IN THE LAW?  WERE

4    YOU AN INTELLECTUAL PROPERTY LAWYER?

5          PROSPECTIVE JUROR:  NO.  LABOR LAW AND PERSUASIVE

6    WRITING AT [redacted]

7          THE COURT:  WHEN YOU PRACTICED, WHERE DID YOU

8    PRACTICE?

9          PROSPECTIVE JUROR:  I WAS WITH CORPORATIONS IN

10   NEW YORK; [redacted] WHO BUILT THE [redacted]

11   [redacted] THAT I WAS INVOLVED IN.  I WENT FROM THAT TO [redacted] WHO

12   BUILT THE [redacted] AND I WENT IN-HOUSE WITH [redacted]

13   [redacted] BUT I'VE ALSO BEEN WITH LARGE LAW FIRMS IN [redacted]

14   AND [redacted]

15         THE COURT:  INTERESTING AND VARIED LEGAL CAREER,

16   HUH?

17         PROSPECTIVE JUROR:  YES.

18         I'VE BEEN MARRIED FOR [redacted] YEARS TWICE AND NOT

19   DIVORCED.  THAT ALSO ADDS UP TO [redacted] HAPPY YEARS.  MY CURRENT

20   WIFE WORKS FOR THE [redacted] SHE [redacted]

21   [redacted]

22   INCIDENTALLY, SHE WAS [redacted] WHO [redacted]

23   [redacted] FROM HIS [redacted]

24   [redacted]

