KAREN P. HEWITT
United States Attorney
DAVID D. LESHNER
Assistant U.S. Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7163
David.Leshner@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-CR-1637-WQH |
| Plaintiff, | ) ) ) | DATE: July 7, 2008 |
| v. | ) ) | TIME: 2:00 p.m. |
| BENJAMIN OCHOA-RAMIREZ, | ) ) ) | **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:** |
| Defendant. | ) ) ) ) | |
| | ) ) | **(1)   COMPEL DISCOVERY;** |
| | ) ) | **(2)   PRESERVE EVIDENCE;** |
| | ) ) | **(3)   DISMISS INDICTMENT; AND** |
| | ) ) ) | **(4)   GRANT LEAVE TO FILE FURTHER MOTIONS** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and David D. Leshner, Assistant United States Attorney, and hereby files its response and opposition to defendant Benjamin Ochoa-Ramirez' motions to compel discovery, preserve evidence, dismiss the indictment and for leave to file further motions. Said response and opposition is based upon the files and records of this case together with the attached memorandum of points and authorities.

/ / /

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## STATEMENT OF THE CASE

On May 27, 2008, defendant Benjamin Ochoa-Ramirez was arraigned on a two-count Indictment charging him with importation of marijuana and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 952 and 960. Defendant entered a plea of not guilty.

## II

## STATEMENT OF FACTS

**A.    Defendant's Apprehension**

On May 11, 2008, Defendant entered the United States from Mexico through the Calexico, CA West Port of Entry as the driver and sole occupant of a 1999 Ford Windstar. At primary inspection, CBP Officer W. Gerhart noticed that Defendant's hand was shaking when Defendant provided his border crosser card and that Defendant avoided eye contact during their encounter. In response to Officer Gerhart's questioning, Defendant asserted that the vehicle belonged to "a friend." Officer Gerhart observed that the glove compartment contained only the vehicle registration and was otherwise empty. Further, there was only one key on the ignition ring. Based on these observations, Officer Gerhart elected to refer Defendant's vehicle to secondary inspection.

At secondary inspection, CBP Officer L. Parker observed Defendant's nervous demeanor. Defendant informed Officer Parker that the vehicle belonged to a friend and that he was en route to a swap meet.

A narcotic and human detector dog alerted to the right side rear quarter panel of the vehicle. Subsequent inspection revealed 50 packages of marijuana concealed throughout the vehicle. The total weight of the marijuana was approximately 50.58 kilograms.

**B.    Defendant's Post-Arrest Statement**

Defendant received <u>Miranda</u> warnings and agreed to make a statement. He denied knowledge of the marijuana in the vehicle. According to Defendant, he was to be paid 200 pesos to pick up someone at the Santo Thomas swap meet. Defendant further stated that he had crossed the vehicle into the United States on two prior occasions.

08CR1637-WQH

# III

## DEFENDANT'S MOTIONS

**A.    Motion For Discovery And To Preserve Evidence**

The Government will continue to fully comply with its discovery obligations.  To date, the Government has provided Defendant with 37 pages of discovery and one DVD, including reports of his arrest and his post-arrest statement.

In an attempt at simplification, this memorandum will address two specific areas of discovery: (1) items which the Government either has provided or will voluntarily provide and (2) items demanded and discussed by Defendant which go beyond the strictures of Rule 16 and are not discoverable.

**1.    Items which the Government has provided or will voluntarily provide.**

a.    The Government will disclose to Defendant and make available for inspection, copying or photographing:  any relevant written or recorded statements made by Defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known to Defendant to be a Government agent.  The Government also will disclose to Defendant the substance of any other relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known by Defendant to be a Government agent if the Government intends to use that statement at trial.

b.    The Government will permit Defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of Defendant's defense or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant;[1]

---

[1] Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their defense against the Government's case-in-chief.  United States v. Armstrong, 517 U.S. 456, 463 (1996).   Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal.  United States v. Givens, 767 F.2d 574, 583 (9th Cir. 1984).

08CR1637-WQH

c.      The Government will permit Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are in the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government, and which are material to the preparation of his defense or are intended for use by the Government as evidence during its case-in-chief at trial;[2]

d.      The Government has furnished to Defendant a copy of his prior criminal record, which is within its possession, custody or control, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the Government;

e.      The Government will disclose the terms of all agreements (or any other inducements) with cooperating witnesses, if any are entered into;

f.      The Government may disclose the statements of witnesses to be called in its case-in-chief when its trial memorandum is filed;[3]

g.      The Government will disclose any record of prior criminal convictions that could be used to impeach a Government witness prior to any such witness' testimony;

h.      The Government will disclose in advance of trial the general nature of other crimes, wrongs, or acts of Defendant that it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence;

i.      The Government acknowledges and recognizes its continuing obligation to disclose exculpatory evidence and discovery as required by Brady v. Maryland, 373 U.S. 83 (1963),

---

[2] The Government need not "disclose every single piece of paper that is generated internally in conjunction with scientific tests." United States v. Iglesias, 881 F.2d 1519, 1524 (9th Cir. 1989).

[3] Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. United States v. Mills, 641 F.2d 785, 789-790 (9th Cir. 1981); United States v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. United States v. Durham, 941 F.2d 858, 861 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. United States v. Isigro, 974 F.2d 1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio transmissions made during surveillance are not discoverable under the Jencks Act. United States v. Bobadilla-Lopez, 954 F.2d 519, 522-23 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness it deems necessary until after the witness testifies.

1  Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act and Rules 12 and 16 of the Federal Rules

2  of Criminal Procedure, and will abide by their dictates.[4]

3      **2.**    **Items which go beyond the strictures of Rule 16**

4          **a.**    **Defendant's requests for specific Brady information or general Rule 16**

5              **discovery.**

6         Defendant requests that the Government disclose all evidence "favorable to Mr. Ochoa-Ramirez

7  on the issue of guilt and/or which affects the credibility of the Government's witnesses and the

8  Government's case." (Motion at 2.)

9         It is well-settled that prior to trial, the Government must provide a defendant in a criminal case

10  with evidence that is both favorable to the accused and material to guilt or punishment.  Pennsylvania

11  v. Richie, 480 U.S. 39, 57 (1987); United States v. Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373

12  U.S. 83, 87 (1963).   As the Supreme Court has explained, "a fair analysis of the holding in Brady

13  indicates that implicit in the requirement of materiality is a concern that the suppressed evidence may

14  have affected the outcome of the trial."  Agurs, 427 U.S. at 104.  "[E]vidence is material only if there

15  is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

16  proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985) (emphasis

17  added).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

18  Richie, 480 U.S. at 57 (citation omitted).

19         The Supreme Court has repeatedly held that the Brady rule is not a rule of discovery; rather, it

20  is a rule of fairness and is based upon the requirement of due process.  Bagley, 473 U.S. at 675, n. 6.

21  The Supreme Court's analysis of the limited scope and purpose of the Brady rule, as set forth in the

22  Bagley opinion, is worth quoting at length:

23        Its purpose is not to displace the adversary system as the primary means by which truth

24        is uncovered, but to ensure that a miscarriage of justice does not occur. [footnote

25

26        [4] Brady requires the Government to produce all evidence that is material to either guilt or

27  punishment.  The Government's failure to provide the information required by Brady is constitutional error only if the information is material, that is, only if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed.  Kyles v. Whitley, 514

28  U.S. 419 (1995).  However, neither Brady nor Rule 16 require the Government to disclose inculpatory information to the defense.  United States v. Arias-Villanueva, 998 F.2d 1491 (9th Cir. 1993).

