1  **HANNI M. FAKHOURY**
   California Bar No. 252629
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5008
   Telephone: (619) 234-8467
4  Hanni_Fakhoury@fd.org

5  Attorneys for Mr. Ochoa-Ramirez

6                  UNITED STATES DISTRICT COURT

7                SOUTHERN DISTRICT OF CALIFORNIA

8              **(HONORABLE WILLIAM Q. HAYES)**

9  UNITED STATES OF AMERICA,        )    CASE NO.: 08CR1637-WQH
                                    )
10            Plaintiff,            )    DATE: September 8, 2008
                                    )    TIME: 2:00 p.m.
11 v.                              )
                                    )    NOTICE OF MOTIONS AND MOTIONS *IN*
12 **BENJAMIN OCHOA-RAMIREZ**,        )    *LIMINE* TO:
                                    )
13            Defendant.            )    (1)  EXCLUDE EVIDENCE OF PRIOR
                                    )         CRIMINAL ACTIVITY ASSOCIATED
14                                  )         WITH THE VEHICLE;
                                    )    (2)  PRECLUDE FRAGMENTED
15                                  )         PORTIONS OF POST ARREST
                                    )         STATEMENT;
16                                  )    (3)  EXCLUDE TESTIMONY ABOUT
                                    )         STREET VALUE;
17                                  )    (4)  EXCLUDE TESTIMONY ABOUT
                                    )         STRUCTURE;
18                                  )    (5)  EXCLUDE TESTIMONY ABOUT
                                    )         NERVOUSNESS;
19                                  )    (6)  PRECLUDE INTRODUCTION OF
                                    )         TECS HISTORY;
20                                  )    (7)  PRECLUDE EVIDENCE UNDER FRE
                                    )         404(B) AND 609;
21                                  )    (8)  EXCLUDE "MUG SHOT" PHOTOS;
                                    )    (9)  PRECLUDE POVERTY EVIDENCE;
22                                  )    (10) PRECLUDE GOVERNMENT
                                    )         VOUCHING;
23                                  )    (11) COMPEL SUPPLEMENTAL REPORTS;
                                    )    (12) PRECLUDE EXPERT TESTIMONY;
24                                  )    (13) PRECLUDE EVIDENCE NOT
                                    )         PRODUCED IN DISCOVERY.
25                                  )    (14) ALLOW ATTORNEY CONDUCTED
                                    )         VOIR DIRE;
26                                  )    (15) COMPEL GRAND JURY
                                    )         TRANSCRIPTS;
27                                  )    (16) PRECLUDE THE MARIJUANA FROM
                                    )         BEING BROUGHT TO THE TRIAL;
28 _____ )         AND
                                    )    (17) PRECLUDE SENDING THE
                                              INDICTMENT INTO THE JURY ROOM

**TO:    KAREN P. HEWITT, UNITED STATES ATTORNEY, AND**
**DAVID D. LESHNER, ASSISTANT UNITED STATES ATTORNEY**:

PLEASE TAKE NOTICE that on September 8, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, defendant, Benjamin Ochoa-Ramirez, by and through his attorneys, Hanni M. Fakhoury and Federal Defenders of San Diego, Inc., will ask this Court, pursuant to the United States Constitution, the Federal Rules of Evidence, and all other applicable statutes, case law, and local rules for an order to:

(1)    Exclude Evidence of Prior Criminal Activity Associated with the Vehicle;
(2)    Preclude Fragmented Portions of Post Arrest Statement;
(3)    Exclude Testimony about Street Value;
(4)    Exclude Testimony about Structure;
(5)    Exclude Testimony about Nervousness;
(6)    Preclude Introduction of Tecs History
(7)    Preclude Evidence under FRE 404(b) and 609;
(8)    Exclude "Mug Shot" Photos;
(9)    Preclude Poverty Evidence;
(10)   Preclude Government Vouching;
(11)   Compel Supplemental Reports;
(12)   Preclude Expert Testimony;
(13)   Preclude Evidence Not Produced in Discovery.
(14)   Allow Attorney Conducted Voir Dire;
(15)   Compel Grand Jury Transcripts;
(16)   Preclude the Marijuana from Being Brought to the Trial; and
(17)   Preclude Sending the Indictment into the Jury Room.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Respectfully submitted,

Dated: August 25, 2008

*s/ Hanni M. Fakhoury*
**HANNI M. FAKHOURY**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Ochoa-Ramirez

## CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon:

**DAVID D. LESHNER**
Assistant United States Attorney
880 Front Street
Room 6293
San Diego, CA 92101
(619) 557-5610
Fax: (619) 557-3445
Email: David.Leshner@usdoj.gov

Dated: August 22, 2008

/s/ *Hanni Fakhoury*
**HANNI M. FAKHOURY**
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
e-mail: Hanni_Fakhoury@fd.org

1  **HANNI M. FAKHOURY**
   California Bar No. 252629
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  Hanni_Fakhoury@fd.org

5  Attorneys for Mr. Ochoa-Ramirez

6

7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10                    **(HONORABLE WILLIAM Q. HAYES)**

11  UNITED STATES OF AMERICA,          )      CASE NO.: 08CR1637-WQH
                                       )
12              Plaintiff,             )      DATE: September 8, 2008
                                       )      TIME: 2:00 p.m.
13  v.                                 )
                                       )
14  **BENJAMIN OCHOA-RAMIREZ**,        )      STATEMENT OF FACTS AND
                                       )      MEMORANDUM OF POINTS AND
15              Defendant.             )      AUTHORITIES IN SUPPORT OF MOTIONS
    _____)

16

17                                   **I.**

18                          **STATEMENT OF FACTS**

19        On May 21, 2008, a two count indictment was handed down by the January 2007 Grand Jury

20  charging Mr. Ochoa-Ramirez with importing 50.58 kilograms of marijuana, in violation of 21 U.S.C.

