1   KAREN P. HEWITT
    United States Attorney
2   DAVID D. LESHNER
    Assistant U.S. Attorney
3   California State Bar No. 207815
    Federal Office Building
4   880 Front Street, Room 6293
    San Diego, California 92101-8893
5   Telephone: (619) 557-7163
    David.Leshner@usdoj.gov
6
    Attorneys for Plaintiff
7   United States of America

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 10   UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-CR-1637-WQH |
| 11              Plaintiff, | ) ) | DATE:   September 8, 2008 |
| 12       v. | ) ) | TIME:    2:00 p.m. |
| 13   BENJAMIN OCHOA-RAMIREZ, | ) ) | **UNITED STATES' NOTICE OF MOTIONS AND MOTIONS IN LIMINE TO:** |
| 14              Defendant. | ) ) | |

**(A) ADMIT EXPERT TESTIMONY;**
**(B) ADMIT DEMEANOR EVIDENCE;**
**(C) LIMIT CHARACTER EVIDENCE;**
**(D) PRECLUDE EVIDENCE OF DURESS AND NECESSITY;**
**(E) PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, FINANCES, EDUCATION, AND POTENTIAL PUNISHMENT;**
**(F) EXCLUDE TESTIMONY OF DEFENDANT'S DAUGHTER;**
**(G) PROHIBIT SELF-SERVING HEARSAY; AND**
**(H) EXCLUDE ALL WITNESSES EXCEPT THE CASE AGENT;**

24      COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

25   Karen P. Hewitt, United States Attorney, and David D. Leshner, Assistant United States Attorney, and

26   hereby files its motions in limine. Said motions are based upon the files and records of this case

27   together with the attached memorandum of points and authorities.

28   / / /

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I

3

### STATEMENT OF THE CASE

4      On May 27, 2008, defendant Benjamin Ochoa-Ramirez  was arraigned on a two-count

5  Indictment charging him with importation of marijuana and possession of marijuana with intent to

6  distribute, in violation of 21 U.S.C. §§ 841(a)(1), 952 and 960.  Defendant entered a plea of not guilty.

7

### II

8

### STATEMENT OF FACTS

9  **A.    Defendant's Apprehension**

10      On May 11, 2008, Defendant entered the United States from Mexico through the Calexico, CA

11  West Port of Entry as the driver and sole occupant of a 1999 Ford Windstar.  At primary inspection,

12  CBP Officer W. Gerhart noticed that Defendant's hand was shaking when Defendant provided his

13  border crosser card and that Defendant avoided eye contact during their encounter.  In response to

14  Officer Gerhart's questioning, Defendant asserted that the vehicle belonged to "a friend."  Officer

15  Gerhart observed that the glove compartment contained only the vehicle registration and was otherwise

16  empty.  Further, there was only one key on the ignition ring.  Based on these observations, Officer

17  Gerhart elected to refer Defendant's vehicle to secondary inspection.

18      At secondary inspection, CBP Officer L. Parker observed Defendant's nervous demeanor.

19  Defendant informed Officer Parker that the vehicle belonged to a friend and that he was en route to a

20  swap meet.

21      A narcotic and human detector dog alerted to the right side rear quarter panel of the vehicle.

22  Subsequent inspection revealed 50 packages of marijuana concealed throughout the vehicle. The total

23  weight of the marijuana was approximately 50.58 kilograms.

24  **B.    Defendant's Post-Arrest Statement**

25      Defendant received Miranda warnings and agreed to make a statement.  He denied knowledge

26  of the marijuana in the vehicle.  According to Defendant, he was to be paid 200 pesos to pick up

27  someone at the Santo Thomas swap meet.  Defendant further stated that he had crossed the vehicle into

28  the United States on two prior occasions.

1

**III**

2

**MOTIONS IN LIMINE**

3 **A.   THE COURT SHOULD ADMIT EXPERT TESTIMONY BY UNITED STATES**

4     **1.   Introduction**

5     The United States will introduce expert testimony in its case-in-chief regarding (1) the substance

6 concealed in Defendant's car was marijuana; (2) the value of the marijuana; and (3) the quantity of

7 marijuana as consistent with an amount intended for distribution rather than for personal use.