25         THE COURT:  HER FIRST HUSBAND?

COMPUTER-AIDED TRANSCRIPTION

96

63

1          PROSPECTIVE JUROR:  YES.

2          THE COURT:  INTERESTING.

3          MR. ██████████ IS TALKING ABOUT THE CASE THAT

4   PROBABLY ALL OF US KNOW FROM TV, THE MIRANDA DECISION, WHERE

5   YOU HAVE TO TELL THE SUSPECTS BEFORE YOU QUESTION THEM "YOU

6   HAVE A RIGHT TO REMAIN SILENT.  ANYTHING YOU SAY CAN AND WILL

7   BE HELD AGAINST YOU IN A COURT OF LAW."

8          HE WAS THE LAWYER FOR ERNESTO MIRANDA, HUH?

9          PROSPECTIVE JUROR:  THAT WAS AN ACLU CASE.

10         WHEN ████████████████████████████████████████████

11   ██████████████████████████████████████████████

12         THE COURT:  HE GOT KILLED IN A BAR FIGHT IN PHOENIX

13   YEARS AFTER HE WAS VINDICATED.

14         PROSPECTIVE JUROR:  THAT'S RIGHT.  WHEN THE POLICE

15   CAME TO ARREST THE SUSPECT, THEY KNEW THEY HAD TO READ

16   SOMETHING TO HIM.  THEY WEREN'T SURE WHAT.  AND THE OTHER

17   POLICEMAN WHO WAS LOOKING THROUGH THE VICTIM'S -- MIRANDA'S

18   WALLET SAID, "LOOK HERE.  I FOUND SOMETHING.  I THINK THIS IS

19   IT."  SO THE GUY WHO KILLED MIRANDA WAS READ HIS MIRANDA

20   RIGHTS FROM WHAT WAS IN MIRANDA'S WALLET.

21         THE COURT:  AMONG THE MEMORABILIA THAT ████████████,

22   DID HE ACTUALLY AUTOGRAPH ANY OF THOSE CARDS?

23         PROSPECTIVE JUROR:  I DIDN'T GO THROUGH IT.  IT WAS

24   BOXES AND BOXES OF PAPERS.

25         THE COURT:  I WOULD IMAGINE IN THIS DAY, THAT WOULD

COMPUTER-AIDED TRANSCRIPTION

97

64

1    BE SOMETHING THAT COULD FETCH MONEY ON EBAY.

2              PROSPECTIVE JUROR:  THAT WAS PRE-EBAY.

3              I HAD ▮▮▮▮ NATURAL CHILDREN, TWO OF WHOM ARE ALIVE.

4    ONE IS A ▮▮▮▮▮▮▮ AND THE OTHER HAS A ▮▮▮▮▮▮▮▮▮▮

5    ONE OF MY CHILDREN WHO DIED WAS A LITIGATION ATTORNEY IN

6    ▮▮▮▮▮▮▮▮ I HAVE ▮▮ STEPCHILDREN.  ONE IS A CRIMINAL

7    DEFENSE LAWYER IN ▮▮▮▮▮▮▮ COUNTY, AND THE OTHER IS AN

8    ▮▮▮▮▮▮▮▮ I WAS SEATED AS A CRIMINAL JUROR IN SUPERIOR

9    COURT.  WE ACQUITTED.  AND I CERTAINLY CAN BE FAIR.

10             THE COURT:  THANK YOU, ▮▮▮▮▮▮▮▮ I APPRECIATE

11   YOUR ANSWERS.

12             ▮▮▮▮▮▮▮▮▮▮

13             PROSPECTIVE JUROR:  MY NAME IS ▮▮▮▮▮▮▮▮▮.  I GO

14   BY ▮▮▮▮.  AFTER A TWO-YEAR MISSION FOR MY CHURCH, I WAS

15   FORTUNATE TO MARRY MY CHILDHOOD SWEETHEART.  WE'VE BEEN

16   MARRIED FOR ▮▮ YEARS.  SHE'S A DOMESTIC GODDESS.  WE HAVE ▮

17   CHILDREN.  WE HAVE ONE ▮▮ OUR ▮▮ OLDER ARE MARRIED.  OUR

18   ▮▮▮▮▮▮ IS A STUDENT.  OUR OTHER CHILDREN, ONE IS IN

19   ▮▮▮▮▮▮▮▮▮▮▮ THE OTHER IS THE ▮▮▮▮▮▮▮▮ WITH

20   ▮▮▮▮▮▮▮▮▮▮▮ AS FAR AS MY LIVING, I'M AN ARCHITECT.