1   omitted].  Thus, the prosecutor is not required to deliver his entire file to defense

2   counsel, but only to disclose evidence favorable to the accused that, if suppressed, would

3   deprive the defendant of a fair trial: For unless the omission deprived the defendant of

4   a fair trial, there was no constitutional violation requiring that the verdict be set aside;

5   and <u>absent a constitutional violation, there was no breach of the prosecutor's

6   constitutional duty to disclose . . . but to reiterate a critical point, the prosecutor will not

7   have violated his constitutional duty of disclosure unless his omission is of sufficient

8   significance to result in the denial of the defendant's right to a fair trial</u>.

9   <u>Id</u>. at 675 (emphasis added, citation omitted).  Accordingly, the Government will comply with the <u>Brady</u>

10   mandate but rejects any affirmative duty to create or seek out evidence for the defense.

11          **b.**     **<u>Disclosure of witness information</u>**

12      Defendant seeks numerous records and information pertaining to potential Government

13   witnesses.  Regarding these individuals, the Government will provide Defendant with the following

14   items prior to any such individual's trial testimony:

15             (1)    The terms of all agreements (or any other inducements) it has made with

16   cooperating witnesses, if they are entered into;

17             (2)    All relevant exculpatory evidence concerning the credibility or bias of

18   Government witnesses as mandated by law; and,

19             (3)    Any record of prior criminal convictions that could be used to impeach

20   a Government witness.

21      The Government opposes disclosure of rap sheet information of any Government witness prior

22   to trial.  <u>See</u> <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976).  Furthermore, any uncharged

23   prior misconduct attributable to Government witnesses, all promises made to and consideration given

24   to witnesses by the Government, and all threats of prosecution made to witnesses by the Government

25   will be disclosed if required by <u>Brady</u> and <u>Giglio</u>.

26          **c.**     **<u>Agents' rough notes</u>**

27      Although the Government has no objection to the preservation of agents' handwritten notes, the

28   Government objects to their production at this time.  If during any evidentiary proceeding, certain rough

1   notes become relevant, these notes will be made available.

2       Prior production of these notes is not necessary because they are not "statements" within the

3   meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness'

4   assertions <u>and</u> they have been approved or adopted by the witness.  <u>United States v. Spencer</u>, 618 F.2d

5   605, 606-07 (9th Cir. 1980); <u>United States v. Kaiser</u>, 660 F.2d 724, 731-32 (9th Cir. 1981).

6              **d.    Government reports, summaries and memoranda**

7       Rule 16 provides, in relevant part:

8       [T]his rule does not authorize the discovery or inspection of reports, memoranda, or
        other internal government documents made by the attorney for the government or <u>other</u>
9       <u>government agent in connection with the investigating or prosecuting of the case</u>.

10  Rule 16(a)(2).  This subsection exempts from disclosure documents prepared by government attorneys

11  and agents that would otherwise be discoverable under Rule 16.  <u>United States v. Fort</u>, 472 F.3d 1106,

12  1110 & n.2 (9th Cir. 2007).

13      As expressed previously, the Government recognizes its obligations pursuant to <u>Brady</u>, <u>Giglio</u>,

14  Rule 16, and the Jencks Act.[5]  But the Government shall not turn over internal memoranda or reports

15  which are properly regarded as work product exempted from pretrial disclosure.[6]  Such disclosure is

16  supported neither by the Rules of Evidence nor case law and could compromise other areas of

17  investigation still being pursued.

18      Notwithstanding Rule 16(a)(2), the Government has produced the reports pertaining to

19  Defendant's apprehension.

20             **e.    Addresses and phone numbers of Government witnesses**

21      Defendant requests the name and last known address and phone of each prospective Government

22  witness.  While the Government <u>may</u> supply a tentative witness list with its trial memorandum, it objects

23  to providing home addresses and telephone numbers.  <u>See</u> <u>United States v. Sukumolachan</u>, 610 F.2d

24  685, 688 (9th Cir. 1980); <u>United States v. Conder</u>, 423 F.2d 904, 910 (9th Cir. 1970) (addressing

25  defendant's request for the addresses of actual Government witnesses).

---

26

27      [5] Summaries of witness interviews conducted by Government agents are not Jencks Act
    statements.  <u>United States v. Claiborne</u>, 765 F.2d 784, 801 (9th Cir. 1985).

28      [6] The Government recognizes that the possibility remains that some of these documents may
    become discoverable during the course of the trial if they are material to any issue that is raised.

1          **f.        Personnel files of federal agents**

2          Pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and <u>United States v. Cadet</u>,

3    727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its <u>federal</u> law

4    enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate

5    standard of materiality . . . ." <u>Cadet</u>, 727 F.2d at 1467-68.  Further, if counsel for the United States is

6    uncertain about the materiality of the information within its possession, the material will be submitted

7    to the court for in-camera inspection and review.  In this case, the Government will ask the affected law

8    enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the

9    case.

10          In <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the

11    Assistant U.S. Attorney assigned to the prosecution of the case has no duty to <u>personally</u> review the

12    personnel files of federal law enforcement witnesses.  In <u>Jennings</u>, the Ninth Circuit found that the

13    present Department of Justice procedures providing for a review of federal law enforcement witness

14    personnel files by the agency maintaining them is sufficient compliance with <u>Henthorn</u>.  <u>Id</u>.  In this case,

15    the Government will comply with the procedures as set forth in <u>Jennings</u>.

16          Finally, the Government has no duty to examine the personnel files of state and local officers

17    because they are not within the possession, custody or control of the Federal Government.  <u>United States</u>

18    <u>v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

19          **g.        Reports of witness interviews**

20          To date, the Government does not have any reports regarding witness interviews or otherwise

21    that have not been turned over to Defendant.  However, to the extent that such additional reports

22    regarding witness interviews are generated, the information sought by Defendant is not subject to

23    discovery under the Jencks Act, 18 U.S.C. § 3500.

24          Reports generated in connection with a witness's interview session are only subject to production

25    under the Jencks Act if the witness signed the report or otherwise adopted or approved the contents of

26    the report.  <u>See</u> 18 U.S.C. § 3500(e)(1); <u>United States v. Miller</u>, 771 F.2d 1219, 1231-31 (9th Cir. 1985)

27    ("The Jencks Act is, by its terms, applicable only to writings which are signed or adopted by a witness

28    and to accounts which are substantially verbatim recitals of a witness' oral statements."); <u>United States</u>

v. Friedman, 593 F.2d 109, 120 (9th Cir. 1979) (interview report containing a summary of a witness' statements is not subject to discovery under the Jencks Act); United States v. Augenblick, 393 U.S. 248, 354 (1969) (rough notes of witness interview not a "statement" covering entire interview). Indeed, "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production to be required, the material should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992).

### h.     Expert witnesses

The Government will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to the scheduled trial date.