21  §§ 952, 960 and possession of marijuana with intent to distribute, in violation of 21 U.S.C.§ 841(a)(1).

22                                   **II.**

23                          **MOTIONS *IN LIMINE***

24  **A.    Any Evidence of Prior Criminal Activity Associated With The Vehicle Mr. Ochoa-
           Ramirez Was Driving Must Be Excluded As Irrelevant And Prejudicial.**
25

26        According to the discovery provided by the government, the vehicle Mr. Ochoa-Ramirez was

27  driving, a 1998 Ford Windstar, had previously been used in an alien smuggling attempt. According to the

28  government's discovery, the vehicle had previously been registered to Jose Romero in Brawley, California.

1  On May 18, 2004, two undocumented individuals from China were found in the vehicle. The government

2  declined to prosecute the driver and passenger of the vehicle. On February 4, 2005, the vehicle was exported

3  by International Logistics Services to Arturo Alvarez-Echanove in Mexico.[1]

4      This evidence should be excluded as irrelevant and prejudicial under Federal Rules of Evidence

5  (hereinafter "FRE") 401, 402 and 403. This evidence is irrelevant because there is absolutely no connection

6  whatsoever between the prior criminal activity associated with this car four years ago, and the activity

7  Mr. Ochoa-Ramirez is on trial for here. This is highlighted by the fact that (1) the previous smuggling

8  attempt in 2004 involved bringing in undocumented aliens and not drugs, the contraband at issue here; (2)

9  there was a clear break in the vehicle's chain of ownership as it was likely seized by the federal government

10  following the 2004 arrest of the occupants of the car, auctioned to International Logistics Services and then

11  exported to an individual in Mexico; and (3) the government has not alleged any connection between

12  Mr. Ochoa-Ramirez and this prior smuggling attempt. Therefore this evidence is irrelevant and should be

13  excluded.

14      Furthermore the probative value of this evidence is substantially outweighed by its prejudicial effect.

15  FRE 403. If the jury were to hear this evidence, they would likely unreasonably infer that Mr. Ochoa-

16  Ramirez must have been involved in the drug smuggling he is charged with here simply because the car had

17  been previously used in a smuggling attempt despite the fact there is no evidence connecting Mr. Ochoa-

18  Ramirez with this previous smuggling venture. This evidence would also mislead the jury and create

19  confusion and distract from the only real issue at trial: whether Mr. Ochoa-Ramirez had knowledge of the

20  drugs in the car he was driving. Since the probative value of this evidence is substantially outweighed by

21  the danger of unfair prejudice, confusion of the issues and misleading the jury, it should be excluded under

22  FRE 403.

23  //

24  //

25

26

27  [1] Although the discovery does not indicate, Mr. Ochoa-Ramirez assumes that after prosecution was declined, the vehicle was seized by the federal government under 18 U.S.C. § 983 and sold at an auction, which is the typical procedure when a vehicle is used in criminal activity. Mr. Ochoa-Ramirez believes that

28  the government auctioned the car to International Logistics Serves who then exported the car to Mexico.

1  **B.    The Court Should Prevent the Government from Presenting Fragmented Portions of
    Mr. Ochoa-Ramirez's Post-Arrest Statements out of Context**.

2

3         The government may seek to introduce selected portions of Mr. Ochoa-Ramirez's recorded

4  statements.  Under the Rule of Completeness and Federal Rule of Evidence 106, if the government seeks

5  to introduce such fragmented testimony, the defense should be permitted to play additional portions of

6  Mr. Ochoa-Ramirez's statements to put into context the statements the government introduces.  See FED.

7  R. EVID. 106; United States v. Collicott, 92 F.3d 973, 982 (9th Cir. 1996).  Moreover, the defense should

8  be permitted to do so at the time the government's videotape is played for the jury.  The advisory committee

9  notes to Rule 106 specifically provide that: "[t]he rule is based on two considerations.  The first is the

10 misleading impression created by taking matters out of context.  The second is the inadequacy of repair

11 work when delayed to some point later in the trial."  FED. R. EVID. 106, adv. comm. notes.

12        Notwithstanding Rule 807, Rule 106 actually provides grounds to admit these statements -- one

13 would not need to rely upon Rule 106 if another independent hearsay exception existed.  United States v.

14 Sutton, 801 F.2d 1346, 1368-69 (D.C. Cir. 1986) ("Rule 106 can adequately fulfill its function only by

15 permitting the admission of some otherwise inadmissible evidence . . . . ").  In Phoenix Associates III v.

16 Stone, 60 F.3d 95, 102 (2d Cir. 1995), that court recognized the difference between documents admitted as

17 an exception to the hearsay rule and those admitted, absent an exception, pursuant to Rule 106.  Id.

18 ("Because Ambrosini testified that he prepared the work paper each year in the regular course of preparing

19 appellants' financial statements, and it was the regular practice of appellants' business to make such

20 documents, the work paper was admissible as a business record.  . . . . Further, because Stone's counsel

21 offered appellants' financial statements to establish that appellants themselves did not list a debt owed them

22 by Stone among their assets, the work paper likewise should have been admitted for substantive purposes

23 under Rule 106.").  This case was cited with approval in Collicott, 92 F.3d at 983.  See also United States

24 v. Pendas-Martinez, 845 F.2d 938, 944 & n.10 (11th Cir.1988) ("[T]here are conflicting Circuit Court

25 decisions on whether [Rule 106] makes admissible parts of a document that otherwise would be

26 inadmissible under the Rules of Evidence ....") (collecting cases);  I Hon. Joseph M. McLaughlin, Hon. Jack

27 B. Weinstein, & Margaret A. Berger, Weinstein's Fed. Evidence S 106.03[1], at 106-15 (2d ed.2001) (noting

28 that language of Rule 106 is ambiguous as to "whether it authorizes the admission of otherwise inadmissible

1    evidence").       Significantly, at the time of its drafting, the government attempted to include a clause in Rule

2    106 requiring admission of only otherwise admissible evidence but Congress failed to include such a

3    provision. See 21 Charles Alan Wright & Kenneth W. Graham, Jr., Fed. Practice & Procedure § 5071, at

4    337-40 (West 1977) (noting Congress' failure to take any action in response to the Justice Department's

5    request that a clause be added to Rule 106 to require "that evidence adduced under the Rule be otherwise

6    admissible").   Most importantly, if evidence was admissible pursuant to another hearsay exception, there

7    would be no need to resort to Rule 106 for admissibility.  Similarly, the fact that it would otherwise be

8    characterized as "hearsay" does not preclude its admission if admitted under a different rule, here Rule 106.