8 Specifically, a forensic chemist from the Drug Enforcement Administration will provide expert

9 testimony to identify the substance as marijuana. A Special Agent with the United States Immigration

10 and Customs Enforcement will testify as an expert in the value of marijuana in the Mexicali, Mexico

11 and Imperial County, CA in May 2008 and distributable quantities of marijuana. The Court should

12 admit such testimony as relevant and reliable.

13     **2.   Standard of Admissibility**

14     If specialized knowledge will assist the trier-of-fact in understanding the evidence or

15 determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in

16 question. Fed. R. Evid. 702. The trial judge is the gatekeeper regarding the type and scope of expert

17 testimony that should be admitted in any particular trial, and has "broad latitude" in determining the

18 relevance and reliability of such testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999).

19 Determining whether expert testimony would assist the trier-of-fact in understanding the facts in issue

20 is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir.

21 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). The district court may consider the

22 Daubert test or any other factors in addressing relevant reliability concerns regarding expert testimony.

23 Kumho, 526 U.S. at 149-50 (noting that "there are many different kinds of experts, and many different

24 kinds of expertise," including, "experts in drug terms, handwriting analysis, criminal modus operandi").

25     The expert's opinion may be based on hearsay or facts not in evidence when the facts or data

26 relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703; see, e.g.,

27 United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) (stating "[w]e have consistently held that

28 government agents or similar persons may testify as to the general practices of criminals to establish the

3                                   08CR1637-WQH

1  defendants' modus operandi.") (internal quotations omitted); <u>see also</u> <u>United States v. Hankey</u>, 203

2  F.3d 1160, 1168-70 (9th Cir. 2000) (affirming district court's admission of gang expert testimony that

3  gang members would be subject to violent retribution if they testified against another gang member).

4       An expert may provide opinion testimony even if the testimony embraces an ultimate issue to

5  be decided by the trier-of-fact. Fed. R. Evid. 704; <u>United States v. Plunk</u>, 153 F.3d 1011, 1018 (9th Cir.

6  1998). An experienced narcotics agent may testify in the form of an opinion even if that opinion is

7  based in part on information from other agents familiar with the issue. <u>United States v. Golden</u>, 532

8  F.2d 1244, 1248 (9th Cir. 1976). The proposed expert testimony "alerts [the jury] to the possibility that

9  combinations of seemingly innocuous events may indicate criminal behavior." <u>United States v.</u>

10 <u>Johnson</u>, 735 F.2d 1200, 1202 (9th Cir. 1984).

11       **3.   <u>Testimony Identifying The Substance Seized As Marijuana</u>**

12       Absent a stipulation by Defendant, the United States will call Gary Goldberg, a forensic chemist

13 with DEA, to testify as to the identity of the substance seized from Defendant's vehicle. The United

14 States expects Mr. Goldberg to testify that laboratory examinations confirmed that the contraband was

15 marijuana, a Schedule I Controlled Substance. This testimony bears directly on an element of the

16 charged offense: that marijuana is a prohibited drug.

17       This testimony is permitted under Rule 702 of the Federal Rules of Evidence, which allows

18 witnesses qualified as experts to testify as to scientific or technical knowledge that "will assist the trier

19 of fact to understand the evidence." <u>See</u> <u>United States v. Cruz</u>, 127 F.3d 791, 801 (9th Cir. 1997) (DEA

20 forensic chemist properly established as expert to identify nature of controlled substance); <u>United States</u>

21 <u>v. Burden</u>, 497 F.2d 385, 387 (8th Cir. 1974) (forensic DEA chemist, whose educational background

22 and experience were established, was properly allowed to testify as an expert on the various tests

23 performed on a substance to confirm that it was marijuana).