21   I'M ▮▮▮▮▮▮▮▮▮▮▮▮▮ WE SPECIALIZE IN

22   ▮▮▮▮▮▮, GENERALLY MORE TOWARDS INSTITUTIONAL WORK.  WE DO

23   LIBRARIES FOR THE CITY OF ▮▮▮▮▮▮ ▮▮▮▮▮▮▮ AND

24   ▮▮▮▮▮▮ I HAVE EXPERIENCE IN TERMS OF TRIAL, BUT IT'S

25   LIMITED TO EXPERT WITNESS PRIMARILY ON ZONING ISSUES AND

COMPUTER-AIDED TRANSCRIPTION

65

1    CONSTRUCTION DEFECT.  I'VE PROBABLY BEEN INVOLVED IN SOMEWHERE

2    BETWEEN 13 AND 15 OF THOSE KINDS OF CASES.  YOUR HONOR, I WILL

3    BE FAIR.

4         THE COURT:  THANK YOU VERY MUCH, ███████    I

5    APPRECIATE YOUR ANSWERS.

6         ███████████

7         PROSPECTIVE JUROR:  MY NAME IS ███████.  I

8    LIVE IN ███████  I'M A REALTOR, AND MY HUSBAND IS A

9    ███████ WE HAVE ONE ███ WHO IS ███  I HAVE HAD

10   NO EXPERIENCE WITH BEING A JUROR.  I CAN BE FAIR.

11        THE COURT:  THANK YOU, ███████

12        ONCE AGAIN, I HAVE TO MAKE A DETERMINATION HERE OF

13   WHO MIGHT BE THE FOREPERSON AND DEPUTY FOREPERSON.

14        ███████ HOW ABOUT YOU?  ARE YOU UP TO THE

15   TASK OF SERVING AS THE FOREPERSON?  LET ME TELL YOU ABOUT THE

16   ROLE OF A FOREPERSON.

17        PROSPECTIVE JUROR:  I HAD ███████████

18   AGO.  I'M DOING FINE, BUT SOME DAYS --

19        THE COURT:  I'M GOING TO APPOINT A DEPUTY

20   FOREPERSON, TOO.  LET ME TELL YOU WHAT THE FUNCTION IS.

21        IT USED TO BE WHEN THE GRAND JURY DECIDED ON A GROUP

22   OF CASES AND DECIDED TO RETURN INDICTMENTS IN CASES, THE

23   ENTIRE GRAND JURY WOULD HAVE TO COME DOWN AND AFFIRM THAT

24   "THESE ARE OUR DECISIONS."  A FEW YEARS AGO, FIVE, SIX, SEVEN

25   YEARS AGO, CONGRESS PASSED A LAW THAT SAID, "WE'LL ALLOW THE

COMPUTER-AIDED TRANSCRIPTION

99

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 67 of 69

66

1  FOREPERSON OF THE GRAND JURY TO COME DOWN AND REPRESENT TO THE

2  COURT THE RESULTS OF GRAND JURY BALLOTING"

3          SO TYPICALLY, AS YOU HEARD ME MENTION, ONCE THE

4  GRAND JURY SESSION IS THROUGH FOR THE DAY, THE GRAND JURY

5  FOREPERSON OR DEPUTY FOREPERSON WILL COME DOWN AND ATTEST TO

6  THE COURT ALONG WITH THE APPROPRIATE PAPERWORK THE RESULTS OF

7  GRAND JURY'S WORK FOR THE DAY.  THAT WOULD BE ABOUT IT.

8          THE OTHER THING IS THE U.S. ATTORNEY WOULD LOOK TO

9  YOU TO HELP SCHEDULE SESSIONS WITH THE GRAND JURY, TO GET A

10 CONSENSUS AMONG GRAND JURORS ABOUT BREAKS OR HOW LONG YOU WANT

11 TO GO, THAT TYPE OF THING.  I DON'T WANT TO SAY IT'S NOT

12 IMPORTANT, BUT IT'S NOT GOING TO TAX YOUR RESOURCES MUCH MORE,

13 I DON'T THINK, THAN JUST SIMPLY SERVING AS A GRAND JUROR.

14 THERE IS A LITTLE MORE INVOLVED, AND YOU HAVE A TITLE.

15          PROSPECTIVE JUROR:  I'D RATHER BE THE DEPUTY.

16          THE COURT:  WELL, THEN, LET'S SWITCH PLACES.

17 ███████████████  I WAS GOING TO CALL UPON YOU TO SEE IF

18 YOU'D BE INTERESTED IN BEING A DEPUTY.  ███████████WOULD

19 DEFER TO YOU AS THE FOREPERSON.

20          ARE YOU WILLING TO TAKE THAT ASSIGNMENT?

21          PROSPECTIVE JUROR:  I WOULD BE.

22          THE COURT:  I'LL APPOINT ████████ AS THE FOREPERSON

23 OF THE GRAND JURY AND ███████████ AS THE DEPUTY FOREPERSON.

24          NOW, I MENTIONED THE POSSIBILITY THAT THERE MIGHT BE

25 PEOPLE THAT WANTED TO SWITCH BETWEEN THURSDAY AND FRIDAY

COMPUTER-AIDED TRANSCRIPTION

100

67

1    PANELS.  I'VE BEEN INFORMED THAT ONE OF THE GRAND JURORS FROM

2    THE FIRST PANEL, THE WEDNESDAY PANEL, WOULD PREFER TO SIT ON

3    THURSDAYS.

4          IS THERE ANYONE ON THIS THURSDAY PANEL -- OKAY.  ALL

5    RIGHT.

6          LET ME TAKE FIRST THINGS FIRST.

7          TURNING MY ATTENTION BACK TO THE WEDNESDAY PANEL,

8    WHO IS IT THAT WOULD PREFER -- ▓▓▓▓▓▓▓▓

9          I'M GOING TO TRY TO GET YOU IN ORDER.

10         ▓▓▓▓▓▓▓▓▓ SPOKE UP FIRST.

11         ▓▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓▓, ▓▓▓▓▓▓

12         LET ME SEE IF I HAVE FOUR SIMILARLY SITUATED PEOPLE

13   ON THURSDAY THAT WANT TO GO TO WEDNESDAY.

14         MR. COOPER, I'M GOING TO SWITCH YOU WITH

15   ▓▓▓▓▓▓▓

16         ▓▓▓▓▓▓▓▓  I'LL SWITCH YOU WITH ▓▓▓▓▓

17         ▓▓▓▓▓▓▓  I'LL SWITCH YOU WITH ▓▓▓▓▓▓▓▓

18         AND ▓▓▓▓▓▓▓ I'LL SWITCH YOU WITH ▓▓▓▓▓▓

19   ▓▓▓▓▓▓▓

20         IS THERE ANYONE ELSE WHO EITHER WANTS TO SWITCH OR

21   IS INDIFFERENT?

22         ▓▓▓▓▓▓▓▓  I'LL SWITCH YOU WITH ▓▓▓▓▓▓

23         I LIKE TO BE ACCOMMODATING TO EVERYBODY.  AND SEEING

24   NO MORE HANDS, I'M NOT GOING TO MAKE ANY MORE INQUIRIES.

25         ▓▓▓▓▓▓▓  WILL YOU STAND.

COMPUTER-AIDED TRANSCRIPTION

101

68

1

2          I PROPOSE SWITCHING THE TWO OF THEM.

3          DO YOU WANT THEM TO SWITCH PHYSICALLY RIGHT NOW?

4          THE CLERK:  NO.

5          THE COURT:  ▓▓▓▓▓ AND ▓▓▓▓▓▓▓ THOSE TWO WILL

6    SWITCH.

7          ▓▓▓▓▓▓ AND ▓▓▓▓▓ WILL SWITCH.

8          ▓▓▓▓▓ AND ▓▓▓▓▓ WILL SWITCH.

9          ▓▓▓▓▓ ON THE END AND ▓▓▓▓▓▓▓

10         WE'LL MAKE THOSE SWITCHES AT THE APPROPRIATE TIME.

11         LADIES AND GENTLEMEN, THOSE OF YOU WHO HAVE BEEN

12   SELECTED TO SIT ON THE GRAND JURY, IF YOU'LL STAND AND RAISE

13   YOUR RIGHT HAND, PLEASE.

14                    --oOo--

15

16

17         I HEREBY CERTIFY THAT THE TESTIMONY

18         ADDUCED IN THE FOREGOING MATTER IS

19         A TRUE RECORD OF SAID PROCEEDINGS.

20

21         S/EVA OEMICK                      7-3-07

22         EVA OEMICK                        DATE
           OFFICIAL COURT REPORTER

23

24

25

COMPUTER-AIDED TRANSCRIPTION

102