### i.     Other discovery requests

To the extent that the above does not answer all of Defendant's discovery requests, the Government opposes the motion on the grounds that there is no authority requiring the production of such material.

**B.     Motion To Preserve And Re-Weigh Drugs**

The Government does not oppose this motion.

**C.     Motion To Dismiss Indictment**

### 1.     Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by United States District Judge Larry A. Burns on January 11, 2007. Defendant's Memorandum of Points and Authorities filed June 23, 2008 at 8-23 (hereafter "Memorandum").[7]

---

[1] Defendant supplies a partial transcript of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted. See Exhibit A to Memorandum (hereafter "Exhibit A"). Defendant also supplies a partial transcript of the grand jury proceedings which records the voir dire of several potential witnesses. See Exhibit B to Memorandum (hereafter "Exhibit B"). To amplify the record herein, the United States is supplying a redacted supplemental transcript which records relevant portions of the voir dire proceedings. See Appendix to United States' Response and Opposition to Defendant's Motions (hereafter "United States' Appendix").

08CR1637-WQH

1    Although recognizing that the Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir.

2    2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends

3    Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper

4    to the point that the Indictment should be dismissed.

5         In making his arguments concerning the two separate instructions, Defendant urges this Court

6    to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were

7    discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).    Concerning the first attacked

8    instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervisory powers

9    over grand jury procedures.  Memorandum at 21-23.  This is a practice the Supreme Court discourages

10   as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand

11   jury's operational separateness from its constituting court, it should come as no surprise that we have

12   been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury

13   procedure").  <u>Id.</u>  <u>Isgro</u> reiterated:

14        [A] district court may draw on its supervisory powers to dismiss an indictment.  The
          supervisory powers doctrine "is premised on the inherent ability of the federal courts to
15        formulate procedural rules not specifically required by the Constitution or Congress to
          supervise the administration of justice."  <u>Before it may invoke this power, a court must</u>
16        <u>first find that the defendant is actually prejudiced by the misconduct.</u>    Absent such
          prejudice – that is, absent "'grave' doubt that the decision to indict was free from the
17        substantial influence of [the misconduct]" – a dismissal is not warranted.

18   974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction, in an

19   attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution

20   as a reason to dismiss the Indictment.  <u>See</u> Memorandum at 23 ("A grand jury so badly misguided is no

21   grand jury at all under the Fifth Amendment.").  Concerning that kind of a contention, <u>Isgro</u> stated:

22        [A] court may dismiss an indictment if it perceives constitutional error that interferes
          with the grand jury's independence and the integrity of the grand jury proceeding.
23        "Constitutional error is found where the 'structural protections of the grand jury have
          been so compromised as to render the proceedings fundamentally unfair, allowing the
24        presumption of prejudice' to the defendant."  Constitutional error may also be found "if
          [the] defendant can show a history of prosecutorial misconduct that is so systematic and
25        pervasive that it affects the fundamental fairness of the proceeding or if the
          independence of the grand jury is substantially infringed."

26

27

28

08CR1637-WQH

974 F.2d at 1094 (citation omitted).[8]

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance.   If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[9]   408 F.3d at 1203 (footnote omitted).   "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;   it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'"   <u>Id.</u>

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.   The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .   The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

---

[2]   In <u>Isgro</u>, the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries.  They did not prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment."  (relying on <u>Williams</u>)).

[3]   The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.   "We recognize and do not discount that some grand jurors might <u>in fact</u> vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all the reasons we have discussed, there is <u>no post hoc</u> remedy for that; the grand jury's motives are not open to examination."   408 F.3d at 1204 (emphasis in original).

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

### 2. The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Exhibit A at 8-9.[10]

In line with Navarro-Vargas, Judge Burns instructed the grand jurors that they were forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you." Exhibit A at 8. Defendant claims, however, that the instructions "make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient. . . .'" Memorandum at 15. Defendant contends that this addition to the approved instruction

---

[4] The United States' Appendix recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted to include redaction of the individual names, so as to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the supplemental transcript supplied are: United States' Appendix at 15, line 10; 17, line 18; 24, line 14; 28, line 2; 38, line 9; and 44, line 17.

1   "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed

2   prosecution." Id.  Defendant further contends that the flat prohibition was preemptively reinforced by

3   Judge Burns when excused prospective grand jurors.

4        In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

5   instruction renders irrelevant the debate about what the word "should" means.  Memorandum at 15.

6   Defendant contends that "the instruction flatly bars the grand jury from declining to indict because they

7   disagree with a proposed prosecution." Id.  This argument mixes-up two of the holdings in Navarro-

8   Vargas in the hope they will blend into one.  They do not.

9        Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of

10  the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by

11  Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

12  expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in

13  grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his rights,

14  and within the law, when he excused the three prospective grand jurors because of their expressed

15  inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the impaneled

16  grand jurors that they could not question the wisdom of the laws.  As we will establish, this reminder

17  did not pressure the grand jurors to give up their discretion not to return an indictment.  Judge Burns'

18  words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the

19  grand jurors disagree with a proposed prosecution, because they do not say that.  That aspect of a grand

20  jury's discretionary power (i.e., disagreement with the prosecution) was dealt with in Navarro-Vargas

21  in its discussion of another instruction wherein the term "should" was germane.[11]  408 F.3d at 1204-06.

22

23        [5] That instruction is not at issue here.  It read as follows:

24

25        [Y]our task is to determine whether the government's evidence as presented to you
          is sufficient to cause you to conclude that there is probable cause to believe that the
26        accused is guilty of the offense charged.  To put it another way, you should vote
          to indict where the evidence presented to you is sufficiently strong to warrant a
27        reasonable person's believing that the accused is probably guilty of the offense
          with which the accused is charged.

28

     408 F.3d at 1187.

08CR1637-WQH

1    This other instruction bestows discretion on the grand jury not to indict.[12]  In finding this instruction

2    constitutional, the court stated in words that ring true here: "It is the grand jury's position in the

3    constitutional scheme that gives it its independence, not any instructions that a court might offer."  408

4    F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as follows:

5           The function of the grand jury, in federal court at least, is to determine probable cause.
             That's the simple formulation that I mentioned to a number of you during the jury
6           selection process.  Probable cause is just an analysis of whether a crime was committed
             and there's a reasonable basis to believe that and whether a certain person is associated
7           with the commission of that crime, committed it or helped commit it.

8           If the answer is yes, then as grand jurors your function is to find that the probable cause
             is there, that the case has been substantiated, and it should move forward.    If
9           conscientiously, after listening to the evidence, you say "No, I can't form a reasonable
             belief has anything to do with it, then your obligation, of course, would be to decline to
10          indict, to turn the case away and not have it go forward.

11   Exhibit A at 3-4.

12          Probable cause means that you have an honestly held conscientious belief and that
             the belief is reasonable that a federal crime was committed and that the person to
13          be indicted was somehow associated with the commission of that crime.  Either
             they committed it themselves or they helped someone commit it or they were part
14          of a conspiracy, an illegal agreement, to commit that crime.

15          To put it another way, you should vote to indict when the evidence presented to you is
             sufficiently strong to warrant a reasonable person to believe that the accused is probably
16          guilty of the offense which is proposed.