9    United States v. Abel, 469 U.S. 45, 56 (1984) ("[T]here is no rule of evidence which provides that testimony

10   admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible;  quite

11   the contrary is the case"); United States v. Sanchez-Robles, 927 F.2d 1070, 1078 (9th Cir. 1991) (same).

12       United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) does not compel a contrary result because

13   all it provides is that Rule 106 "'does not compel admission of otherwise inadmissible hearsay evidence'" --

14   that is true Rule 106 only permits introduction of evidence "which ought in fairness to be considered

15   contemporaneously" with other evidence.  See id.  Second, Ortega did not address the argument that Rule

16   106 would be unnecessary unless it was intended to admit otherwise inadmissible evidence, and finally,

17   Ortega did not reverse the district court's evidentiary ruling precluding cross-examination regarding the

18   defendant's exculpatory statements because Ortega "testified to the statements himself," so the

19   government's presentation "did not distort the meaning of Ortega's statements . . . ." Id. at 683.  If the Court

20   does not permit introduction of any appropriate additional portions of the videotaped statement during the

21   government's case, they should be admitted during the defense case.  See id.  However, as the advisory

22   committee to Rule 106 noted, such delayed repair work is inadequate.  See FED. R. EVID. 106, adv. comm.

23   notes.

24       In United States v. Li, 55 F.3d 325, 329-30 (11th Cir. 1995) (citing United States v. Haddad, 10 F.3d

25   1252, 1258 (7th Cir. 1993)), that court, in applying the Rule of Completeness, discussed traditional

26   considerations in that context, including whether: (1) the entire statement explains evidence, (2) places the

27   admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding

28   of the evidence. Li, 55 F.3d at 329-30.  Here, these factors all favor admission of the entire statement.  In

other words, the jury is entitled to hear the proper context of any of Mr. Ochoa-Ramirez's statements the government may use.  See also United States v. Castillo, 14 F.3d 802, 806 (2d Cir. 1994) (use of prior consistent statements "'is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent statement.  It matters not whether such use is deemed a permissible type of rehabilitation or only an invocation of the principles of completeness, though not a precise use of Rule 106) (quotation omitted).[2]

**C.**     **Any Proposed Expert Testimony Addressing the Street Value of Marijuana Must Be Excluded.**

     **1.**     **Any Testimony Asserting that Mr. Ochoa-Ramirez Must Have Possessed Knowledge of the Marijuana in the Vehicle Because of its Supposed Street Value Violates FRE 704 and Must be Excluded.**

FRE 704 provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Ninth Circuit case law does not limit this rule to psychiatric witnesses; rather, it applies any time an expert seeks to opine on a defendant's knowledge, willfulness, or other mental state.  See United States v. Morales, 108 F.3d 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses"); United States v. Webb, 115 F.3d 711, 722 (9th Cir. 1997) (holding it impermissible under FRE 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons concealed in car.).

Any proposed expert who would opine -- directly or indirectly -- that Mr. Ochoa-Ramirez must have known that his vehicle contained marijuana testifies as to his mental processes or condition.  Whatever the form, the government may not use the trappings of "expertise" to bolster speculation on Mr. Ochoa-Ramirez's alleged knowledge.  This testimony is expressly forbidden by FRE 704 and by Ninth Circuit law.  Accordingly, an order in limine must be granted excluding this testimony.

---

[2] In this case, the government has not provided the defense with a translated transcription of Mr. Ochoa-Ramirez's statement, which is in Spanish.  Given this lack of notice, it seems the government is not planning to try to introduce the any portions of his statements.

**2.    Rule 403 Prohibits Street Value Testimony in Any Event.**

Even assuming that this testimony were otherwise admissible, Rule 403 prohibits expert testimony on the street value of marijuana at trial.  According to the government's typical argument, this testimony is relevant because drug trafficking organizations would not entrust this "valuable commodity" to an unknowing person.  This reasoning rests on rank speculation as to the mental processes of unknown persons.  The government cannot simply proffer evidence on what these vague and unknown "drug traffickers" would or would not do in a given situation.  There is virtually no probative value in this proposed testimony.

In contrast, this testimony will result in substantial prejudice to Mr. Ochoa-Ramirez.  The sheer monetary value of this marijuana could inflame the passions of the jury, and distract them from Mr. Ochoa-Ramirez's lack of knowledge -- the true issue in this case.  The amount of money at stake could well suggest that a vast drug empire is implicated here; indeed, this inference is a key premise in the government's relevance argument.  This insinuation, however, has no evidentiary support and is not relevant.  Beyond the government's attenuated and factually unsupported argument that the value of these drugs demonstrates the defendant's knowledge, absolutely no probative value exists in this testimony.  The prejudice, in contrast, is extreme.  This testimony should therefore be independently excluded under FRE 403.