24       **4.   <u>Evidence Regarding Wholesale And Retail Value Of The Marijuana</u>**

25       The United States also intends to present expert testimony from U.S. Immigration and Customs

26 Enforcement Special Agent Brandon Steifer regarding the wholesale value and street value of the

27 marijuana  seized in this case. Special Agent Steifer has continuous contact with state and federal

28 intelligence programs, contact with narcotics agents at the state and federal levels, contact with

1  undercover agents who have worked closely with drug-traffickers, contact with cooperating defendants

2  who have been or have worked with drug-smugglers, and contact with confidential informants who deal

3  on an ongoing basis with narcotics-smuggling organizations and their tactics.  He will testify as to the

4  value of marijuana in Mexicali, Mexico and the Imperial County, CA area in May 2008 and that

5  marijuana generally increases substantially in value when it crosses the United States-Mexico border.

6           From this testimony, the United States should be allowed to argue that the value of the marijuana

7  circumstantially shows that Defendant knew the car he occupied contained marijuana, and that he

8  possessed it with the intent to distribute.  A reasonable inference from possession of this value of drugs

9  is that the original owners would not entrust such a valuable commodity to a complete stranger who has

10  no idea he is carrying the drugs.  Also, the more valuable drugs are, the more reasonable it is to infer

11  that they were meant to be further distributed to maximize sales.  As knowledge and intent are essential

12  elements of the offenses charged, the desired expert testimony is highly probative.

13           The Ninth Circuit has long allowed the introduction of such expert testimony, and has long

14  permitted counsel to argue reasonable inferences therefrom.  See, e.g., United States v. Ogbuehi, 18 F.3d

15  807 (9th Cir. 1994).  In Ogbuehi, the defendant was charged with importing about 2.5 pounds of heroin.

16  At trial, the United States introduced expert testimony of a DEA special agent as to the estimated street

17  retail value of the heroin.  The Ninth Circuit found that such testimony was proper, and that its probative

18  value was not substantially outweighed by any prejudicial effect.  Id. at 812 ("DEA agents can testify

19  as to the street value of narcotics, . . . and counsel can argue reasonable inferences from it") (citation

20  omitted); see also United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (evidence of $100,000

21  street value of cocaine was relevant to proving the defendant's intent to distribute); United States v.

22  Ramirez-Rodriguez, 552 F.2d 883, 885 (9th Cir. 1977) (evidence of resale value of drug probative of

23  intent to distribute); United States v. Golden, 532 F.2d 1244, 1247 (9th Cir.1976) ("The value of the

24  heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin and

25  intent to distribute") (citations omitted); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (in

26  prosecution for transporting cocaine, testimony concerning the selling price of cocaine was relevant to

27  issue of knowledge, since it tended to refute "the possibility that a stranger could have placed such a

28  valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered

1   in the United States").

2        **5.**    **Evidence of Personal and Distributable Amounts of Marijuana**

3        Finally, the United States intends to elicit expert testimony Special Agent Steifer to establish that

4   the quantity of marijuana found in the vehicle occupied by Defendant is a distributable, rather than

5   personal use amount. See United States v. Tavakkoly, 238 F.3d 1062, 1067 (9th Cir. 2001) (expert

6   testimony that 1.35 kg of opium was inconsistent with possession for personal use was relevant to prove

7   defendant's intent to distribute); United States v. Alatorre, 222 F.3d 1098, 1104-05 (9th Cir. 2000)

8   (expert testimony properly admitted to establish that quantity of marijuana was distributable amount,

9   rather than just personal use amount).

10       **6.**    **Evidence Regarding Modus Operandi of Drug Couriers**

11       The United States will seek to introduce evidence concerning the modus operandi of

12  drug-couriers if Defendant opens the door during opening statements, cross-examination or Defendant's

13  case-in-chief. Such testimony would be limited to the following issues: (1) that drug traffickers typical

14  do not entrust large amounts of drugs or money to unknowing couriers; and (2) that couriers, such as

15  Defendant, do not typically participate in loading and unloading of the drugs. Such testimony is proper

16  to help the jury understand the evidence in the case, to put that evidence in a relevant context and to

17  ensure the jury does not decide the case in a vacuum. The evidence is relevant to the question whether

18  Defendant knew of the drugs in the vehicle he drove into the United States. See United States v.

19  Murillo, 225 F.3d 1169 (9th Cir. 2001).

20       Federal Rule of Evidence 702 allows an expert witness to testify if "specialized knowledge" will

21  assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702.