17   Exhibit A at 23.

18          While the new grand jurors were told by Judge Burns that they could not question the wisdom

19   of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not

20   to return an indictment per Navarro-Vargas.  Further, if a potential grand juror could not be dissuaded

21   _____

22          [6] The court upheld the instruction stating:

23               This instruction does not violate the grand jury's independence.    The
                 language of the model charge does not state that the jury "must" or "shall" indict,
24               but merely that it "should" indict if it finds probable cause.   As a matter of pure
                 semantics, it does not "eliminate discretion on the part of the grand jurors," leaving
25               room for the grand jury to dismiss even if it finds probable cause.

26

27   408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir.
     2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution
28   than the executive because there is, literally, no check on a grand jury's decision not to return an
     indictment."  408 F.3d at 1206.

                                                      14

1    from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential

2    jury nullification advocate.  See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005).  Thus,

3    there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising

4    its supervisory powers.

5         Further, a reading of the dialogues between Judge Burns and the three excused jurors found in

6    the supplemental transcript excerpts (see United States' Appendix) reflects a measured, thoughtful,

7    almost mutual decision, that those three individuals should not serve on the grand jury because of their

8    views.  Judge Burns' reference back to those three colloquies cannot be construed as pressuring the

9    impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

10        Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced

11    thereby, a burden he has to bear. "Absent such prejudice – that is, absent 'grave' doubt that the decision

12    to indict was free from the substantial influence of [the misconduct]' – a dismissal is not warranted."

13    Isgro, 974 F.2d at 1094.

14    **3.    The Addition to the "United States Attorney and his Assistant United States**

15    **Attorneys" Instruction Did Not Violate the Constitution.**

16        Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

17    U.S. Attorneys, Judge Burns variously stated:

18        [T]here's a close association between the grand jury and the U.S. Attorney's Office.

19        . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

20    Exhibit A at 11.

21        [I]n my experience here in the over 20 years in this court, that kind of tension does not
         exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries.
22        They generally work together.

23    Exhibit A at 12.

24        Now, again, this emphasizes the difference between the function of the grand jury and
         the trial jury.  You're all about probable cause.  If you think that there's evidence out
25        there that might cause you to say "well, I don't think probable cause exists," then it's
         incumbent upon you to hear that evidence as well.  As I told you, in most instances, the
26        U.S. Attorneys are duty-bound to present evidence that cuts against what they may be
         asking you to do if they're aware of that evidence.

27

28

Exhibit A at 20.[13]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Exhibit A at 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." Memorandum at 12. Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" Id. From this lash-up Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none.
>
> Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available

---

[7] Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation – if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

Memorandum at 23.[14]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[15] (emphasis added)). See also United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no

---

[8] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

[9] Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

1  obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis

2  added)).

3      However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns

4  was a member of the United States Attorney's Office, and made appearances in front of the federal

5  grand jury.[16]  As such he was undoubtedly aware of the provisions in the United States Attorneys'

6  Manual ("USAM").[17]  Specifically, it appears he is aware of USAM Section 9-11.233, which states:

7          In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the
8      Federal courts' supervisory powers over the grand jury did not include the power to
       make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor
       failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the
9      Department of Justice, however, that when a prosecutor conducting a grand jury inquiry
       is personally aware of substantial evidence that directly negates the guilt of a subject of
10     the investigation, the prosecutor must present or otherwise disclose such evidence to the
       grand jury before seeking an indictment against such a person. While a failure to follow
11     the Department's policy should not result in dismissal of an indictment, appellate courts
       may refer violations of the policy to the Office of Professional Responsibility for review.

12

13  (Emphasis added.)[18]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of

14  Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the

15  policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a

16  subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ."

17  (Emphasis added.)[19]

18

19          [10]  He recalled those days when instructing the new grand jurors. Exhibit A at 12, 14-16,
20      17-18.

21          [11]    The USAM is available on the World Wide Web at www.usdoj.gov/usao/
22      eousa/foia_reading_room/ usam/index.html.

23          [12]  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if
        Judge Burns did not know of this provision in the USAM while he was a member of the
24      United States Attorney's Office, because of the accessability of the USAM on the Internet, as the
        District Judge overseeing the grand jury he certainly could determine the required duties of the
25      United States Attorneys appearing before the grand jury from that source.

26          [13]  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly,
27      this new section does not bestow any procedural or substantive rights on defendants.

28          Under this policy, the government's disclosure will exceed its constitutional
        obligations. This expanded disclosure policy, however, does not create a general

                                        18                                    08CR1637-WQH

The fact that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[20] If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[21] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

---

right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶"E". <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm.

[14] Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

[15] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," <u>Williams</u>, 504 U.S. at 51 (citing <u>United States v. Calandra</u>, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

1     Further, just as the instruction language regarding the United States Attorney attacked in

2  Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408

3  F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

4  concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does

5  not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit

6  while reviewing Williams established that there is nothing in the Constitution which requires a

7  prosecutor to give the person under investigation the right to present anything to the grand jury

8  (including his or her testimony or other exculpatory evidence), and the absence of that information does

9  not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there

10 exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty

11 on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant

12 since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed

13 policy.[22]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was

14 unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast

15 an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or

16 any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates

17 Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory

18 comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that

19 it stands between the government and the accused and is independent," which was also required by

20 Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not

21 mean the instructions were constitutionally defective requiring dismissal of this indictment or any

22 indictment.

23     The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

24 the "'structural protections of the grand jury have been so compromised as to render the proceedings

25 fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

---

26

27

28        [16]  The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
failure to present exculpatory information to a grand jury per Williams, he or she could lose his
or her job with the United States Attorney's Office for such a failure per the USAM.

can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this Indictment, or any other indictment, need not be dismissed.

**D.**    **Motion For Leave To File Further Motions**

The Government does not oppose granting leave to bring further motions so long as those motions are based on evidence (if any) not yet produced in discovery.

**IV**

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court rule on defendant's  motions as set forth above.


DATED:        June 27, 2008.                    Respectfully submitted,

                                                Karen P. Hewitt
                                                United States Attorney

                                                s/ David D. Leshner
                                                DAVID D. LESHNER
                                                Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08-CR-1637-WQH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| BENJAMIN OCHOA-RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, DAVID D. LESHNER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS TO: (1)   C O M P E L DISCOVERY; (2) PRESERVE EVIDENCE; (3) DISMISS INDICTMENT; AND (4) GRANT LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Hanni Fakhoury, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 27, 2008.