**3.    If Necessary, Mr. Ochoa-Ramirez Will Stipulate that This Marijuana is a Distributable Amount.**

If the government argues that the value of the marijuana is relevant to establish that it was a distributable amount, Mr. Ochoa-Ramirez is prepared to stipulate under Old Chief v. United States, 519 U.S. 172 (1997), that the amount involved here is a distributable amount to avoid the inevitable prejudicial impact of this evidence.

**D.    This Court Should Exclude Any Expert Testimony Describing the Structure of Supposed Drug Smuggling Organizations, as it Is Irrelevant, Improper under FRE 702 and 703, and Unduly Prejudicial under FRE 403.**

Under United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), and United States v. McGowan, 274 F.3d 1251 (9th Cir. 2001), structure testimony may not be permitted at trial.  This sort of "expert" testimony not only fails the balancing test set forth by FRE 403, but also is literally irrelevant and an abuse of discretion under FRE 401.  Vallejo 237 F.3d at 1017.  The same problem exists with any organizational structure evidence in this case.  The government has not charged Mr. Ochoa-Ramirez with conspiracy.  No

1  evidence whatsoever suggests that a vast drug trafficking network played any role in the instant offense.

2  Any attempt, then, to connect Mr. Ochoa-Ramirez to a vast drug empire that has not been alleged and has

3  not been proven violates FRE 401, 403, and Ninth Circuit case law.  A motion in limine excluding such

4  evidence should be granted accordingly.

5  **E.    Evidence of Alleged "Nervous" Behavior Is Inherently Unreliable, Misleading, and
        Inadmissible under FRE 403, 702, and 703.**

6

7         It is anticipated that the government will call witnesses at trial to assert that Mr. Ochoa-Ramirez

8  appeared "nervous" at the port of entry, and that this evidence somehow bears on whether he knew

9  marijuana was concealed in the vehicle he was driving. This testimony is bereft of probative value, is overly

10  prejudicial, and should be excluded pursuant to Federal Rule of Evidence 403.  Moreover, there is no proper

11  foundation for such lay witness opinion testimony pursuant to Federal Rule of Evidence 701.  It should be

12  excluded as a result.

13         **1.    Testimony That Mr. Ochoa-Ramirez Appeared "Nervous", If Used to
              Suggest Knowledge, Is Substantially More Prejudicial Than Probative
14            Under FRE 403 and Should be Excluded.**

15         Federal Rule of Evidence 403 requires the Court to exclude  proposed evidence if the "[p]robative

16  value is substantially outweighed by danger of unfair prejudice."   This is such a case.

17         When a lay witness has had no background contact with a person, speculation as to whether they

18  appeared nervous has minimal, if any, probative value.  See United States v. Wald, 216 F.3d 1222, 1227

19  (10th Cir.2000) (en banc) (evidence of  nervousness "is of limited significance"[,] "particularly when [the

20  agent] had no prior acquaintance with the [defendant].");  United States v. Fernandez, 18 F.3d 874, 879 (10th

21  Cir.1994) ("We have repeatedly held that nervousness is of limited significance . . . and that the

22  government's repetitive reliance on the nervousness . . . must be treated with caution"); see also  Gall v.

23  Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and "not

24  nervous" reversible error because -- "we have long been skeptical of such lay testimony"); United States

25  v. Smith, 437 F.2d 538, 540-41 (6th Cir. 1970)(lay testimony as to mental state lacks probative value when

26  a witness's "direct knowledge of the defendant is brief and superficial.").

27         Vague allusions to "nervousness" reveal little meaningful evidence in a criminal trial because, as

28  courts nationwide recognize, people confronted with law enforcement often exhibit these signs without

1    having done anything wrong.  See United States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001)

2    ("[N]ervousness during a traffic stop–even  . . . extreme nervousness . . . in the absence of other

3    particularized, objective factors, does not support a reasonable suspicion of criminal activity . . . ."); United

4    States v. Fuentes-Cariaga, 209 F.3d 1140, 1142 (9th Cir. 2000) (recognizing that "drivers stopped at the

5    border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted

6    by an authority figure and another being fear of getting caught with contraband the person knows he is

7    carrying"); Wald, 208 F.3d at 907 (it is not uncommon for most citizens, even innocent ones, to exhibit signs

8    of "innocuous" nervousness when confronted by a law enforcement); United States v. Wood, 106 F.3d 942,

9    947 (10th Cir. 1997) ("[i]t is certainly not uncommon for most citizens--whether innocent or guilty--to

10   exhibit signs of nervousness when confronted by law enforcement officer."); Fernandez, 18 F.3d at 879

11   (same); United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir. 1992) (same); United States v. Grant,

12   920 F.2d 376, 386 (6th Cir. 1990) ("[n]ervousness is entirely consistent with innocent behavior"); United

13   States v. Andrews, 600 F.2d 563, 566, n.4 (6th Cir. 1979) (noting inconsistent rationales taken by

14   government in explaining nervousness).

15        Thus, courts across the country recognize that alleged "nervousness" can stem from any number of

16   sources, and can be easily misinterpreted by persons not familiar with a given defendant.  Because the

17   government is trying to infer guilt from the nervousness at issue here, and because the border agents who

18   witnessed Mr. Ochoa-Ramirez had never met him before, this testimony carries little probative weight.

19        In contrast, substantial potential for prejudice exists.  Upon hearing from a law enforcement agents

20   that Mr. Ochoa-Ramirez was "nervous," the jury will be inclined to assume his guilt instead of an equally

21   plausible innocent explanation.  Indeed, this logical leap is the precise reason that the government

22   continually seeks to introduce such testimony.  All told, any proposed testimony that Mr. Ochoa-Ramirez

23   displayed signs of nervousness is irrelevant to the issue at hand and should be excluded under Federal Rule

24   of Evidence 403 as being substantially more prejudicial than probative.