22  However, even when expert testimony is otherwise admissible, it may be excluded under Rule 403 if

23  its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The

24  street value of illegal drugs, the distribution quantities, the modus operandi of drug traffickers and the

25  structure of drug trafficking organizations are matters that are generally beyond the common knowledge

26  of the average lay person. United States v. Valle, 72. F.3d 210, 215 (1st Cir. 1995). Thus, expert

27  testimony in the form of an opinion regarding these subjects is likely to help a jury. Id. Whether such

28  expert testimony will be admissible depends on the nature of the expert testimony.

              08CR1637-WQH

1    The Ninth Circuit has drawn a distinction between expert testimony involving structure of drug

2  trafficking organizations and drug courier profiles on the one hand, and expert testimony involving the

3  modus operandi of drug traffickers or "unknowing couriers," on the other.  With respect to expert

4  testimony concerning the structure of drug trafficking organizations, the Court has held that such expert

5  testimony is generally not relevant or admissible, except (1) when the defendant is charged with

6  conspiracy or (2) when such evidence is otherwise probative of a matter properly before the trial court.

7  See, e.g., United States v. Pineda-Torres, 287 F.3d 860, 863 (9th Cir. 2002); United States v. Vallejo,

8  237 F.3d 1008 (9th Cir. 2001), as amended 246 F.3d 1150 (9th Cir. 2001) (holding that expert testimony

9  regarding structure of drug trafficking organizations was not relevant and was prejudicial where the

10 defendant was not charged with a conspiracy to import and there was no evidence of defendant's

11 connection to a drug trafficking organization).  With regard to expert testimony about drug courier

12 profiles, the Ninth Circuit has held that this is inherently prejudicial and, thus, generally not admissible.

13 See United States v. Cordoba, 104 F.3d 225, 229-30 (9th Cir. 1997).

14    In contrast, "unknowing courier" expert testimony is admissible, even if a defendant's case is

15 not complex or does not involve a conspiracy charge, as long as the "unknowing courier" expert

16 testimony is relevant.  Thus, in Murillo, where the defendant, who had been convicted for possession

17 with intent to distribute cocaine, challenged on relevancy grounds the admission of "unknowing courier"

18 expert testimony during trial, the court in affirming the admission of expert testimony, held that the

19 "unknowing courier" testimony was relevant because it went to the heart of the defense that he did not

20 know he was transporting drugs.  Murillo, 225 F.3d at 1177.

21    Similarly, in Cordoba, the defendant, who was convicted of a non-conspiracy case of possession

22 with intent to distribute cocaine, challenged on appeal the admission of "unknowing courier" expert

23 testimony.  Cordoba, 104 F.3d at 227, 229.  In affirming the admission of such testimony, the Ninth

24 Circuit held that "unknowing courier" expert testimony that drug traffickers do not entrust valuable

25 cocaine to unknowing transporters was clearly probative of the defendant's knowledge that he possessed

26 the drugs and that the testimony's probative value outweighed any prejudicial effect.  Id. at 229.  See

27 also United States v. Castro, 972 F.2d 1107 (9th Cir. 1992) (holding that the jury could have reasonably

28 found that the defendant knew he possessed marijuana where "experts testified that the amount of

7                                08CR1637-WQH

1 cocaine, valued in the millions of dollars, would have never been entrusted to an unknowing dupe").

2     In the present case, the nature of the proposed testimony is precisely the type of testimony found

3 to be relevant and admissible in Murillo and Cordoba.  As in Murillo and Cordoba, Defendant was not

4 charged with conspiracy and the unknowing courier expert testimony will go to the heart of the

5 Defendant's expected defense that he did not know the marijuana was hidden in his vehicle and that it

6 must have been placed there by persons known or unknown.  Further, the expert testimony will help the

7 jury's understanding of the evidence and aid its determination regarding facts at issue, namely, the

8 Defendant's knowledge and intent, and is therefore relevant.  See United States v. Sanchez-Lopez, 879

9 F.2d 541, 555 (9th Cir. 1989) (price, quantity and quality of drugs found relevant to intent to distribute

10 drugs and no knowledge of their presence in the car).