/s/ David D. Leshner
DAVID D. LESHNER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES' EXHIBIT**

Supplemental redacted transcript of Hon. Larry A. Burns's instructions to the January 2007
Grand Jury

1

2

3

4

5

6

7

8

9

10          PROSPECTIVE JUROR:  MY NAME IS .

11   I LIVE IN SAN DIEGO IN THE MISSION HILLS AREA.  I'M RETIRED.

12   I WAS A CLINICAL SOCIAL WORKER.  I'M SINGLE.  NO CHILDREN.

13   I'VE BEEN CALLED FOR JURY SERVICE A NUMBER OF TIMES, BUT I'VE

14   NEVER ACTUALLY BEEN SELECTED AS A JUROR.  CAN I BE FAIR?  I'LL

15   TRY.  BECAUSE OF THE NATURE OF THE WORK THAT I DID, I HAVE

16   SOME FAIRLY STRONG OPINIONS ABOUT SOME OF THE PEOPLE WHO COME

17   INTO THE LEGAL SYSTEM.  BUT I WOULD TRY TO WORK WITH THAT.

18          THE COURT:  WE'RE ALL PRODUCTS OF OUR EXPERIENCE.

19   WE'RE NOT GOING TO TRY TO DISABUSE YOU OF EXPERIENCES OR

20   JUDGMENTS THAT YOU HAVE.  WHAT WE ASK IS THAT YOU NOT ALLOW

21   THOSE TO CONTROL INVARIABLY THE OUTCOME OF THE CASES COMING IN

22   FRONT OF YOU; THAT YOU LOOK AT THE CASES FRESH, YOU EVALUATE

23   THE CIRCUMSTANCES, LISTEN TO THE WITNESS TESTIMONY, AND THEN

24   MAKE AN INDEPENDENT JUDGMENT.

25          DO YOU THINK YOU CAN DO THAT?

16

1    PROSPECTIVE JUROR:  I'LL DO MY BEST.

2    THE COURT:  IS THERE A CERTAIN CATEGORY OF CASE THAT
3  YOU THINK MIGHT BE TROUBLESOME FOR YOU TO SIT ON THAT YOU'D BE
4  INSTINCTIVELY TILTING ONE WAY IN FAVOR OF INDICTMENT OR THE
5  OTHER WAY AGAINST INDICTING JUST BECAUSE OF THE NATURE OF THE
6  CASE?

7    PROSPECTIVE JUROR:  WELL, I HAVE SOME FAIRLY STRONG
8  FEELINGS REGARDING DRUG CASES.  I DO NOT BELIEVE THAT ANY
9  DRUGS SHOULD BE CONSIDERED ILLEGAL, AND I THINK WE'RE SPENDING
10  A LOT OF TIME AND ENERGY PERSECUTING AND PROSECUTING CASES
11  WHERE RESOURCES SHOULD BE DIRECTED IN OTHER AREAS.

12    I ALSO HAVE STRONG FEELINGS ABOUT IMMIGRATION CASES.
13  AGAIN, I THINK WE'RE SPENDING A LOT OF TIME PERSECUTING PEOPLE
14  THAT WE SHOULD NOT BE.

15    THE COURT:  WELL, LET ME TELL YOU, YOU'VE HIT ON THE
16  TWO TYPES OF CASES THAT ARE REALLY KIND OF THE STAPLE OF THE
17  WORK WE DO HERE IN THE SOUTHERN DISTRICT OF CALIFORNIA.  AS I
18  MENTIONED IN MY INITIAL REMARKS, OUR PROXIMITY TO THE BORDER
19  KIND OF MAKES US A FUNNEL FOR BOTH DRUG CASES AND IMMIGRATION
20  CASES.  YOU'RE GOING TO BE HEARING THOSE CASES I CAN TELL YOU
21  FOR SURE.  JUST AS DAY FOLLOWS NIGHT, YOU'RE HEAR CASES LIKE
22  THAT.

23    NOW, THE QUESTION IS CAN YOU FAIRLY EVALUATE THOSE
24  CASES?  JUST AS THE DEFENDANT ULTIMATELY IS ENTITLED TO A FAIR
25  TRIAL AND THE PERSON THAT'S ACCUSED IS ENTITLED TO A FAIR

17

1    APPRAISAL OF THE EVIDENCE OF THE CASE THAT'S IN FRONT OF YOU,

2    SO, TOO, IS THE UNITED STATES ENTITLED TO A FAIR JUDGMENT.  IF

3    THERE'S PROBABLE CAUSE, THEN THE CASE SHOULD GO FORWARD.  I

4    WOULDN'T WANT YOU TO SAY, "WELL, YEAH, THERE'S PROBABLE CAUSE.

5    BUT I STILL DON'T LIKE WHAT OUR GOVERNMENT IS DOING.  I

6    DISAGREE WITH THESE LAWS, SO I'M NOT GOING TO VOTE FOR IT TO

7    GO FORWARD."  IF THAT'S YOUR FRAME OF MIND, THEN PROBABLY YOU

8    SHOULDN'T SERVE.  ONLY YOU CAN TELL ME THAT.

9              PROSPECTIVE JUROR:  WELL, I THINK I MAY FALL IN THAT

10   CATEGORY.

11             THE COURT:  IN THE LATTER CATEGORY?

12             PROSPECTIVE JUROR:  YES.

13             THE COURT:  WHERE IT WOULD BE DIFFICULT FOR YOU TO

14   SUPPORT A CHARGE EVEN IF YOU THOUGHT THE EVIDENCE WARRANTED

15   IT?

16             PROSPECTIVE JUROR:  YES.

17             THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  I

18   APPRECIATE YOUR HONEST ANSWERS.

19

20

21

22

23

24

25

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14          PROSPECTIVE JUROR: MAY NAME IS ████████.  I