25        **2.  Admission of Nervousness Testimony Violates FRE 701.**

26        Finally, such evidence should be excluded if it is couched in terms of an agent's personal opinion

27   about Mr. Ochoa-Ramirez's mental state -- i.e., "he was nervous."  The agent's personal opinion as to

28   Mr. Ochoa-Ramirez's mental state is irrelevant; this conjecture also rests on no prior knowledge of the

1  defendant and upon a very limited observation.  As such, it violates Rule 701.  In <u>Gonzalez-Rivera v. INS</u>,

2  22 F.3d 1441 (9th Cir. 1994), this Circuit held that an INS agent's testimony at a suppression hearing that

3  an individual was nervous must be disregarded because it was not based upon "reliable, objective evidence."

4  <u>Id.</u> at 1447.  There, when explored, the basis for the agent's testimony was that the individual appeared to

5  have a "dry mouth."  The court stated that absent reliable, objective testimony that people who are nervous

6  have a dry mouth, as opposed to just being thirsty, this inference was nothing more than "subjective feelings

7  [which] do[] not provide any rational basis for separating out the illegal aliens from the American citizens

8  and legal aliens."  <u>Id.</u>  Likewise the testimony in the instant case that Mr. Ochoa-Ramirez is "nervous" is

9  nothing more than a subjective judgment based upon no prior knowledge of an individual and, similarly,

10  should not be considered by the jury.  In any event, under no circumstances should the government witness'

11  be allowed to opine that Mr. Ochoa-Ramirez knew that drugs were concealed in the vehicle he was driving.

12  This testimony would directly violate FRE 701, and amounts to nothing but speculation.  Accordingly, this

13  motion in limine should be granted .

14  **F.**  **This Court Should Preclude the Government  from Introducing TECS History**.

15  In order to admit TECS evidence, the government must lay a proper foundation under Federal Rule

16  of Criminal Procedure Rule 16, Rules 404(b) and 702, the hearsay rules and the Confrontation Clause of

17  the Sixth Amendment.  Mr. Ochoa-Ramirez's position is that, in either the government's case-in-chief or

18  in rebuttal, TECS evidence is inadmissible because:  1) it is undisclosed Rule 404(b) evidence; 2) it is

19  undisclosed expert testimony; 3) there is no hearsay exception on which the government can rely; and 4)

20  the government cannot demonstrate the reliability of the TECS system.  <u>See</u> <u>United States v. Orozco</u>, 590

21  F.2d 789, 792-93 (9th Cir. 1979) (to admit TECS documents under Rule 803(8), the TECS system's

22  reliability must be demonstrated).[3]

23  ────────────────

24  [3.] Mr. Ochoa-Ramirez contends that <u>Orozco</u> is wrong, and this Court should not follow it.  Even
the panel decision recognizes that it conflicts with the plain language of Rule 803(6), <u>see id.</u> 590 F.2d at 792

25  ("noting that Rule 803(8) provides that its scope "exclud[es], however in criminal cases matters observed
by police officers and other law enforcement personnel . . ." and noting that "the customs inspector is one

26  of the 'law enforcement personnel' included in rule 803(8)").  Government reports, which these are, are
inadmissible under the public records exception.  FED. R. EVID. 803(8)(c), Advisory Comm. Note ("they

27  are admissible only in civil cases and against the government in criminal cases in view of the almost certain
collision with confrontation rights which would result from their use against the accused in a criminal

28  case"); <u>see also</u> <u>United States v. Oates</u>, 560 F.2d 45 (2d Cir. 1977) (cited in the FED. R. EVID. commentary

1

**1.      TECS Testimony Is Undisclosed Rule 404(b) Evidence.**

2        The Ninth Circuit recognizes that prior border crossings are considered prior act evidence and are,

3  thus, subject to Rule 404(b) analysis.  United States v. Vega, 188 F.3d 1150, 1153 (9th Cir. 1999)

4  ("evidence of Vega's prior border crossings and bank deposits is "other acts" evidence subject to the

5  provisions of Rule 404(b)").  In Vega, the Court noted that "[a]s an initial matter, we note that this rule

6  applies to all 'other acts,' not just bad acts.  Thus, despite the fact that there is nothing intrinsically improper

7  about Vega's prior border crossings . . . they are nonetheless subject to 404(b)."  Id.

8        The government here has not given any notice of its intent to introduce TECS evidence under both

9  Federal Rule of Criminal Procedure 16(a)(1)(G) and Rule 404(b) of the Federal Rules of Evidence.

10  Although Mr. Ochoa-Ramirez requested the government disclose all TECS reports and any other 404(b)

11  evidence in his June 23, 2008 motions, see Docket #10 at 4:3, thus far Mr. Ochoa-Ramirez has not received

12  any TECS data.  If the government now wishes to introduce this as some sort of Rule 404(b) evidence in

13  his case, he must disclose the data to Mr. Ochoa-Ramirez to review prior to trial, establish the link to

14  Mr. Ochoa-Ramirez and the relevance to the theory of prosecution, as well as satisfy the strictures of Rule

15  404(b).

16

**2.      TECS Testimony is Undisclosed Expert Testimony.**

17        In this case, any TECS evidence would also constitute undisclosed expert testimony.  Even though

18  the government witness through which the government would seek to admit TECS evidence would not be

19  rendering an "opinion," this does not remove this testimony from the realm of "expert testimony."  The law

20  provides to the contrary.  According to Rule 702, the assumption that "experts testify only in the form of

21  opinions . . . is logically unfounded."  See FED. R. CRIM. P. 702 Advisory Committee's Note.  Rule 702

22  similarly provides that expert testimony can be based on "specialized knowledge," and cases indicate that

23

24  expressly discusses the Rules 803(6) and 803(8) interplay and finds government reports inadmissible under
     both).