11     Evidence about the drug-trafficking business, as well as admission of evidence about the modus

12 operandi of drug couriers, is consistent with well-established law allowing as relevant to knowledge

13 expert testimony about a criminal organization's modus operandi.  See United States v. Alonso, 48 F.3d

14 1536, 1536 (9th Cir. 1995) (holding that law-enforcement officers may testify regarding "typical

15 methods and techniques employed in an area of criminal activity," and explain how defendant's conduct

16 conforms to typical methods); United States v. Gil, 58 F.3d 1414, 1421-22 (9th Cir. 1995) (admitting

17 expert testimony regarding general practice of drug traffickers to establish defendants' modus operandi);

18 United States v. Bosch, 951 F.2d 1546, 1549 (9th Cir. 1991) (holding that an agent with expertise in

19 narcotics investigations may aid jury in understanding defendant's role in the charged offense); United

20 States v. Jaramillo-Suarez, 950 F.2d 1378, 1384 (9th Cir. 1991) (holding that the expert properly

21 testified regarding drug organization's use of pay-owe sheets to keep track of customers); United States

22 v. Kinsey, 843 F.2d 383, 388 (9th Cir. 1988) (distinguishing testimony about a defendant's guilt or

23 innocence from expert testimony regarding the various roles individuals may play in illegal enterprises);

24 United States v. Guzman, 8439 F.2d 447 (9th Cir. 1988) (admitting expert agent's testimony that car

25 switch is common maneuver used by narcotics traffickers); United States v. Patterson, 819 F.2d 1495,

26 1507 (9th Cir. 1987) (permitting expert testimony that members of narcotics rings play many different

27 roles, including street salesmen, money collectors, and lookouts); United States v. Stewart, 770 F.2d

28 825, 831 (9th Cir. 1985); United States v. Maher, 645 F.2d 780, 783 (9th Cir. 1981) (per curium)

        08CR1637-WQH

1   (allowing expert testimony that a defendant's actions were consistent with the modus operandi of

2   persons transporting drugs).

3        The United States does not intend to introduce during its case-in-chief so-called profile and

4   blind-mule testimony.  See, e.g., Reid v. Georgia, 448 U.S. 438, 440 (1979) (defining "drug courier

5   profile" evidence); United States v. Lui, 941 F.2d 844, 846 (1991).  However, the United States reserves

6   the right to introduce expert testimony about the modus operandi of drug-trafficking organizations,

7   testimony about vehicle-registration procedures, blind-mule, and profile testimony if Defendant opens

8   the door to any of those categories of evidence during opening statements, cross-examination, or

9   Defendant's case-in-chief.  See Vallejo, 237 F.3d at 1016; Alatorre, 222 F.3d at 1100 n.3 (structure and

10  organizational testimony proper because Alatorre raised the fingerprints issue); United States v.

11  Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir. 1989) (drug-courier profile and "blind-mule" testimony

12  admissible where defendant counsel opens door).

13  **B.    THE COURT SHOULD ADMIT DEMEANOR EVIDENCE**

14       Evidence regarding a defendant's demeanor and physical appearance is admissible as

15  circumstantial evidence that is relevant to the jury's determination as to whether a defendant knew

16  contraband was concealed in the vehicle.  See, e.g., United States v. Romero-Avila, 210 F.3d 1017, 1023

17  (9th Cir. 2000) (identifying defendant's nervousness at the border as part of the "strong independent

18  evidence of defendant's guilt"); United States v. Hursh, 217 F3d. 761, 767-68 (9th Cir. 2000)

19  (nervousness during border questioning at primary inspection and later nervousness while car was being

20  inspected at secondary was evidence of knowledge); United States v. Klimavicius-Viloria, 144 F. 3d

21  1249, 1263-65 (9th Cir. 1998) (crew's demeanor, such as becoming less cooperative when the Coast