15  LIVE IN SAN DIEGO.  I'M A REAL ESTATE AGENT.  NOT MARRIED.  NO

16  KIDS.  HAVE NOT SERVED.  AND AS FAR AS BEING FAIR, IT KIND OF

17  DEPENDS UPON WHAT THE CASE IS ABOUT BECAUSE THERE IS A

18  DISPARITY BETWEEN STATE AND FEDERAL LAW.

19          THE COURT:  IN WHAT REGARD?

20          PROSPECTIVE JUROR:  SPECIFICALLY, MEDICAL

21  MARIJUANA.

22          THE COURT:  WELL, THOSE THINGS -- THE CONSEQUENCES

23  OF YOUR DETERMINATION SHOULDN'T CONCERN YOU IN THE SENSE THAT

24  PENALTIES OR PUNISHMENT, THINGS LIKE THAT -- WE TELL TRIAL

25  JURORS, OF COURSE, THAT THEY CANNOT CONSIDER THE PUNISHMENT OR

25

1    THE CONSEQUENCE THAT CONGRESS HAS SET FOR THESE THINGS.  WE'D

2    ASK YOU TO ALSO ABIDE BY THAT.  WE WANT YOU TO MAKE A

3    BUSINESS-LIKE DECISION AND LOOK AT THE FACTS AND MAKE A

4    DETERMINATION OF WHETHER THERE WAS A PROBABLE CAUSE.

5         COULD YOU DO THAT?  COULD YOU PUT ASIDE STRONG

6    PERSONAL FEELINGS YOU MAY HAVE?

7         PROSPECTIVE JUROR:  IT DEPENDS.  I HAVE A VERY

8    STRONG OPINION ON IT.  WE LIVE IN THE STATE OF CALIFORNIA, NOT

9    FEDERAL CALIFORNIA.  THAT'S HOW I FEEL ABOUT IT VERY STRONGLY.

10        THE COURT:  WELL, I DON'T KNOW HOW OFTEN MEDICAL

11   MARIJUANA USE CASES COME UP HERE.  I DON'T HAVE A GOOD FEEL

12   FOR THAT.  MY INSTINCT IS THEY PROBABLY DON'T ARISE VERY

13   OFTEN.  BUT I SUPPOSE ONE OF THE SOLUTIONS WOULD BE IN A CASE

14   IMPLICATING MEDICAL USE OF MARIJUANA, YOU COULD RECUSE

15   YOURSELF FROM THAT CASE.

16        ARE YOU WILLING TO DO THAT?

17        PROSPECTIVE JUROR:  SURE.

18        THE COURT:  ALL OTHER CATEGORIES OF CASES YOU COULD

19   GIVE A FAIR, CONSCIENTIOUS JUDGMENT ON?

20        PROSPECTIVE JUROR:  FOR THE MOST PART, BUT I ALSO

21   FEEL THAT DRUGS SHOULD BE LEGAL.

22        THE COURT:  OUR LAWS ARE DIFFERENT FROM THAT.  AND

23   AS YOU HEARD ME EXPLAIN TO ████████████, A LOT OF THE CASES

24   THAT COME THROUGH IN OUR COURT ARE DRUG CASES.  YOU'LL BE

25   CALLED UPON TO EVALUATE THOSE CASES OBJECTIVELY AND THEN MAKE

COMPUTER-AIDED TRANSCRIPTION

26

1  THE TWO DETERMINATIONS THAT I STARTED OFF EXPLAINING TO

2  ▇▇▇▇▇▇▇▇  "DO I HAVE A REASONABLE BELIEF THAT A CRIME WAS

3  COMMITTED?  WHETHER I AGREE WITH WHETHER IT OUGHT TO BE A

4  CRIME OR NOT, DO I BELIEVE THAT A CRIME WAS COMMITTED AND THAT

5  THE PERSON THAT THE GOVERNMENT IS ASKING ME TO INDICT WAS

6  SOMEHOW INVOLVED IN THIS CRIME, EITHER COMMITTED IT OR HELPED

7  WITH IT?"

8          COULD YOU DO THAT IF YOU SIT AS A GRAND JUROR?

9          PROSPECTIVE JUROR:  THE LAST JURY I WAS ASKED TO SIT

10  ON, I GOT EXCUSED BECAUSE OF THAT REASON.

11          THE COURT:  YOU SAID YOU COULDN'T DO IT?  YOUR

12  SENTIMENTS ARE SO STRONG THAT THEY WOULD IMPAIR YOUR

13  OBJECTIVITY ABOUT DRUG CASES?

14          PROSPECTIVE JUROR:  I THINK RAPISTS AND MURDERERS

15  OUGHT TO GO TO JAIL, NOT PEOPLE USING DRUGS.

16          THE COURT:  I THINK RAPISTS AND MURDERERS OUGHT TO

17  GO TO JAIL, TOO.  IT'S NOT FOR ME AS A JUDGE TO SAY WHAT THE

18  LAW IS.  WE ELECT LEGISLATORS TO DO THAT.  WE'RE SORT OF AT

19  THE END OF THE PIPE ON THAT.  WE'RE CHARGED WITH ENFORCING THE

20  LAWS THAT CONGRESS GIVES US.

21          I CAN TELL YOU SOMETIMES I DON'T AGREE WITH SOME OF

22  THE LEGAL DECISIONS THAT ARE INDICATED THAT I HAVE TO MAKE.

23  BUT MY ALTERNATIVE IS TO VOTE FOR SOMEONE DIFFERENT, VOTE FOR

24  SOMEONE THAT SUPPORTS THE POLICIES I SUPPORT AND GET THE LAW

25  CHANGED.  IT'S NOT FOR ME TO SAY, "WELL, I DON'T LIKE IT.  SO

1    I'M NOT GOING TO FOLLOW IT HERE."

2            YOU'D HAVE A SIMILAR OBLIGATION AS A GRAND JUROR

3    EVEN THOUGH YOU MIGHT HAVE TO GRIT YOUR TEETH ON SOME CASES.

4    PHILOSOPHICALLY, IF YOU WERE A MEMBER OF CONGRESS, YOU'D VOTE

5    AGAINST, FOR EXAMPLE, CRIMINALIZING MARIJUANA.  I DON'T KNOW

6    IF THAT'S IT, BUT YOU'D VOTE AGAINST CRIMINALIZING SOME DRUGS.

7            THAT'S NOT WHAT YOUR PREROGATIVE IS HERE.  YOUR

8    PREROGATIVE INSTEAD IS TO ACT LIKE A JUDGE AND TO SAY, "ALL

9    RIGHT.  THIS IS WHAT I'VE GOT TO DEAL WITH OBJECTIVELY.  DOES

10   IT SEEM TO ME THAT A CRIME WAS COMMITTED?  YES.  DOES IT SEEM

11   TO ME THAT THIS PERSON'S INVOLVED?  IT DOES."  AND THEN YOUR

12   OBLIGATION, IF YOU FIND THOSE THINGS TO BE TRUE, WOULD BE TO

13   VOTE IN FAVOR OF THE CASE GOING FORWARD.

14           I CAN UNDERSTAND IF YOU TELL ME "LOOK, I GET ALL

15   THAT, BUT I JUST CAN'T DO IT OR I WOULDN'T DO IT."  I DON'T

16   KNOW WHAT YOUR FRAME OF MIND IS.  YOU HAVE TO TELL ME ABOUT

17   THAT.

18           PROSPECTIVE JUROR:  I'M NOT COMFORTABLE WITH IT.

19           THE COURT:  DO YOU THINK YOU'D BE INCLINED TO LET

20   PEOPLE GO ON DRUG CASES EVEN THOUGH YOU WERE CONVINCED THERE

21   WAS PROBABLE CAUSE THEY COMMITTED A DRUG OFFENSE?

22           PROSPECTIVE JUROR:  IT WOULD DEPEND UPON THE CASE.

23           THE COURT:  IS THERE A CHANCE THAT YOU WOULD DO