25        In addition, the inadmissibility of these documents under Rule 803(8)(c) cannot be cured by offering

26  them pursuant to Rule 803(6).  Rule 803(6) does not, by its terms, "apply to [investigations made pursuant
     to authority granted by law and the] findings of agencies and offices of the executive branch," United States

27  v. Jones, 29 F.3d 1549 (11th Cir. 1994); as does Rule 803(8)(c).  It is "inappropriate" to rely upon the
     business records exception when the language of Rule 803(8)(c) is clearly applicable. United States v. Sims,

28  617 F.2d 1371, 1377 (9th Cir. 1980); Alexander, The Hearsay Exception for Public Records in Federal
     Criminal Trials, 47 Alb. L. Rev. 699, 716-17 (1983).

1   the amendments to Rules 701 and 702 were made so as to prevent litigants from avoiding the expert witness

2   disclosure requirements by labeling individuals as fact or laywitnesses and not soliciting "opinion"

3   testimony.  See In re Illusions Holdings, Inc., 189 F.R.D. 316 (S.D.N.Y. 1999).  The Complaint Illusions

4   case involved a negligence claim surrounding a scuba diving accident.  Defendants listed two witnesses who

5   knew nothing about the facts and circumstances of the case, but purported to know much about scuba

6   diving.  Plaintiff argued that their testimony was expert testimony and sought to exclude it.  Even though

7   the testimony was factually based and the witnesses would merely describe things related to scuba diving,

8   the court held that it was expert testimony because it was based upon the specialized knowledge related to

9   scuba diving, testified to by individuals who otherwise had no connection to the case.  Id.

10       Similarly, any testimony by a Customs Officer that his or her training equipped him or her to render

11   an opinion on what the TECS information signified would constitute undisclosed expert testimony, the

12   reliability of which has never been litigated, under Federal Rule of Criminal Procedure 16 and Kumho Tire

13   Co. v. Carmichael, 526 U.S. 137 (1999).  Furthermore as detailed below, the government has not provided

14   Mr. Ochoa-Ramirez any notice of its intent to use expert testimony as required by Federal Rule of Criminal

15   Procedure 16(a)(1)(E) and thus any testimony about TECS must be excluded because of lack of notice.

16   **G.**   **The Court Should Preclude the Government from Introducing Evidence under**
         **Federal Rule of Evidence 404(b) and 609.**

17

18       Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance

19   of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce.  FRE 404(b).  The notice

20   requirement is triggered when timely requested by the defendant.  United States v. Vega, 188 F.3d 1150,

21   1154 (9th Cir. 1999).  Here, Mr. Ochoa-Ramirez  timely requested notice of proposed 404(b) evidence in

22   his motion to compel discovery, filed on June 23, 2008.  Mr. Ochoa-Ramirez specifically requested the

23   Government to provide notice of such evidence at least three (3) weeks prior to trial.  Id.  To date, the

24   government has not provided *any* notice of specific evidence that it might seek to introduce under this rule.

25   As a result, Mr. Ochoa-Ramirez requests that this Court preclude introduction of any evidence of other

26   crimes, wrongs, or acts under Rule 404(b).

27

28

1    If the government provides tardy notice of the intent to use an offense under FRE 404(b) or

2  impeachment evidence under 609, Mr. Ochoa-Ramirez  requests the opportunity to address the

3  government's use of the past act before trial.

4  **H.    Introduction of "Mug Shots" of Mr. Ochoa-Ramirez Are Highly Prejudicial Without
         Adding Any Probative Value to this Trial, Thus Meriting Exclusion under FRE 403.**

5

6    Discovery documents provided in this case include some "mug shot"-style pictures of Mr. Ochoa-

7  Ramirez taken while he was in custody.  These pictures have no place at this trial.  This is not an identity

8  case: Mr. Ochoa-Ramirez does not dispute that he is the individual arrested at the port of entry.

9  Accordingly, these pictures have no probative value.  In contrast, however, their appearance automatically

10 puts one in mind of a criminal, and is not unlike forcing a defendant to wear jail-issued clothing while in

11 trial.  Under FRE 403, these pictures are highly prejudicial and devoid of probative value.  They should be

12 excluded from trial as a result.

13 **I.    The Court Should Exclude Poverty Evidence.**

14    It is impermissible for the prosecution to elicit testimony or to comment in any fashion upon the

15 difficult financial circumstances of the defendant.  Such comments regarding poverty are forbidden.  United

16 States v. Romero-Avila, 210 F.3d 1017, 1022 n.2 (9th Cir. 2000).  Specifically, Mr. Ochoa-Ramirez seeks

17 to exclude references to the amount of money found on his person at the time of his arrest.

18    Even before the Romero-Avila case, this Circuit had concluded as much.  In United States v.

19 Mitchell, 172 F.3d 1104 (9th Cir. 1999), the defendant was convicted of bank robbery and, at trial, the

20 prosecution offered evidence that the defendant was poor to prove the defendant's motive to commit the

21 bank robbery.  In reversing the conviction, the court stated that:

22    Poverty as proof of motive has in many cases little tendency to make theft
       more probable.  Lack of money gives a person an interest in having more.
23    But so does desire for money, without poverty.  A rich man's greed is as
       much a motive to steal as a poor man's poverty.  Proof of either, without
24    more, is likely to amount to a great deal of unfair prejudice with little
       probative value.