22  Guard decided to search a tank where bales of cocaine were later found, was relevant to show knowing

23  participation in smuggling); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000)

24  (defendant's nervousness at Calexico port of entry); United States v. Barbosa, 906 F.2d 1366, 1368 (9th

25  Cir. 1990) (jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety

26  during airport inspection); United States v. Lui, 941 F.2d 844, 848 n.2 (9th Cir. 1991) (jury could

27  consider guilty knowledge where defendant acted disinterested during airport inspection); United States

28  v. Walitwarangkul, 808 F.2d 1352, 1354 (9th Cir. 1987) (affirming conviction for possession of

1  narcotics with intent to distribute where, <u>inter alia</u>, defendant "appeared nervous when questioned by

2  customs"). Here, witnesses may properly testify as to their observations of Defendant's demeanor and

3  physical appearance at the Calexico West Port of Entry.

4  **C.      THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

5         Defense counsel has requested that the United States facilitate the parole of Defendant's

6  daughter into the United States in order that she may testify as a witness for the defense. The United

7  States is unaware of any percipient information that Defendant's daughter may possess with respect to

8  the charged offense. It would appear that Defendant's daughter will be called as a character witness.

9         To the extent that Defendant calls his daughter or any other witness to testify as to his character,

10  the United States moves to exclude any testimony regarding any alleged specific acts of Defendant's

11  prior good conduct. Testimony as to specific instances of good conduct violates Federal Rule of

12  Evidence 405(a). <u>United States v. Barry</u>, 814 F.2d 1400, 1403 (9th Cir. 1987); <u>Government of Virgin</u>

13  <u>Islands v. Grant</u>, 775 F.2d 508, 512 (3d Cir. 1985). Federal Rule of Evidence 404(a)(1) further states

14  that evidence of a person's character is not admissible for the purpose of proving a person's actions on

15  a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the

16  prosecution to rebut the same. . . ."

17         A character witness can not offer specific instances of conduct by the defendant which would

18  tend to support the reputation of the defendant. <u>United States v. Hedgecorth</u>, 873 F.2d 1307, 1313 (9th

19  Cir. 1989) ("[W]hile a defendant may show a characteristic for lawfulness through opinion or reputation

20  testimony, evidence of specific acts is generally inadmissible"). In interpreting the permissible scope

21  of character evidence under Rule 404(a), the Court of Appeals has held that presentation of witnesses

22  to testify about a defendant's character for being law abiding and honest is permissible. But it is

23  impermissible to elicit testimony from a defense witness regarding the defendant's propensity to engage

24  in a specific type of criminal activity. <u>See United States v. Diaz</u>, 961 F.2d 1417 (9th Cir. 1992) (holding

25  that it is impermissible under Rule 404(a) to ask a character witness about the defendant's propensity

26  to engage in large scale drug dealing).

27         Thus, Defendant should be prohibited from introducing testimony from any character witness

28  about (a) a specific instance of Defendant's conduct, and (b) Defendant's propensity to be involved in

10                                                          08CR1637-WQH

1  drug smuggling.

2  **D.      THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY**

3          A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and

4  precluding evidence thereof if the defense is found to be insufficient.  Fed. R. Crim. P. 12(b) ("Any

5  defense, objection, or request which is capable of determination without the trial of the general issue

6  may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982)

7  (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim.

8  P. 12(e).  Generally, motions are capable of pretrial determination if they raise issues of law, rather than

9  issues of fact.  United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976).  Courts have specifically

10  approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous

11  occasions.  See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States

12  v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997) (addressing duress).

13  Similarly, a district court may preclude a necessity defense where"the evidence, as described in the

14  defendant's offer of proof, is insufficient as a matter of law to support the proffered defense."

15  United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

16          In order to rely on a defense of duress, a defendant must establish a prima facie case that:

17          (1)      Defendant committed the crime charged because of an immediate threat of death or

18                   serious bodily harm;

19          (2)      Defendant had a well-grounded fear that the threat would be carried out; and

20          (3)      There was no reasonable opportunity to escape the threatened harm.