24   THAT?

25           PROSPECTIVE JUROR:  YES.

COMPUTER-AIDED TRANSCRIPTION

28

1        THE COURT:  I APPRECIATE YOUR ANSWERS.  I'LL EXCUSE

2    YOU AT THIS TIME.

38

1

2

3

4

5

6

7

8

9      PROSPECTIVE JUROR:  I'M ████████.  I LIVE IN

10   ENCINITAS.  I WORK FOR AN INSURANCE COMPANY HERE IN SAN DIEGO.

11   I'M MARRIED.  MY WIFE IS A P.E. TEACHER AT A MIDDLE SCHOOL.  I

12   HAVE TWO KIDS AGE 14 AND 16.  I'VE BEEN A JUROR BEFORE

13   PROBABLY TEN YEARS AGO ON KIND OF A LOW-LEVEL CRIMINAL CASE.

14   AND IN THE NAME OF FULL DISCLOSURE, I'D PROBABLY SUGGEST I'D

15   BE THE FLIPSIDE OF SOME OF THE INDIVIDUALS WHO HAVE CONVEYED

16   THEIR CONCERNS PREVIOUSLY.  I HAVE A STRONG BIAS FOR THE U.S.

17   ATTORNEY, WHATEVER CASES THEY MIGHT BRING.  I DON'T THINK

18   THEY'RE HERE TO WASTE OUR TIME, THE COURT'S TIME, THEIR OWN

19   TIME.  I APPRECIATE THE EVIDENTIARY STANDARDS, I GUESS, MORE

20   OR LESS, AS A LAYPERSON WOULD; THAT THEY ARE CALLED UPON IN

21   ORDER TO BRING THESE CASES OR SEEK AN INDICTMENT.

22        AND THE GATEKEEPER ROLE THAT I GUESS WE'RE BEING

23   ASKED TO PLAY IS ONE THAT I'D HAVE A DIFFICULT TIME, IN ALL

24   HONESTY.  I'M PROBABLY SUGGESTING THAT THE U.S. ATTORNEY'S

25   CASE WOULD BE ONE THAT I WOULD BE WILLING TO STAND IN FRONT

COMPUTER-AIDED TRANSCRIPTION

39

1    OF; IN OTHER WORDS, PREVENT FROM GOING TO A JURY.

2          THE COURT:  IT SOMETIMES HAPPENS THAT AT THE TIME

3    THE CASE IS INITIALLY PRESENTED TO THE U.S. ATTORNEY'S OFFICE,

4    THINGS APPEAR DIFFERENTLY THAN 10 DAYS LATER, 20 DAYS LATER

5    WHEN IT'S PRESENTED TO A GRAND JURY.  THAT'S WHY THIS

6    GATEKEEPER ROLE IS VERY, VERY IMPORTANT.

7          YOU'RE NOT PART OF THE PROSECUTING ARM.  YOU'RE

8    INTENDED TO BE A BUFFER INDEPENDENT OF THE U.S. ATTORNEY'S

9    OFFICE.  AND THE REAL ROLE OF THE GRAND JURY IS TO MAKE SURE

10   THAT UNSUBSTANTIATED CHARGES DON'T GO FORWARD.

11         YOU'VE HEARD MY GENERAL COMMENTS.  YOU HAVE AN

12   APPRECIATION ABOUT HOW AN UNSUBSTANTIATED CHARGE COULD CAUSE

13   PROBLEMS FOR SOMEONE EVEN IF THEY'RE ULTIMATELY ACQUITTED.

14         YOU APPRECIATE THAT; RIGHT?

15         PROSPECTIVE JUROR:  I THINK I COULD APPRECIATE THAT,

16   YES.

17         THE COURT:  AND SO WE'RE -- LOOK, I'LL BE HONEST

18   WITH YOU.  THE GREAT MAJORITY OF THE CHARGES THAT THE GRAND

19   JURY PASSES ON THAT ARE PRESENTED BY THE U.S. ATTORNEY'S

20   OFFICE DO GO FORWARD.  MOST OF THE TIME, THE GRAND JURY PUTS

21   ITS SEAL OF APPROVAL ON THE INITIAL DECISION MADE BY THE U.S.

22   ATTORNEY.

23         OBVIOUSLY, I WOULD SCREEN SOMEBODY OUT WHO SAYS, "I

24   DON'T CARE ABOUT THE EVIDENCE.  I'M NOT GOING TO PAY ATTENTION

25   TO THE EVIDENCE.  IF THE U.S. ATTORNEY SAYS IT'S GOOD, I'M

COMPUTER-AIDED TRANSCRIPTION

1    GOING TO GO WITH THAT." IT DIDN'T SOUND LIKE THAT'S WHAT YOU

2    WERE SAYING. YOU WERE SAYING YOU GIVE A PRESUMPTION OF GOOD

3    FAITH TO THE U.S. ATTORNEY AND ASSUME, QUITE LOGICALLY, THAT

4    THEY'RE NOT ABOUT THE BUSINESS OF TRYING TO INDICT INNOCENT

5    PEOPLE OR PEOPLE THAT THEY BELIEVE TO BE INNOCENT OR THE

6    EVIDENCE DOESN'T SUBSTANTIATE THE CHARGES AGAINST. THAT'S

7    WELL AND GOOD.

8         YOU MUST UNDERSTAND THAT AS A MEMBER OF THE GRAND

9    JURY, YOU'RE THE ULTIMATE ARBITER. THEY DON'T HAVE THE

10   AUTHORITY TO HAVE A CASE GO FORWARD WITHOUT YOU AND FELLOW

11   GRAND JURORS' APPROVAL. I WOULD WANT YOU NOT TO JUST

12   AUTOMATICALLY DEFER TO THEM OR SURRENDER THE FUNCTION AND

13   GIVER THE INDICTMENT DECISION TO THE U.S. ATTORNEY. YOU HAVE

14   TO MAKE THAT INDEPENDENTLY.

15        YOU'RE WILLING TO DO THAT IF YOU'RE RETAINED HERE?

16        PROSPECTIVE JUROR: I'M NOT A PERSON THAT THINKS OF

17   ANYBODY IN THE BACK OF A POLICE CAR AS NECESSARILY GUILTY, AND

18   I WOULD DO MY BEST TO GO AHEAD AND BE OBJECTIVE. BUT AGAIN,

19   JUST IN THE NAME OF FULL DISCLOSURE, I FELT LIKE I SHOULD LET

20   YOU KNOW THAT I HAVE A VERY STRONG PRESUMPTION WITH RESPECT TO

21   ANY DEFENDANT THAT WOULD BE BROUGHT IN FRONT OF US.

22        THE COURT: I UNDERSTAND WHAT YOU'RE SAYING. LET ME

23   TELL YOU THE PROCESS WILL WORK MECHANICALLY. THEY'RE GOING TO

24   CALL WITNESSES. AND WHAT THEY'RE GOING TO ASK YOU TO DO IS

25   EVALUATE THE TESTIMONY YOU HEAR FROM WITNESSES.

1    BEFORE YOU REACH A POINT WHERE YOU VOTE ON ANY

2    INDICTMENT, THE U.S. ATTORNEY AND THE STENOGRAPHER LEAVE.  THE

3    ONLY PEOPLE LEFT WHEN THE VOTE IS TAKEN ARE THE GRAND JURORS

4    THEMSELVES.  THAT'S THE WAY THE PROCESS IS GOING TO WORK.

5    YOU'RE GOING TO HAVE TO SAY EITHER "WELL, IT HAS THE

6    RING OF TRUTH TO ME, AND I THINK IT HAPPENED THE WAY IT'S

7    BEING SUGGESTED HERE.  AT LEAST I'M CONVINCED ENOUGH TO LET

8    THE CASE GO FORWARD" OR "THINGS JUST DON'T HAPPEN LIKE THAT IN

9    MY EXPERIENCE, AND I THINK THIS SOUNDS CRAZY TO ME.  I WANT