25

26 Id. at 1108-09.  To be admissible, the court stated that the poverty evidence must be accompanied by

27 something more, such as an "unexplained, abrupt change in circumstances."  Id. at 1108-09.  Ninth Circuit

28 precedent suggests that poverty evidence is only admissible if accompanied by evidence of a specific and

1    immediate financial need.  See United States v. Jackson, 882 F.2d 1444, 1453 (9th Cir. 1989) (Reinhardt,

2    J., dissenting); see also id. at 1450 (majority opinion) (noting that "poverty alone does not indicate a motive

3    to commit, or the commission of, a crime"); see also United States v. Bensimon, 172 F.3d 1121, 1129 (9th

4    Cir. 1999) (fact that defendant in bankruptcy at time crime committed does not demonstrate particular need

5    for money); Mitchell, 172 F.3d 1104, 1108-09 (9th Cir. 1999) (evidence of poverty, absent "an unexplained

6    abrupt change of circumstances," is inadmissible to prove motive); United States v. Grissom, 645 F.2d 461,

7    469 n.11 (5th Cir. 1981) ("[I]t is almost always grossly improper for any lawyer representing the

8    United States government to comment on the *indigency* of a defendant") (emphasis added).

9         "Poverty comments" may not be made even when the evidence commented upon is admitted by the

10    defense.  Romero-Avila, 210 F.3d 1017, 1022 and n.2 (9th Cir. 2000).  Romero-Avila specifically rejected

11    the very argument that the defendant is barred from challenging comments upon improper poverty testimony

12    because he elicited it during cross-examination, and held that the government's comments were plain error.

13    As such, regardless of any evidence proffered by the defendant as to his financial circumstances, any

14    reference to the defendant's financial situation must be excluded.

15    **J.**    **The Court Should Preclude the Prosecution and its Witnesses from Impermissibly Vouching at Trial.**

16

17         Impermissible vouching must not be allowed during the government's case-in-chief, rebuttal or

18    during the government's closing argument.  "Vouching consists of placing the prestige of the government

19    behind a witness through personal assurances of the witness's veracity, or suggesting that information not

20    presented to the jury supports the witness's testimony" See United States v. Necoechea, 986 F.2d 1273,

21    1276 (9th Cir.1993).  The Supreme Court has held:

22         The prosecutor's vouching for the credibility of witnesses and expressing his personal
          opinion concerning the guilt of the accused pose two dangers: such comments can convey
23         the impression that evidence not presented to the jury, but known to the prosecutor, supports
          the charges against the defendant and can thus jeopardize the defendant's right to be tried
24         solely on the basis of the evidence presented to the jury; *and the prosecutor's opinion
          carries with it the imprimatur of the Government and may induce the jury to trust the
25         Government's judgment rather than its own view of the evidence.*

26    Berger v. United States, 295 U.S. 78, 88-89 (1935).  Similarly, the Ninth Circuit has "consistently cautioned

27    against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the

28

1  jury . . . ." United States v. Weatherspoon, 410 F.3d 1142, 1149 (9th Cir. 2005).  As the Ninth Circuit has

2  explained:

> 3  A prosecutor may not urge jurors to convict a criminal defendant in order to protect
> community values, preserve civil order, or deter future lawbreaking. The evil lurking in such
> 4  prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant
> to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by
> 5  convicting a defendant, they will assist in the solution of some pressing social problem. The
> amelioration of society's woes is far too heavy a burden for the individual criminal
> 6  defendant to bear.

7  United States v. Koon, 34 F.3d 1416, 1443 (9th Cir.1994), quoting United States v. Monaghan, 741 F.2d

8  1434, 1441 (D.C. Cir.1984).

9      It is also impermissible for government agents to vouch for themselves or each other.  In United

10  States v. Rudberg, 122 F.3d 1199, 1204 (9th Cir. 1997), the Ninth Circuit held that vouching can occur

11  through the testimony of a government agent because the jury might easily identify the agent's position with

12  the integrity of the United States.  In fact, the Court noted that when that happens, vouching occurs in a

13  "very powerful form."  Id.  Mr. Ochoa-Ramirez requests the Court prohibit such impermissible vouching

14  in his trial to ensure its fairness.

15  **K.    This Court Should Order Production of "Supplemental Reports."**

16      Mr. Ochoa-Ramirez requests disclosure of any "supplemental reports" generated in this case.  These

17  reports generally memorialize later investigation of the case and can include information that confirms a

18  defendant's statements made at the border.  Mr. Ochoa-Ramirez believes that such a report is discoverable

19  under Brady and Rule 16.  Additionally, pre-trial disclosure will avoid unnecessary delay at trial should the

20  reports become producible under the Jencks Act.  See, e.g., FED. R. CRIM. P. 26.2(d).  If the government

21  contends that any "supplemental report" generated in this case is not discoverable, Mr. Ochoa-Ramirez

22  requests that the Court view this report *in camera.*

23  **L.    This Court Should Preclude Expert Testimony Because Mr. Ochoa-Ramirez Was Not
         Given Notice as Required by Federal Rule of Criminal Procedure 16(a)(1)(e).**

24

25      Federal Rule of Criminal Procedure 16(a)(1)(G) mandates that "[a]t the defendant's request, the

26  government shall disclose to the defendant a written summary of testimony that the government intends to

27  use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The

28  summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons

1   for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing,

2   continuing prior to and during trial. FED. R. CRIM. P. 16(c). When a party fails to comply with the

3   discovery rules set forth in Rule 16, exclusion is a proper remedy. FED. R. CRIM. P. 16(d)(2)(c). See also

4   Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in

5   1993, the defense is *entitled* to disclosure of certain information about expert witnesses which the

6   government intends to call during the trial" (emphasis added).

7         Mr. Ochoa-Ramirez filed a Motion to Compel Discovery on June 23, 2008, which requested that the

8   government disclose its expert witnesses per Rule 16. (Def.'s Mot. to Compel. Disco., Doc. # 10 at 4:17).

9   Thus far, the government has not given any notice regarding expert testimony. This Court therefore should

10  exclude any expert witness from testifying in order to give effect to the discovery requirements of Rule 16

11  and afford Mr. Ochoa-Ramirez the opportunity to prepare his defense.

12  **M.**    **The Court Should Preclude Admission of Documents Not Yet Produced in Discovery,**
          **and Should Require the Government to Comply with the Notice Requirements of Rule**
13        **12(b)(4)(B).**

14         Mr. Ochoa-Ramirez has made a number of discovery requests in this case, including a request for

15  production of relevant documents. See FED. R. CRIM. P. 16(a)(1)(E). He now moves that the Court prohibit

16  introduction at trial of any documents not yet produced in discovery. Section (d)(2) of Rule 16 allows this

17  Court to impose sanctions when a party fails to comply with Rule 16. Specifically, under Rule 16(d)(2)(C),

18  this Court can "prohibit that party from introducing the undisclosed evidence." Furthermore, pursuant to

19  Federal Rule of Criminal procedure 12(b)(4)(B), Mr. Ochoa-Ramirez requests that the Court order the

20  government to provide him with prompt notice of its intention to use any discoverable evidence in its case-

21  in-chief.

22  **N.**    **Mr. Ochoa-Ramirez's Counsel Should Have the Opportunity to *Voir Dire* the Jury.**

23         Pursuant to FED. R. CRIM. P. 24(a), to provide effective assistance of counsel and to exercise

24  Mr. Ochoa-Ramirez's right to trial by an impartial jury, defense counsel requests the opportunity to

25  personally *voir dire* the prospective members of the jury. Mr. Ochoa-Ramirez is not asking for hours of

26  the Court's time; rather, he is requesting a discreet opportunity to inquire into important issues that

27  commonly arise in such a case. He is fully prepared to submit all proposed questions in advance for the

28  Court's review.

1  **O.    This Court Should Compel Production of the Grand Jury Transcripts.**

2    The Court should make the grand jury transcripts available when the defense can show a

3  particularized need.  There is a particularized need in this case if a witness who testified before the

4  grand jury will also testify at the trial of Mr. Ochoa-Ramirez.  The government must produce a transcript

5  of a witness' testimony before the grand jury following the direct examination of the witness at trial.  18

6  U.S.C. § 3500; Dennis v. United States, 384 U.S. 855 (1966); FED. R. CRIM. P. 26.2(f)(3).  The defense

7  requests that the government make such transcripts available in advance of trial to facilitate the orderly

8  presentation of evidence and to remove any need for a recess in the proceedings for defense counsel to

9  examine the statement pursuant to Federal Rule of Criminal Procedure 26.2(d).

10    Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent

11  with the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence.

12  See Giglio v. United States, 405 U.S. 150 (1972).  As discussed above, such evidence would be admissible

13  as an adoptive admission pursuant to Rule 801(d)(2)(b).  At a minimum, this court should conduct an *in*

14  *camera* review of the grand jury testimony and order the transcript produced if it contains any testimony

15  that might be Brady material or otherwise subject to production as explained above.

16  **P.    The Presence of Marijuana in the Courtroom Is Highly Prejudicial, Minimally**
    **Probative at Best, and Thus Properly Excluded under FRE 403.**
17

18    At trial, the government may attempt presenting the actual bags of marijuana seized to the jury. In

19  this particular case, in which Mr. Ochoa-Ramirez 's knowledge of the drugs is the only contested issue, this

20  evidence is highly inflammatory yet has virtually no probative value as to any fact in dispute.  It must be

21  excluded under FRE 403.

22    FRE 403 asserts that "[a]lthough relevant, evidence may be excluded if its probative value is

23  substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,

24  or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

25  Presentation of the marijuana seized in this case to the jury runs afoul of this evidentiary rule.

26    Because the presence of the marijuana seized is undisputed in this case, there is simply no reason

27  to bring this physical evidence into the courtroom.  This lack of probative value, however, stands in contrast

28  to the highly prejudicial nature of this contraband.  Many jurors will no doubt be scandalized by the sheer

1  volume of drugs involved in this case.  In sum, this evidence proves no issue that is in dispute, yet threatens

2  to badly prejudice Mr. Ochoa-Ramirez.  For these reasons, Mr. Ochoa-Ramirez respectfully requests that

3  this evidence be excluded from trial.

4  **Q.    The Court Should Not Send the Indictment into the Jury Room During Deliberations.**

5         In the commentary to Model instruction 3.2.1, "Charge Against Defendant Not Evidence," the

6  Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly

7  recommends that the Indictment not be sent into the jury room during deliberations.  The commentary

8  observed that neither the Federal Rules of Criminal Procedure nor case law require sending a copy of the

9  indictment to the jury room because the indictment is not evidence.

10        Mr. Ochoa-Ramirez urges this Court to follow the Committee's guidance.  The language in the

11  instant Indictment intentionally mirrors the language of the charged statutes.  Accordingly, jurors could be

12  improperly persuaded by the similarities between the Indictment allegations and the elements of the crime.

13  Because the Indictment is not evidence, but could potentially be mistaken for such, this document should

14  not be permitted into the jury room during deliberations.[4]

15                                                **III.**

16                                         **CONCLUSION**

17        For the foregoing reasons, Mr. Ochoa-Ramirez respectfully requests that the Court grant the above

18  motions in limine.

19                                      Respectfully submitted,

20

21  Dated: August 25, 2008                *s/ Hanni M. Fakhoury*
                                          **HANNI M. FAKHOURY**
22                                        Federal Defenders of San Diego, Inc.
                                          Attorneys for Mr. Ochoa-Ramirez
23

24

25

26

27        [4] Should the Court allow a copy of the indictment to be sent to the jury room, the Court should
    caution the jury that the indictment is not evidence.  See United States v. Utz , 886 F.2d 1148, 1151-52 (9th
28  Cir. 1989).

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon:

**DAVID D. LESHNER**
Assistant United States Attorney
880 Front Street
Room 6293
San Diego, CA 92101
(619) 557-5610
Fax: (619) 557-3445
Email: David.Leshner@usdoj.gov

Dated: August 25, 2008

/s/ *Hanni Fakhoury*
**HANNI M. FAKHOURY**
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
e-mail: Hanni_Fakhoury@fd.org