21  United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997.  If Defendant fails to

22  make a threshold showing as to each and every element of the defense, defense counsel should not

23  burden the jury with comments relating to such a defense.  See, e.g., Bailey, 444 U.S. at 416.

24          A defendant must establish the existence of four elements to be entitled to a necessity defense:

25          (1)      that he was faced with a choice of evils and chose the lesser evil;

26          (2)      that he acted to prevent imminent harm;

27          (3)      that he reasonably anticipated a causal relationship between his conduct and the harm

28                   to be avoided; and

1        (4)    that there was no other legal alternatives to violating the law.

2   See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985).  A court

3   may preclude invocation of the defense if "proof is deficient with regard to any of the four elements."

4   See Schoon, 971 F.2d at 195.

5        The United States hereby moves for an evidentiary ruling precluding defense counsel from

6   making any comments or eliciting testimony during opening statements, on cross-examination or in the

7   defense the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity"

8   unless Defendant first makes a prima facie showing satisfying each and every element of such defense.

9   The United States respectfully requests that the Court rule on this issue prior to opening statements to

10  avoid the prejudice, confusion, and invitation for jury nullification that would result from such

11  comments.

12  **E.      THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH,**

13  **        FINANCES, EDUCATION, AND POTENTIAL PUNISHMENT**

14       Evidence of, and thus argument referring to, Defendant's health, age, finances, education and

15  potential punishment is inadmissible and improper.  "Evidence which is not relevant is not admissible."

16  Fed. R. Evid. 402.  Rule 403 provides further that even relevant evidence may be inadmissible "if its

17  probative value is substantially outweighed by the danger of unfair prejudice."  The Ninth Circuit Model

18  Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes,

19  opinions, prejudices, or sympathy."  § 3.1 (2003).

20       Moreover, it is inappropriate for a jury to be informed of the consequences of their verdict.

21  United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).  Any mention of penalty or felony status is

22  irrelevant as it sheds no light on the Defendants' guilt or innocence.  Therefore, the United States

23  requests that the Court preclude any mention of possible punishment at any point in this trial.

24  **F.      THE COURT SHOULD EXCLUDE TESTIMONY OF DEFENDANT'S DAUGHTER**

25       As noted above, defense counsel has requested that the United States parole Defendant's

26  daughter into the United States from Mexico to testify as a defense witness.  The United States does not

27  believe that Defendant's daughter possesses relevant, percipient knowledge of the facts and

28  circumstances of the charged offense.  Defendant's daughter was not with him in the vehicle on May

12                                                    08CR1637-WQH

1    11, 2008, and Defendant never indicated in his post-arrest statement that his daughter was with him

2    when Defendant allegedly was solicited to drive the vehicle into the United States or otherwise has any

3    percipient knowledge of his sojourn into the United States.

4         Should Defendant's daughter be allowed to testify as to matters concerning which she has no

5    percipient knowledge, there is a serious likelihood of confusion and unfair prejudice to the United

6    States.  This is especially true given the potential emotional appeal of a close family member's

7    testimony.  In light of the reasonable likelihood that the testimony of Defendant's daughter would be

8    both irrelevant and inadmissible, the United States requests that Defendant provide an offer of proof as

9    to her anticipated testimony prior to requiring the United States to expend the substantial time and

10   resources required to parole her into the United States for trial.

11   **G.        THE COURT SHOULD PROHIBIT SELF-SERVING HEARSAY**

12        Defendant's may not introduce his own statements through the testimony of another witness, the

13   opening statement of counsel, or argument by counsel.  Any such attempt would be impermissible

14   because those statements are hearsay.  While the United States may use the statements of a defendant

15   against him under Federal Rule of Evidence 801(d)(2) (admission by party-opponent), this Rule may

16   not be relied upon by the Defendant because he is not the proponent of the evidence and the evidence

17   is not being offered against him (but rather on his behalf).  Defendant cannot attempt to have

18   "self-serving hearsay" brought before the jury without the benefit of cross-examination by the United

19   States.  See e.g., United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1987).

20        Nor may Defendant rely on Rule 801(d)(1)(B), which provides that a statement is not hearsay

21   if:

22        The declarant testifies at trial or hearing and is subject to cross-examination concerning

23        the statement, and the statement is . . . consistent with the declarant's testimony and is

24        offered to rebut an express or implied charge against the declarant of recent fabrication

25        or improper influence or motive . . . .

26   A prior consistent statement is not admissible if it is introduced in the absence of impeachment.

27   See United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976) (appellant offered to

28   introduce and play tape recording of interview of appellant and DEA agent to reinforce appellant's

13

1  credibility).   Moreover, even if the declarant's testimony has been impeached, prior consistent

2  statements are not admissible if the declarant had motive to give false information at the time that the

3  prior out-of-court statement was made. See United States v. DeCoito, 764 F.2d 690, 694 (9th Cir. 1985)

4  (declarant's prior consistent statement not admissible for purposes of rehabilitation if declarant had

5  motive to lie to avoid prosecution when prior statement was made); United States v. Rohrer, 708 F.2d

6  429, 433 (9th Cir. 1983) (diagram drawn by declarant not admissible as prior consistent statement

7  because declarant had motive when diagram was made to fabricate, that is, driving better leniency

8  bargain with the government).

9       Finally, Defendant cannot rely on Rule 803(3), which provides that the hearsay rule does not

10  exclude then existing mental, emotional, or physical condition.  Addressing this issue in the context of

11  a "derivative entrapment" defense, the Ninth Circuit affirmed the trial court's exclusion of testimony

12  by a witness that the defendant had told the witness that the defendant was afraid of government agents.

13  The court relied on the language emphasized above in Rule 803(3), holding that the rule did not except

14  the witness's testimony from the hearsay rule. See United States v. Emmert, 829 F.2d 805, 809-10 (9th

15  Cir. 1987).

16       Defendant cannot introduce his own statements through the testimony of another witness or by

17  improper reference during opening statements.  Rather, Defendant may provide a statement from the

18  witness stand where he would properly be subject to cross-examination.

19  **H.    MOTION TO EXCLUDE WITNESSES**

20       Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be

21  essential to the presentation of the party's cause" should not be ordered excluded from the court during

22  trial.  The case agent in the present matter has been critical in moving the investigation forward to this

23  point and is considered by the United States to be an integral part of the trial team.  The United States

24  requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

25  / / /

26  / / /

27  / / /

28  / / /

1

## IV

## <u>CONCLUSION</u>

3     For the foregoing reasons, the Government respectfully requests that the Court grant the

4  foregoing motions.

5

6  DATED: August 25, 2008.                    Respectfully submitted,

7                                             Karen P. Hewitt
                                              United States Attorney
8
                                             s/ David D. Leshner
9                                             DAVID D. LESHNER
                                              Assistant U.S. Attorney
10
                                             Attorneys for Plaintiff
11                                            United States of America

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08CR1637-WQH

1       UNITED STATES DISTRICT COURT

2       SOUTHERN DISTRICT OF CALIFORNIA

3    UNITED STATES OF AMERICA,              )        Case No. 08-CR-1637-WQH
                                            )
4               Plaintiff,                  )
                                            )
5               v.                          )
                                            )        CERTIFICATE OF SERVICE
6    BENJAMIN OCHOA-RAMIREZ,                )
                                            )
7               Defendant.                  )
     _____       )

8

9    IT IS HEREBY CERTIFIED THAT:

10          I, DAVID D. LESHNER, am a citizen of the United States and am at least eighteen years of age.

11   My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

12          I am not a party to the above-entitled action.  I have caused service of **UNITED STATES'**

13   **NOTICE OF MOTIONS AND MOTIONS IN LIMINE** on the following parties by electronically

14   filing the foregoing with the Clerk of the District Court using its ECF System, which electronically

15   notifies them.

16          Hanni Fakhoury, Esq.

17

18          I declare under penalty of perjury that the foregoing is true and correct.

19          Executed on August 25, 2008.

20

21                      /s/ David D. Leshner
                        DAVID D. LESHNER
22

23

24

25

26

27

28

                                    16                              08CR1637-WQH