10   EITHER MORE EVIDENCE OR I'M NOT CONVINCED BY WHAT'S BEEN

11   PRESENTED AND I'M NOT GOING TO LET IT GO FORWARD."

12   CAN YOU MAKE AN OBJECTIVE ON FACTS LIKE THE ONES

13   I'VE JUST DESCRIBED?

14   PROSPECTIVE JUROR:  I WOULD DO MY BEST TO DO THAT.

15   I CERTAINLY WOULD WANT ME SITTING ON A GRAND JURY IF I WERE A

16   DEFENDANT COMING BEFORE THIS GRAND JURY.  HAVING SAID THAT, I

17   WOULD DO MY BEST.  I HAVE TO ADMIT TO A STRONG BIAS IN FAVOR

18   OF THE U.S. ATTORNEY THAT I'M NOT SURE I COULD OVERCOME.

19   THE COURT:  ALL I'M TRYING TO GET AT IS WHETHER

20   YOU'RE GOING TO AUTOMATICALLY VOTE TO INDICT IRRESPECTIVE OF

21   THE FACTS.

22   A FEW YEARS AGO, I IMPANELED A FELLOW HERE THAT WAS

23   A SERGEANT ON THE SHERIFF'S DEPARTMENT.  AND YEARS AGO WHEN I

24   WAS A PROSECUTOR, I WORKED WITH HIM.  HE WAS ALL ABOUT

25   ARRESTING AND PROSECUTING PEOPLE.  BUT WHEN HE GOT HERE, HE

COMPUTER-AIDED TRANSCRIPTION

1  SAID, "LOOK, I UNDERSTAND THAT THIS IS A DIFFERENT FUNCTION.

2  I CAN PERFORM THAT FUNCTION." HE SERVED FAITHFULLY AND WELL

3  FOR A NUMBER OF -- OVER A YEAR, I THINK. 18 MONTHS, MAYBE.

4  HE EVENTUALLY GOT A PROMOTION, SO WE RELIEVED HIM FROM THE

5  GRAND JURY SERVICE.

6       BUT, YOU KNOW, HE TOOK OFF ONE HAT AND ONE UNIFORM

7  AND PUT ON A DIFFERENT HAT ON THE DAYS HE REPORTED TO THE

8  GRAND JURY. HE WAS A POLICEMAN. HE'D BEEN INVOLVED IN

9  PROSECUTING CASES. BUT HE UNDERSTOOD THAT THE FUNCTION HE WAS

10 PERFORMING HERE WAS DIFFERENT, THAT IT REQUIRED HIM TO

11 INDEPENDENTLY AND OBJECTIVELY ANALYZE CASES AND ASSURED ME

12 THAT HE COULD DO THAT, THAT HE WOULD NOT AUTOMATICALLY VOTE TO

13 INDICT JUST BECAUSE THE U.S. ATTORNEY SAID SO.

14      AGAIN, I DON'T WANT TO PUT WORDS IN YOUR MOUTH. BUT

15 I DON'T HEAR YOU SAYING THAT THAT'S THE EXTREME POSITION THAT

16 YOU HAVE. I HEAR YOU SAYING INSTEAD THAT COMMON SENSE AND

17 YOUR EXPERIENCE TELLS YOU THE U.S. ATTORNEY'S NOT GOING TO

18 WASTE TIME ON CASES THAT LACK MERIT. THE CONSCIENTIOUS PEOPLE

19 WHO WORK FOR THE U.S. ATTORNEY'S OFFICE AREN'T GOING TO TRY TO

20 TRUMP UP PHONY CHARGES AGAINST PEOPLE.

21      MY ANECDOTAL EXPERIENCE SUPPORTS THAT, TOO. THAT

22 DOESN'T MEAN THAT EVERY CASE THAT COMES IN FRONT OF ME I SAY,

23 "WELL, THE U.S. ATTORNEY'S ON THIS. THE PERSON MUST BE

24 GUILTY." I CAN'T DO THAT. I LOOK AT THE CASES STAND-ALONE,

25 INDEPENDENT, AND I EVALUATE THE FACTS. I DO WHAT I'M CHARGED

43

1  WITH DOING, WHICH IS MAKING A DECISION BASED ON THE EVIDENCE

2  THAT'S PRESENTED.

3      SO THAT'S THE QUESTION I HAVE FOR YOU.  I CAN

4  UNDERSTAND THE DEFERENCE TO THE U.S. ATTORNEY.  AND FRANKLY, I

5  AGREE WITH THE THINGS THAT YOU'RE SAYING.  THEY MAKE SENSE TO

6  ME.  BUT AT THE END OF THE DAY, YOUR OBLIGATION IS STILL TO

7  LOOK AT THESE CASES INDEPENDENTLY AND FORM AN INDEPENDENT

8  CONSCIENTIOUS BUSINESS-LIKE JUDGMENT ON THE TWO QUESTIONS THAT

9  I'VE MENTIONED EARLIER:  DO I HAVE A REASONABLE BELIEF THAT A

10  CRIME WAS COMMITTED?  DO I HAVE A REASONABLE BELIEF THAT THE

11  PERSON TO BE CHARGED COMMITTED IT OR HELPED COMMIT IT?

12      CAN YOU DO THAT?

13      PROSPECTIVE JUROR:  AGAIN, I WOULD DO MY BEST TO DO

14  THAT.  BUT I DO BRING A VERY, VERY STRONG BIAS.  I BELIEVE

15  THAT, FOR EXAMPLE, THE U.S. ATTORNEY WOULD HAVE OTHER FACTS

16  THAT WOULD RISE TO LEVEL THAT THEY'D BE ABLE TO PRESENT TO US

17  THAT WOULD BEAR ON THE TRIAL.  I WOULD LOOK AT THE CASE AND

18  PRESUME AND BELIEVE THAT THERE ARE OTHER FACTS OUT THERE THAT

19  AREN'T PRESENTED TO US THAT WOULD ALSO BEAR ON TAKING THE CASE

20  TO TRIAL.  I'D HAVE A VERY DIFFICULT TIME.

21      THE COURT:  YOU WOULDN'T BE ABLE TO DO THAT.  WE

22  WOULDN'T WANT YOU TO SPECULATE THAT THERE'S OTHER FACTS THAT

23  HAVEN'T BEEN PRESENTED TO YOU.  YOU HAVE TO MAKE A DECISION

24  BASED ON WHAT'S BEEN PRESENTED.

25      BUT LOOK, I CAN TELL YOU I IMAGINE THERE'S PEOPLE IN

COMPUTER-AIDED TRANSCRIPTION

44

1    THE U.S. ATTORNEY'S OFFICE THAT DISAGREE WITH ONE ANOTHER

2    ABOUT THE MERITORIOUSNESS OF A CASE OR WHETHER A CASE CAN BE

3    WON AT A JURY TRIAL.

4            IS THAT RIGHT, MR. ROBINSON?

5            MR. ROBINSON:  ON OCCASION, YOUR HONOR.  NOT VERY

6    OFTEN.

7            THE COURT:  IT COMES UP EVEN IN AN OFFICE WITH

8    PEOPLE CHARGED WITH THE SAME FUNCTION.  I DON'T WANT TO BEAT

9    YOU UP ON THIS, ██████████  I'M EQUALLY CONCERNED WITH

10   SOMEBODY WHO WOULD SAY, "I'M GOING TO AUTOMATICALLY DROP THE

11   TRAP DOOR ON ANYBODY THE U.S ATTORNEY ASKS."  I WOULDN'T WANT

12   YOU TO DO THAT.  IF YOU THINK THERE'S A POSSIBILITY YOU'LL DO

13   THAT, THEN I'D BE INCLINED TO EXCUSE YOU.

14           PROSPECTIVE JUROR:  I THINK THAT THERE'S A

15   POSSIBILITY I WOULD BE INCLINED TO DO THAT.

16           THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  THANK

17   YOU.  I APPRECIATE YOUR ANSWERS.

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION